|  |  |
|---|---|
| JOY GLOBAL INC. (n/k/a KOMATSU MINING CORP.),<br><br>    Plaintiff,<br><br>   v.<br><br>COLUMBIA CASUALTY COMPANY, ARCH INSURANCE COMPANY, and TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA,<br><br>    Defendants. | Civil Action No.:  18-2034<br><br>**COMPLAINT FOR DECLARATORY RELIEF, BREACH OF CONTRACT, AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**<br><br>**JURY TRIAL DEMANDED** |

## <u>NATURE OF THE ACTION</u>

1. This is an action for declaratory relief and money damages for breach of contract and breach of the implied covenant of good faith and fair dealing against defendants, who are insurance companies that have wrongfully refused to provide insurance coverage to plaintiff, their insured, for liabilities and defense costs arising out of and relating to underlying securities claims.  As indicated below, the defendants sold their insurance policies to plaintiff on the basis of express representations that the policies would cover liabilities of the sort at issue in this case, and now that plaintiff has paid its insurance premiums, been subjected to underlying claims, and suffered the covered defense costs and liabilities at issue, they have wrongfully and unjustly denied coverage.

2. Plaintiff Joy Global Inc. ("Joy Global"), now known as Komatsu Mining Corp., is a manufacturer and servicer of heavy mining equipment headquartered in Milwaukee, Wisconsin.  Joy Global's history of manufacturing and employing people in Milwaukee, and elsewhere in the United States and overseas, dates back over 130 years to the 1880s.  In April

- 1 -

2017, Joy Global was acquired by Komatsu America Corp. ("KAC") and renamed Komatsu Mining Corp. In connection with its sale to KAC, Joy Global and various of its officers and directors were named as defendants in a series of eight lawsuits (collectively, the "Securities Claims") filed by Joy Global shareholders, who claimed that Joy Global and its officers breached fiduciary duties, made material misrepresentations and nondisclosures, and committed other wrongs in connection with the sale of Joy Global to KAC.

3. Defendants Columbia Casualty Company ("CNA"), Arch Insurance Company ("Arch"), and Travelers Casualty and Surety Company of America ("Travelers," and collectively with CNA and Arch, the "Insurers") are insurance companies that sold directors and officers ("D&O") liability insurance policies to Joy Global, in which they promised to pay on behalf of Joy Global and its directors and officers the liabilities and defense costs that Joy Global has incurred, and is continuing to incur, in connection with the Securities Claims. Insurers have breached these commitments and, in the case of CNA, have breached the implied covenant of good faith and fair dealing that is an essential component of every insurance policy in Wisconsin.

4. Specifically, as Joy Global's primary insurer, CNA induced Joy Global to buy the CNA policy (and the follow-form Arch and Travelers excess policies) at issue:

   a. very shortly after the Joy Global transaction was announced in July 2016, and with the knowledge and expectation that claims of the sort pleaded in the Securities Claims were likely to be brought against Joy Global;

   b. through representations that led, and were designed to lead, Joy Global to understand that its liabilities and defense costs in connection with the Securities Claims would be insured; and

- 2 -

c. for double the premium that CNA otherwise would have charged Joy Global, if Joy Global had bought the policy without CNA's insistence that claims like those pleaded in the Securities Claims were likely to ensue and its assurance that they would be covered under the CNA policy.

5. Joy Global now brings this action to vindicate its rights under the Insurers' policies and Wisconsin law; to recover its losses resulting from the Insurers' breaches of the insurance policies that they sold to Joy Global; and to recover damages for CNA's violation of its duty of good faith and fair dealing toward Joy Global.

## THE PARTIES

6. Plaintiff Joy Global Inc. ("Joy Global"), now known as Komatsu Mining Corp., is a corporation organized under the laws of Delaware with its principal place of business in Milwaukee, Wisconsin. Joy Global is a manufacturer and distributor of mining equipment, systems, and services.

7. Defendant Columbia Casualty Company ("CNA"), a wholly owned subsidiary of CNA Financial Corporation, is a corporation organized under the laws of Illinois with its principal place of business in Chicago, Illinois. CNA is engaged in the insurance business in Wisconsin, and it issued the CNA insurance policy at issue to Joy Global in Milwaukee, Wisconsin.

8. Defendant Arch Insurance Company ("Arch") is a corporation organized under the laws of Missouri with its principal place of business in Jersey City, New Jersey. Arch is engaged in the insurance business in Wisconsin and issued the Arch insurance policy at issue to Joy Global in Milwaukee, Wisconsin.

- 3 -

9.      Travelers Casualty and Surety Company of America ("Travelers") is a corporation organized under the laws of Connecticut with its principal place of business in Hartford, Connecticut.  Travelers is engaged in the insurance business in Wisconsin and issued the Travelers insurance policy at issue to Joy Global in Milwaukee, Wisconsin.

<u>JURISDICTION AND VENUE</u>

10.      This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a) because the citizenship of the parties is diverse and the amount in controversy exceeds $75,000, exclusive of interest and costs.

11.      This Court has personal jurisdiction over each of the Insurers because each Insurer engages in the insurance or other business in Wisconsin; is licensed to transact insurance business in Wisconsin; sold and/or delivered one of the insurance policies at issue to Joy Global in Wisconsin; and/or contracted to insure Joy Global for loss in Wisconsin, including the losses complained of in this action.

12.      Venue is proper in this district under 28 U.S.C. § 1391(a)-(b) because this district has personal jurisdiction over all named defendants; the insurance policies at issue were sold and issued to a Wisconsin resident in this district; and a substantial part of the events or omissions giving rise to the pleaded claims occurred in this district.

<u>FACTS</u>

A.      <u>Joy Global's Sale to Komatsu and the Ensuing Securities Claims</u>

13.      Joy Global is a Milwaukee-based manufacturer of mining equipment and provider of mining-related systems and services whose history in Milwaukee dates back to the 1880s.

14.      In January 2016, Komatsu America Corp. ("KAC") approached Joy Global to discuss the potential merits of a combination between the two companies.  Following the completion of a financial analysis conducted by Goldman Sachs and after months of

- 4 -

negotiations, KAC and Joy Global entered into an agreement, dated July 21, 2016, pursuant to which KAC committed to acquire Joy Global.

15. That same day, Joy Global publicly announced that it had agreed to be acquired by KAC and informed investors that it would file a proxy statement with information about the proposed transaction. Joy Global's Form 8-K announcing the proposed transaction was accompanied by a copy of the parties' acquisition agreement, a press release, and an investor presentation regarding the proposed transaction.

16. On August 15, 2016, Joy Global filed a preliminary proxy statement with the United States Securities and Exchange Commission ("SEC"), and on September 2, 2016, Joy Global filed a definitive proxy statement. Both proxy statements contained extensive disclosures of the analysis undertaken and the information considered by Joy Global's board of directors in approving the company's proposed sale to KAC. The proxy statements further disclosed the success fee that would be due to Goldman Sachs, and the compensation and benefits that would be due to certain Joy Global directors and officers, if the transaction were consummated.

17. Over the course of the next two months, several Joy Global shareholders filed a series of eight putative class-action lawsuits against the company and various of its directors and officers challenging the transaction, alleging breaches of fiduciary duty and that disclosures made in proxy statements omitted material information and thus were false and misleading in violation of federal and/or state law. Seven of these lawsuits were filed in this Court (the United States District Court for the Eastern District of Wisconsin), and the eighth was filed in the Milwaukee County Circuit Court. Listed chronologically by date of filing, these eight civil suits (the "Securities Claims") are:

   a. *Oduntan v. Joy Global Inc.*, No. 16-cv-1136, filed August 24, 2016, in
      the United States District Court for the Eastern District of Wisconsin;

b. *Soffer v. Doheny*, No. 16-cv-1148, filed August 26, 2016, in the United States District Court for the Eastern District of Wisconsin;

c. *Garfield v. Joy Global Inc.*, No. 16-cv-6588, filed on August 26, 2016, in the Milwaukee County Circuit Court in Wisconsin;

d. *Gordon v. Joy Global Inc.*, No. 16-cv-1153, filed August 26, 2016, in the United States District Court for the Eastern District of Wisconsin;

e. *Rote v. Joy Global Inc.*, No. 16-cv-1186, filed September 2, 2016, in the United States District Court for the Eastern District of Wisconsin;

f. *Tansey v. Joy Global Inc.*, No. 16-cv-1201, filed September 6, 2016, in the United States District Court for the Eastern District of Wisconsin;

g. *McGregor v. Joy Global Inc.*, No. 16-cv-1213, filed September 8, 2016, in the United States District Court for the Eastern District of Wisconsin; and

h. *Duncan v. Joy Global Inc.*, No. 16-cv-1229, filed September 13, 2016, in the United States District Court for the Eastern District of Wisconsin.

18.     Each of the Securities Claims named as defendants Joy Global Inc., Edward Doheny (Joy Global's CEO), John Hanson (Chair of Joy Global's Board of Directors), and Joy Global directors Steven Gerard, Mark Gliebe, John Gremp, Gale Klappa, Richard Loynd, P. Eric Siegert, and James Tate.  Several of the Securities Claims also named other defendants:  KAC was named in *Soffer*, *Garfield*, and *McGregor*; Komatsu Ltd. (KAC's parent) was named in *Garfield* and *McGregor*; Pine Solutions Inc. (a corporate vehicle used to effect the transaction) was named in *Soffer* and *McGregor*; and Goldman Sachs and John Does 1-5 (employees at Goldman Sachs) were named in *McGregor*.

19.     All of the Securities Claims except *Garfield* alleged violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934, as well as SEC Rule 14a-9.  *Soffer* also

- 6 -

alleged breach of fiduciary duty. *Garfield*, the sole state court action, exclusively alleged breaches of various fiduciary duties.

20.     All of the Securities Claims alleged that, by failing to disclose material information in the proxy statements, Joy Global had deprived its shareholders of their right to make an informed decision about whether to approve the company's sale to KAC. Certain of the Securities Claims further alleged that some Joy Global officers were conflicted and/or breached their fiduciary duties to the shareholders because, among other reasons, they stood to receive "golden parachutes" or other payments if the transaction were consummated.

21.     Plaintiffs in the Securities Claims listed above (*see supra,* ¶ 17) sought to prevent the transaction from occurring. Specifically, on September 15, 2016, the plaintiff in *Oduntan* moved for a preliminary injunction, seeking to enjoin the shareholder vote on whether to approve the transaction. Plaintiffs in several of the other six federal actions subsequently joined in the *Oduntan* motion, and on September 23, 2016, the plaintiff in *Garfield*, the only case filed in state court, likewise moved for a temporary injunction to enjoin the shareholder vote.

22.     As part of an agreement to settle seven of the Securities Claims (i.e., all of the suits except the *Duncan* suit, *see supra,* ¶ 17(a)-(g)), Joy Global filed agreed-upon additional disclosures on September 29, 2016, and October 3, 2016. Joy Global further agreed to pay confidential sums to plaintiffs' counsel in these seven actions. Accordingly, on October 7, 2016, the first seven Securities Claims were settled and dismissed with prejudice, pursuant to a stipulated order, leaving only the *Duncan* action as a pending suit.

23.     On October 19, 2016, Joy Global's sale to KAC was approved at a special meeting of Joy Global's shareholders, and on April 5, 2017, the transaction closed.

- 7 -

24.     Three weeks later, on April 26, 2017, the plaintiffs in the *Duncan* action filed an Amended Complaint, alleging revised claims against Joy Global and various of its officers for allegedly misleading statements and omissions in violation of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 and SEC Rule 14a-9 thereunder.  The *Duncan* plaintiffs further alleged that certain of the individual defendants had breached their duties of loyalty and/or situational fiduciary duties in connection with the transaction, and they demanded compensatory and rescissory damages and other relief.

25.     Following fully briefed motions to dismiss and extended negotiations, on March 23, 2018, the *Duncan* plaintiffs and Joy Global filed before this Court a Notice of Settlement, and on May 23, 2018, they followed up that Notice by filing a Stipulation of Settlement, pursuant to which they confirmed Joy Global's agreement to pay $20 million in full and final resolution of the *Duncan* claims, inclusive of plaintiffs' attorney fees and with no admission of liability.  This Court granted preliminary approval of the *Duncan* settlement on September 14, 2018; Joy Global subsequently paid the $20 million settlement amount into escrow pursuant to the Stipulation of Settlement; and on December 20, 2018, the Court approved the *Duncan* settlement.

B.      The Underwriting of the Joy Global Insurance Policies

26.     Like many publicly traded companies, prior to its sale to KAC, Joy Global maintained a D&O liability insurance program to protect itself and its individual directors and officers against the risk of securities claims.  Joy Global shopped for and purchased its D&O insurance, on an annual basis through policies with annual policy periods, with the active advice and assistance of experienced and professional insurance brokers.  At the time relevant to its sale to KAC and the Securities Claims at issue here, Joy Global's D&O policies had an annual

- 8 -

renewal date of July 31, meaning that Joy Global needed to purchase new coverage to take effect on July 31 each year for the ensuing 12 months.

27.     Accordingly, on July 21, 2016, when Joy Global publicly announced that it had agreed to its sale to KAC, it was only ten days away from its D&O insurance program's annual renewal date. In fact, by that date (July 21, 2016), CNA, Arch, and Travelers had already committed to (i.e., "bound") coverage for the upcoming 2016-2017 policy year, and to renew the expiring coverage that CNA, Arch, and Travelers previously had issued for the 2015-2016 policy year.

28.     Because the insurance binder required Joy Global to report any material changes in conditions, Joy Global informed CNA of the proposed transaction through its brokers at Marsh LLC ("Marsh"), on July 21, 2016 (i.e., on the same day that Joy Global publicly announced the transaction), and Joy Global asked CNA, Arch, and Travelers to confirm that they would still issue the renewal coverage, as previously bound.

29.     CNA declined. Specifically, on or around July 27, 2016, CNA expressed its understanding and expectation that a securities claim would be asserted against Joy Global in connection with the planned transaction (as is now typical, in connection with the planned sale of nearly any publicly traded company in the United States), and CNA stated that it was aware of at least seven law firms that were investigating and considering bringing such claims relating to the sale of Joy Global to KAC. According to CNA, the announced sale thus represented a changed circumstance (i.e., a heightened risk factor) that required different treatment or pricing than the parties previously had discussed for the renewal of Joy Global's D&O coverage.

30.     Importantly, at no time during these renewal discussions did CNA indicate that it was unwilling or unable to renew or extend Joy Global's coverage because of its expectation that

Joy Global would face a securities claim.  Nor did CNA indicate at any point in these discussions that it would not cover a securities claim relating to the announced transaction.  On the contrary, CNA made material representations to Joy Global, through Marsh, that actually and reasonably induced Joy Global to believe that CNA would cover securities claims relating to the transaction, either through its expiring 2015-2016 policy or through a 2016-2017 renewal.

31.     Specifically, when a suggestion was made that Joy Global could submit to CNA, under its then-expiring 2015-2016 D&O policy, a "notice of circumstance" regarding the potential sale to KAC, CNA confirmed that it would accept such a "notice of circumstance" under the expiring policy.  The effect of such "notice of circumstance," if provided by Joy Global, would have been to trigger coverage, under the expiring 2015-2016 policy, for any securities claim that might arise out of the announced sale later (i.e., even after expiration of the 2015-2016 policy period).  If Joy Global were to choose this option, CNA indicated that it would not issue a new limit of liability for the 2016-2017 policy year; instead, and for an additional premium, it would only extend the otherwise-expiring policy for six months or until the close of the sale.

32.     In proposing this "notice of circumstance" solution, CNA indicated both that (a) it considered the threat of securities claims relating to the acquisition sufficiently specific for a "notice of circumstance" to be appropriate to "lock in" coverage under the expiring policy, and (b) it considered the expiring policy, if extended (as CNA was proposing) through the date of closing, to provide coverage for such claims.  Otherwise, CNA's proposal would have made no sense and offered no solution to the specific risk that the parties were discussing:  the risk of securities claims arising from the announced sale to KAC.

- 10 -

33.     As an alternative to its "notice of circumstance" proposal, CNA indicated that if Joy Global *refrained* from submitting a notice of circumstance under the expiring CNA policy (i.e., so that expiring policy would not be exposed to transaction-related claims), then CNA would be willing to renew its policy for the 2016-2017 policy year with a new coverage limit. Under this proposal, however, CNA would require Joy Global to pay *double* its base premium: $236,250 for a renewal of the expiring policy and another $236,250 for a "run-off endorsement" that would extend, for an additional period of years, coverage for securities claims specifically arising from Joy Global's sale to KAC.

34.     CNA led Joy Global and Marsh to believe, and Joy Global and Marsh did actually and reasonably believe, that paying a 200% premium for a renewal policy plus a "run-off endorsement" would provide Joy Global with coverage in the event of a securities claim arising out of its sale to KAC, and CNA knew that Joy Global was seeking to renew its coverage (a) with the expectation that it would soon be sold and (b) for the express and primary purpose of securing coverage for transaction-related claims.

35.     In reliance on CNA's representations and in response to its proposals, Joy Global chose not to submit a notice of circumstance under the expiring CNA policy and elected instead to purchase from CNA, for a double premium, a new 2016-2017 policy with a "run-off endorsement" (Endorsement No. 3) extending coverage for claims relating to the envisioned sale. CNA thus issued Policy No. 28704981 to Joy Global, effective July 31, 2016 (the "CNA Policy"). The CNA Policy, a true and correct copy of which is appended hereto as Exhibit A, provides $10 million of coverage to Joy Global in excess of a $1.5 million self-insured retention.

36.     The CNA Policy is written on a standard D&O insurance form, which CNA calls its "Management Liability Policy" and markets and sells to public companies like Joy Global.

Through its marketing materials (including materials posted to its website and dated July 22, 2016), and in its efforts to lure policyholders, CNA warns customers like Joy Global that they are "more likely than ever to be scrutinized for their actions and decisions. All too often, a seemingly straight-forward business decision may result in litigation." Because of these risks, CNA urges companies like Joy Global to "consider whether their management liability policy provides coverage that addresses the exposures they may encounter in the current marketplace."

37.     According to CNA, one of the highlights of its Management Liability Policy is that it "include[s] broad definitions of claim and loss." In its July 2016 promotional materials, CNA does not caution, or even suggest, that its Management Liability Policy will not provide indemnity coverage for acquisition-related claims, which is a substantial risk for a public company like Joy Global and was the specific risk that both Joy Global and CNA expressly had in mind when the CNA Policy was underwritten and sold to Joy Global.

38.     CNA further touts its expertise in developing tailored insurance products according to each client's particular needs, stating in its marketing materials that it "develops specific insurance products for its clients."

39.     Against the background of such representations, Joy Global purchased the CNA Policy and entrusted CNA to protect it against the Securities Claims.

40.     Defendants Arch and Travelers issued excess policies that follow form to the CNA Policy for the same 2016-2017 policy year. Arch issued Policy No. DOX 9300349-02 (the "Arch Policy"), a true and correct copy of which is appended hereto as Exhibit B, and Travelers issued Policy No. 105653715 (the "Travelers Policy"), a true and correct copy of which is appended hereto as Exhibit C. The Arch Policy provides $10 million of coverage in excess of the limits of the CNA Policy, and the Travelers Policy provides $10 million of coverage in

- 12 -

excess of the limits of the Arch Policy. The Arch and Travelers Policies incorporate the same terms and conditions of coverage as the CNA Policy.

41.     At no time in the course of underwriting and issuing their respective policies did either Arch or Travelers ever indicate to Joy Global that it took a materially different or narrower view of the scope of coverage under its policy than CNA represented was available under the CNA Policy. On the contrary, at all material times, Arch and Travelers have been content to indicate that they agree with CNA's representations and positions, even where they have not, or may have not, responsibly inquired into or informed themselves about CNA's representations or positions.

C.     The CNA Policy

42.     The CNA Policy provides that:

> The Insurer [CNA] shall pay on behalf of the Insured Entity [Joy Global] that Loss resulting from any Securities Claim first made against the Insured Entity during the Policy Period or Extended Reporting Period, if applicable, for a Wrongful Act.

Exhibit A, § I, at 1. Terms capitalized in the CNA Policy are defined in the CNA Policy.

43.     "Loss" means, in relevant part:

> those amounts that the Insured Persons [or the Insured Entity] . . . are legally liable to pay as awards, settlements or judgments (including any award of pre-judgment and post-judgment interest on a covered judgment) and Defense Costs, Inquiry Costs, Shareholder Derivative Demand Investigation Costs and Books and Records Costs.

Exhibit A, § II, at 5.

44.     "Securities Claim" means, in relevant part:

> a Claim made against any Insured:
>
> 1.     alleging, arising out of, based upon or attributable to the purchase or sale or offer or solicitation of an offer to purchase or sell any securities of an Insured Entity; or

- 13 -

2.      brought by or on behalf of one or more security holders of an Insured Entity in their capacity as such;

. . . .

Exhibit A, § II, at 7-8.

45.    "Defense Costs" means:

reasonable fees, costs, [and] expenses . . . consented to by the Insurer (such consent not to be unreasonably withheld or delayed) and incurred by the Insureds in the investigation, adjustment, defense or appeal of any covered Claim or incurred at the Insurer's request to assist the Insurer in investigating any covered Claim . . . .

Exhibit A, § II, at 3.

46.     "Wrongful Act" means, in relevant part:

any actual or alleged error misstatement, misleading statement, act, omission, neglect or breach of duty committed or attempted by . . . an Executive . . . or an Insured Entity . . . ."

Exhibit A, § II, at 9.

47.    Like most standard-form D&O policies, the CNA Policy provides coverage to Joy

Global, not only for its *own* liabilities and defense costs resulting from "Securities Claims" (i.e.,

so-called "Side C" coverage, as provided here by the Policy's Insuring Agreement 3), but also

for those of individual directors and officers whom the company indemnifies (i.e., so-called

"Side B" coverage, as provided here by the Policy's Insuring Agreement 2).  Specifically, the

policy states:

The Insurer shall pay on behalf of the Insured Entity that Loss for which the Insured Entity has indemnified the Insured Persons [i.e., individual directors and officers] and which results from any Claim first made against the Insured Persons during the Policy Period or the Extended Reporting Period, if applicable, for a Wrongful Act.

Exhibit A, § I, at 1.

- 14 -

48. As indicated below (*see infra,* ¶¶ 55-77), the Insurers have refused to provide coverage for *any* of the amounts that Joy Global has paid and agreed to pay to settle the Securities Claims on the ground that the Securities Claims constitute, and constitute entirely, a single integrated "Inadequate Consideration Claim." The CNA Policy (and the Arch and Travelers Policies, by following form) excludes from the definition of "Loss" that portion of any judgment or settlement against an "Insured Entity" or "Insured Person" that constitutes an "Inadequate Consideration Claim." Specifically, the CNA Policy states, in relevant part:

> However, Loss (other than Defense Costs) shall *not* include:
>
> *     *     *     *
>
> vi. any amount of any judgment or settlement of any Inadequate Consideration Claim other than Defense Costs . . . .

Exhibit A, § II, at 6 (emphasis added).

49. The CNA Policy defines "Inadequate Consideration Claim" to mean:

> *that part of* any *Claim alleging* that the price or consideration paid or proposed to be paid for the acquisition or completion of the acquisition of all or substantially all the ownership interest in or assets of an entity is inadequate.

Exhibit A, § II, at 4 (emphasis added).

50. As the foregoing indicates, the Policy's definition of "Inadequate Consideration Claim" excludes coverage *only* for [i] "that part of" [ii] any "Claim" [iii] "alleging that the price or consideration paid or proposed to be paid" for an acquisition is "inadequate." The "Inadequate Consideration Claim" exclusion does not bar coverage (a) for any *other* parts of any "Claim" or (b) for any "*Claim*" that does not *allege* that the price or consideration paid or proposed to be paid" for an acquisition is inadequate.

51. As the foregoing further indicates, the CNA Policy does not exclude coverage for "Defense Costs" for an "Inadequate Consideration Claim." In other words, even where a

- 15 -

"Claim" is properly excluded from coverage, in whole or in part, on the ground that it is an "Inadequate Consideration Claim," coverage is still provided for "Defense Costs" incurred in connection with such "Inadequate Consideration Claim." *See* Exhibit A, § II, at 6 (definition of "Loss," subparagraph vi).

52.     The CNA Policy's definition of "Inadequate Consideration Claim" incorporates the Policy's definition of "Claim," which, in turn, is defined to mean, in relevant part, "any civil . . . proceeding . . . alleging a Wrongful Act . . . ." Exhibit A, § II, at 2.

53.     Accordingly, the CNA Policy provides that whether a "Claim" is, in whole or in part, an "Inadequate Consideration Claim" turns on whether Joy Global or an "Executive" (i.e., a Joy Global officer or director) "committed or attempted" the "Wrongful Act" of paying or proposing to pay inadequate consideration for the acquisition of all or substantially all of the ownership interest in or assets of another entity.

54.     The CNA Policy also includes a manuscript endorsement (Endorsement No. 3), entitled "Joy Global Inc. Run Off Period Endorsement." This endorsement provides in relevant part:

> [I]f there is a Takeover of the Named Insured during the Policy Period, either directly or indirectly, by Komatsu Ltd., then in consideration of an additional premium paid in the amount of $236,250.00 [i.e., 100% of the base premium] . . . the Policy shall be amended as follows:
>
> . . .
>
> 1. Run-Off Period
>
> This Policy shall be extended for a period commencing on the effective date of the Takeover of the Named Insured by Komatsu Ltd. and expiring six (6) years thereafter (hereinafter the "Run-Off Period"), but only with respect to:
>
> a.   Claims first made against the Insureds during the Run-Off Period for any actual or alleged:

- 16 -

         i.    Wrongful Act occurring prior to the effective date of such
             Takeover; . . .

and otherwise covered pursuant to the terms, conditions, and
restrictions of this Policy.

Exhibit A, Endorsement No. 3.

D.    The Insurers' Denial of Coverage

      55.     By emails sent by its insurance broker, Marsh LLC, Joy Global gave timely notice to the Insurers of the Securities Claims promptly after each was filed and served.

      56.     In a letter to Joy Global dated November 8, 2016, CNA acknowledged coverage under the CNA Policy for "Defense Costs" incurred by Joy Global in connection with the Securities Claims but denied coverage for any and all liability in those actions, on the ground that, taken as a whole, they constituted, in their entirety, an "Inadequate Consideration Claim."

      57.     In this letter, CNA acknowledged that the plaintiffs in the Securities Claims challenged Joy Global's sale to KAC, in part, because "the Board agreed to preclusive deal protection devices, including no-solicitation and matching rights provisions, and that the proxy statement filed with the SEC in relation to the Proposed Merger is materially incomplete and misleading."

      58.     CNA's November 8, 2016, letter identified three categories of allegations made by the plaintiffs regarding the so-called "flawed process in negotiating the Proposed Merger."

      a.  *First*, plaintiffs alleged that Joy Global "push[ed] Komatsu to
           commit to certain post-close employee retention and compensation
           prior to signing the merger agreement," and that "restricted stock
           and unrestricted stock units held by non-employee Board member
           will vest upon consummation of the Proposed Merger and that Joy

- 17 -

Global's CEO, Edward Doheny II., will receive a $6.6 million cash severance payment."

b. *Second*, plaintiffs alleged that Joy Global "determin[ed] not to contact any potential bidders aside from Komatsu . . . until after announcement of the Proposed Merger and establishment of the $75 million termination fee."

c. *Third*, plaintiffs alleged that Joy Global "instruct[ed] Goldman, Sachs & Co. . . . to utilize certain pessimistic forecasts, rather than the optimistic forecasts Joy Global's management had previously prepared. . . . Goldman is also allegedly due to receive a success fee of $28.5 million contingent on completion of the Proposed Merger."

59.   Notwithstanding (a) the foregoing allegations; (b) the fact that the "Claims" pleaded in the Securities Claims included claims for misrepresentation, nondisclosure, breaches of fiduciary duty, and the like; (c) the fact that CNA sold the CNA Policy to Joy Global expressly to protect Joy Global and its directors and officers from claims arising out of the envisioned sale to KAC; and (d) the limited scope and inapplicable terms of the CNA Policy's "Inadequate Consideration Claim" exclusion, CNA's November 8, 2016, letter deemed the entire litigation (i.e., all eight Securities Claims and all claims within each of them) an "Inadequate Consideration Claim" and thus, excluded from coverage under the Policy.  CNA concluded:  "the Policy does not provide coverage for any judgement or settlement in this matter and instead will only provide coverage for Defense Costs."

- 18 -

60.     On June 19, 2017, CNA issued a further letter to Joy Global in which it acknowledged receipt of the amended *Duncan* complaint (which, as noted above, had been filed on April 26, 2017), and further acknowledged that the other seven Securities Claims had been settled. In this letter, CNA recognized that, among their other assertions, the *Duncan* plaintiffs alleged in their amended complaint that:

> on September 2, 2016, defendants issued a false and misleading Definitive Proxy Statement on Schedule 14(a) in order to secure shareholder support for the undervalued acquisition. Plaintiffs further allege that Defendants were forced to issue multiple supplemental Proxy disclosures on September 29 and October 3, 2016 in an attempt to rectify the problems, but the final Proxy still woefully failed to provide full and fair disclosures to Joy Global stockholders.

61.     CNA also recognized in its June 19, 2017, letter that the *Duncan* plaintiffs "further allege that Joy Global executives received 'golden parachutes' and exorbitant compensation on the date the merger closed." In addition, CNA acknowledged that the relief sought by the *Duncan* plaintiffs included "certification of the class, injunctive relief declaring the Proxy false and misleading, and compensatory and rescissory damages, pre and post judgment interest, attorney fees, expert fees and costs."

62.     Again, however, CNA labeled the *Duncan* litigation, in its entirety, an "Inadequate Consideration Claim" under the terms of the Policy. CNA's June 19, 2017, letter concluded that "the Policy does not provide coverage for any judgement or settlement in this matter," just as CNA declined to indemnify Joy Global for any portion of the amounts it paid to settle the seven Securities Claims other than *Duncan*, "and instead will only provide coverage for Defense Costs."

63.     On or around August 11, 2017, Arch wrote to Joy Global, referencing CNA's June 19, 2017 letter, and adopting CNA's coverage position as its own.

- 19 -

64.     On October 26, 2017, Joy Global wrote to CNA and asked it to reconsider its coverage position, noting that by declining coverage for any judgment or settlement of the Securities Claims, CNA had waived any consent rights it otherwise might have under the Policy with respect to settlement issues, and further, had waived any requirement under the Policy that Joy Global obtain CNA's consent before settling *Duncan* or making any offer of settlement in *Duncan*.

65.     In a letter dated November 14, 2017, CNA responded to Joy Global by withdrawing its disclaimer of coverage, reserving its rights, and acknowledging that the *Duncan* amended complaint, as pleaded, asserted claims and sought relief potentially within the Policy's coverage.  CNA acknowledged, for example, that the amended complaint sought "an award of 'compensatory and/or rescissory damages against the defendants,'" thereby triggering potential indemnity coverage, at a minimum, in respect to rescissory damages, as such damages are not damages for inadequate consideration.

66.     Thereafter, in reliance on CNA's withdrawal of its disclaimer and acknowledgment of potential indemnity coverage, Joy Global provided CNA with confidential information regarding its damages analyses and settlement strategy, including by making its defense counsel available to CNA, Arch, and Travelers for phone reports and hosting an in-person meeting to allow the Insurers to hear a detailed litigation report directly from, and to pose any questions that they had to, Joy Global's Securities Claims defense counsel.  In advance of these discussions, Insurers signed a written Confidentiality Agreement agreeing, *inter alia*, not to use any confidential defense information provided by Joy Global for purposes of "evaluating whether or not insurance coverage is available" for the Securities Claims.

67.     Joy Global also responded to CNA's November 14, 2017, letter with an extensive letter dated December 22, 2017, that once again urged CNA to affirmatively recognize its contractual obligation to provide indemnity coverage for the Securities Claims, and that provided a detailed rebuttal to CNA's assertions in regard to why such coverage might not be available.

68.     Over the course of the next two months, while the parties to the *Duncan* suit awaited a ruling from this Court on Joy Global's motion to dismiss the amended complaint, Joy Global's defense counsel and the *Duncan* plaintiffs' counsel initiated exploratory settlement discussions.  Joy Global kept the Insurers apprised of these discussions, in an abundance of caution and a spirit of cooperation.

69.     On February 28, 2018, Joy Global requested that CNA, Arch, and Travelers consent to a proposed settlement of the *Duncan* suit.

70.     On or around March 7, 2018, CNA responded by disclaiming coverage for the proposed settlement in full.  CNA instructed Joy Global "to act as a prudent uninsured" with respect to whether to settle the *Duncan* action on the terms proposed.

71.     On or around March 8, 2018, Arch likewise disclaimed coverage for the proposed *Duncan* settlement, agreeing with and adopting the coverage position set forth in CNA's coverage correspondence, including CNA's March 7, 2018 letter.

72.     On or around March 8, 2018, Travelers followed suit and similarly disclaimed coverage for the proposed *Duncan* settlement, adopting the responses set forth in CNA's March 7, 2018, letter and Arch's March 8, 2018, letter.

73.     Despite the Insurers' improper denial of coverage and refusal to consent to the proposed *Duncan* settlement, in order to protect its interests, Joy Global agreed to the settlement

proposal of the *Duncan* plaintiffs, without any assurance that any of the Insurers would honor their coverage obligations, and Joy Global continued to reserve its rights vis-à-vis the Insurers.

74.     The Insurers' denial of coverage is not supported by the language of the insurance policies they issued, the terms of the underlying allegations in the *Duncan* action, or governing Wisconsin law.

75.     The Insurers' denial of coverage is also irreconcilably inconsistent with CNA's prior acknowledgment of the potential for coverage due to, *inter alia*, the *Duncan* plaintiffs' misrepresentation allegations and demand for rescissory damages.  At the time of the *Duncan* settlement, the terms and scope of the *Duncan* plaintiffs' claims remained exactly as they had been pleaded in the amended complaint.  The *Duncan* "Claims" were thus exactly the same at the time of settlement as they had been on November 14, 2017, when CNA had issued its letter reversing its denial of coverage and acknowledging the potential for coverage for a judgment or settlement in *Duncan*.  There was, and remains, no basis for CNA to have reversed its position, yet again, to deny all indemnity coverage.

76.     In addition, in disclaiming coverage for the settlement, CNA improperly relied upon and referenced confidential information disclosed to CNA at an in-person meeting with defense counsel, in violation of the Confidentiality Agreement it had signed with Joy Global.

77.     Further, and most disturbingly, the Insurers' denial of coverage is directly at odds with the representations, inducements, and assurances that CNA made at the time that it underwrote and issued the CNA Policy with respect to the availability of coverage for the proposed transaction.  CNA indicated, and Joy Global understood, that it would be covered for claims like the Securities Claims when it bought the Policy.

E.    CNA's Refusal to Reimburse Reasonable Defense Costs

78.    CNA has acknowledged that the Policy affords coverage for "Defense Costs" incurred in the Securities Claims.

79.    In order to defend itself in the Securities Actions, and consistent with common practice in securities class action litigation, Joy Global hired two law firms: Arnold & Porter Kaye Scholer LLP ("APKS") as its primary defense counsel and Foley & Lardner LLP ("Foley") as its local counsel.   In addition, Wachtell, Lipton, Rosen & Katz LLP ("Wachtell") was retained to represent the individual defendants named in the *Duncan* action.

80.    On July 19, 2017, Joy Global identified these firms to CNA, along with the hourly billing rates of the attorneys involved, and reported the defense costs incurred to date.

81.    On August 8, 2017, CNA responded to Joy Global's July 19, 2017, letter and "consent[ed] to the retention of Arnold & Porter Kaye Scholer LLP; Wachtell, Lipton, Rosen & Katz; and Foley & Lardner LLP at the rates described."

82.    Joy Global has periodically submitted invoices from these three law firms to CNA for reimbursement of Defense Costs incurred in the Securities Claims.  All Defense Costs that Joy Global has submitted for reimbursement by CNA are for amounts that (a) exceed Joy Global's self-insured retention under the CNA Policy; (b) Joy Global has determined are reasonable; and (c) Joy Global has paid itself, or is in the process of paying itself, irrespective of whether CNA fully honors its contractual obligation to reimburse Defense Costs.

83.    While CNA has reimbursed certain Defense Costs submitted by Joy Global, CNA has refused to pay or reimburse hundreds of thousands of dollars of Joy Global's Defense Costs.

- 23 -

## COUNT ONE

## DECLARATORY JUDGMENT
### (All Defendants)

84.     Joy Global repeats and incorporates the allegations set forth in the foregoing paragraphs as if fully set forth herein.

85.     An actual controversy exists between Joy Global, on one hand, and each of CNA, Arch, and Travelers, on the other hand, concerning Joy Global's legal rights and the Insurers' respective legal obligations to pay on behalf of Joy Global, under the insurance policies that each Insurer issued to Joy Global, the costs Joy Global has incurred and will continue to incur to defend and resolve the Securities Claims, including without limitation the *Duncan* action.

86.     Joy Global contends, without limitation, that all of its defense and settlement costs in excess of its self-insured retention are covered under the Insurers' policies and obligate the Insurers to pay such costs on behalf of Joy Global.  By contrast, each of CNA, Arch, and Travelers contends that none of the costs of settling the Securities Claims are covered under their respective policies, and CNA contends that only a portion of the costs of defending the Securities Claims are covered under the CNA Policy.

87.     This controversy is of sufficient immediacy to justify the issuance of a declaratory judgment.  The issuance of declaratory relief by this Court may terminate some of the existing controversy between the parties.

88.     Pursuant to 28 U.S.C. § 2201, other applicable law, and the inherent equitable powers of this Court, Joy Global is entitled to a declaration of the rights and obligations of the parties, including but not limited to a finding that Insurers are obligated to pay on behalf of Joy Global all amounts, in excess of its self-insured retention, that it has incurred or may hereafter

- 24 -

incur as a result of the Securities Claims, including without limitation any and all such defense and settlement payments.

## COUNT TWO

**BREACH OF CONTRACT**
**WITH RESPECT TO INDEMNITY COVERAGE**
**(All Defendants)**

89.     Joy Global repeats and incorporates the allegations set forth in the foregoing paragraphs as if fully set forth herein.

90.     Each of the three insurance policies at issue in this case is a valid and enforceable contract between Joy Global, on one hand, and CNA, Arch, or Travelers, respectively, on the other hand.

91.     Joy Global has complied fully with the terms and conditions of the insurance policies and has performed all of its obligations under the policies.

92.     Each of the Insurers has refused to pay or reimburse settlement costs that Joy Global has incurred in the eight Securities Claims in excess of Joy Global's self-insured retention, and/or has repudiated or anticipatorily breached its obligation to pay such amounts, including all amounts that Joy Global has paid to settle the eight Securities Claims, including *Duncan*.

93.     Each Insurer's refusal to pay or indemnify settlement costs in the Securities Claims constitutes a breach of the commitments that the Insurer made in the contract of insurance that it sold and issued to Joy Global.

94.     As a direct and proximate result of each Insurer's breaches of its contract of insurance with Joy Global, Joy Global has been deprived of the benefits of its liability insurance coverage for which it paid substantial premiums.

- 25 -

95.     As a direct and proximate result of each Insurer's breaches of its contract of insurance with Joy Global, Joy Global has incurred damages in an amount to be proven at trial and that, with respect to each Insurer, exceed the amount required to invoke the jurisdiction of this Court.

96.     Joy Global has presented written notice of its claims for indemnity and the amount of its claims for indemnity to each Insurer, and no Insurer has paid Joy Global's claims within 30 days of such notice.  Further, no Insurer has reasonable proof that it is not responsible for the payment demanded.  Accordingly, pursuant to Wisconsin Statute § 628.46, Joy Global is entitled to recover interest at a rate of at least 7.5 percent per year for the period starting 30 days after Joy Global's written notice until payment of the indemnity owed.

## COUNT THREE

### BREACH OF CONTRACT
### WITH RESPECT TO DEFENSE COSTS COVERAGE
### (Defendant CNA Only)

97.     Joy Global repeats and incorporates the allegations set forth in the foregoing paragraphs as if fully set forth herein.

98.     The insurance policy issued by CNA is a valid and enforceable contract between Joy Global and CNA.

99.     Joy Global has complied fully with the terms and conditions of the CNA Policy and has performed all of its obligations under the CNA Policy.

100.    CNA is obliged under the CNA Policy to pay "all reasonable fees, costs, [and] expenses . . . consented to by the Insurer" in connection with the Securities Claims and is forbidden by that same policy from unreasonably withholding consent to such fees, costs, and expenses.

- 26 -

101. CNA has breached its obligations under the CNA Policy to fully pay Joy Global's reasonable defense costs in defending the Securities Claims.

102. As a result of CNA's breaches of contract, Joy Global has incurred damages in an amount to be proven at trial that exceeds the amount required to invoke the jurisdiction of this Court.

103. Joy Global has presented written notice of the fact of its claim for defense costs and the amount of its claim for defense costs to CNA, and CNA has not paid Joy Global's claims within 30 days of such notice. Further, CNA does not have reasonable proof that it is not responsible for the payment demanded. Accordingly, pursuant to Wisconsin Statute § 628.46, Joy Global is entitled to recover interest at a rate of at least 7.5 percent per year for the period starting 30 days after Joy Global's written notice until payment of the defense costs owed.

**COUNT FOUR**

**BREACH OF THE IMPLIED COVENANT OF**
**GOOD FAITH AND FAIR DEALING**
**(Defendant CNA Only)**

104. Joy Global repeats and incorporates the allegations set forth in the foregoing paragraphs as if fully set forth herein.

105. The insurance policy issued by CNA is a valid and enforceable contract between Joy Global and CNA.

106. Joy Global has complied fully with the terms and conditions of the CNA Policy and has performed all of its obligations under the CNA Policy.

107. At all material times, CNA has had a duty to act fairly and in good faith toward Joy Global in connection with the CNA Policy.

108. CNA's obligation to act fairly and in good faith toward Joy Global requires CNA to provide the coverage promised under the CNA Policy and that CNA represented and induced

- 27 -

Joy Global to believe it would have under the CNA Policy when it underwrote, issued, and sold the Policy, including its Run-Off Endorsement, to Joy Global. CNA's obligation to act fairly and in good faith toward Joy Global also requires CNA to abide by its Confidentiality Agreement with Joy Global.

109. CNA has breached its duty of good faith and fair dealing by wrongfully, knowingly, and without a reasonable or fairly debatable basis refusing to provide the insurance coverage that it promised, and that is due and owing, to Joy Global. In particular, and without limitation, CNA:

    a. while negotiating the renewal of the CNA Policy, and in order to induce Joy Global to purchase the Policy, willfully concealed and/or misrepresented its now-revealed position that the CNA Policy does not provide indemnity coverage for acquisition-related litigation — a position that is contrary to both (i) the language of the CNA Policy and (ii) what CNA knew to be Joy Global's understanding and expectation at the time of underwriting;

    b. changed its original coverage position from a denial of indemnity coverage to a reservation of rights, solely in order to induce Joy Global to provide sensitive and confidential information regarding its defense and settlement strategy;

    c. used Joy Global's confidential and sensitive information regarding the defense and settlement of the *Duncan* action, which it obtained solely by withdrawing its original denial of indemnity coverage, to support its second and ultimate denial of coverage, in violation of the Confidentiality Agreement it signed with Joy Global;

- 28 -

d.   unreasonably reversed its coverage position a second time, reverting from its reservation of rights back to its original position (i.e., a complete denial of indemnity coverage) — promptly after the *Duncan* settlement was agreed in principle and tendered for coverage approval; once it had obtained confidential information by misleading Joy Global into expecting that at least some indemnity coverage would be provided; and notwithstanding that there had been no material change in the posture or substance of the *Duncan* case that could possibly justify a second reversal of its coverage position;

e.   in response to Joy Global's repeated requests for cooperation and consent, delayed action unreasonably to risk prejudice to and pressure Joy Global in the *Duncan* litigation, such that Joy Global ultimately felt it needed to protect its own interests as if it were a "prudent uninsured;" and

f.   without any reasonable basis in fact or law, and for its own purposes and to its own advantage, knowingly took unreasonable positions concerning the coverage provided by the CNA Policy.

110.   CNA committed these acts to enrich CNA and for the purpose of consciously withholding from Joy Global the rights and benefits to which Joy Global is entitled under the CNA Policy.

111.   CNA's actions are inconsistent with the reasonable expectations of its insured, are contrary to established norms, practices and legal requirements related to insurance claims, are contrary to the express terms of the CNA Policy and the Confidentiality Agreement between

- 29 -

CNA and Joy Global, and constitute a breach of the implied covenant of good faith and fair dealing.

112.    As a direct and proximate result of CNA's breaches and violations, Joy Global has suffered and continues to suffer substantial damages, in an amount to be determined at trial that exceeds the amount required to invoke the jurisdiction of this Court.  Such damages include, without limitation, amounts that should have been paid under the CNA Policy, damages for the loss of use of funds, and damages to compensate Joy Global for the costs it has been forced to incur in the costly effort to prove its entitlement to coverage.

## PRAYER FOR RELIEF

WHEREFORE, Joy Global respectfully requests that this Court enter judgment in its favor and against each Insurer as follows:

    a.  declaring the parties' respective rights and obligations under the insurance policies at issue and declaring further that each Insurer is obligated to pay on behalf of Joy Global all loss that Joy Global has incurred, or may hereafter incur, in connection with the Securities Claims, including all amounts incurred or to be incurred by Joy Global to defend, settle, or otherwise resolve the Securities Claims;

    b.  awarding compensatory damages to Joy Global according to proof at trial, including without limitation (i) damages equivalent to the amount of the insurance proceeds that Insurers have wrongfully withheld from Joy Global and (ii) damages sufficient to compensate Joy Global for costs and losses incurred to prove its entitlement to coverage in the face of CNA's breach of its duty of good faith and fair dealing;

- 30 -

c.  awarding pre-judgment and post-judgment interest, including any and all interest due and owing under Wisconsin Statute § 628.46;

d.  awarding reasonable attorney fees and costs incurred in obtaining the benefits due under the CNA Policy;

e.  awarding pre-judgment and post-judgment interest on such attorney fees and costs; and

f.  awarding such further and other relief as the Court may deem just and proper.

## **JURY DEMAND**

Joy Global demands a trial by jury on all issues so triable that are raised in this Complaint.

Dated this 28th day of December, 2018.

**MICHAEL BEST & FRIEDRICH LLP**


By: *s/Patricia L. Jenness*
     Daniel J. Vaccaro, SBN 1018037
     Patricia L. Jenness, SBN 1082658
     djvaccaro@michaelbest.com
     pljenness@michaelbest.com
     100 E. Wisconsin Avenue, Suite 3300
     Milwaukee, WI 53202
     Ph.:  414-271-6560
     Fax: 414-277-0656

And

COVINGTON & BURLING LLP
Allan B. Moore
One CityCenter
850 Tenth Street, NW
Washington, DC  20001
Tel. (202) 662-5575
Fax (202) 778-5581
abmoore@cov.com

*Counsel for Plaintiff Joy Global, Inc.*
*(n/k/a Komatsu Mining Corp.)*

043102-0210\24898900.v1