# EXHIBIT B



**ARCH INSURANCE COMPANY**
(A Missouri Corporation)

Home Office Address:
2345 Grand Blvd, Suite 900
Kansas City, MO 64108

Administrative Address:
311 South Wacker Drive
Suite 3700
Chicago, IL 60606
Tel: (312) 601-8408

## ARCH ESSENTIAL EXCESS POLICY®
## FOLLOW FORM EXCESS LIABILITY INSURANCE POLICY

THIS POLICY APPLIES ONLY TO CLAIMS FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD.

### DECLARATIONS

Policy No.: DOX 9300349-02

**Item 1.** Named Insured & Address:
JOY GLOBAL INC.
100 EAST WISCONSIN AVENUE
MILWAUKEE, WI 53202

**Item 2.** Policy Period:
From: July 31, 2016
To: July 31, 2017
12:01 a.m. local time at the address stated in Item 1

**Item 3.** Limit of Liability: $10,000,000
Excess Of $10,000,000

**Item 4.** Underlying Insurance:

Primary Policy

| Insurer: | Policy No.: | Limit of Liability: | Attachment: |
|---|---|---|---|
| Columbia Casualty Company | 287049801 | $10,000,000 | |

<u>Underlying</u>
<u>Excess Policies</u>

**Item 5.** Extended Reporting Period:

Additional Period: N/A month(s)
Additional Premium: $0.00

**Item 6.** Notices to Insurer:

Notices Of Claim(s) To Be Sent To:
Arch Insurance Company
Executive Assurance Claims
1299 Farnam Street, Suite 500
Omaha, NE 68102
P.O. Box 542033
Omaha, NE 68154
Phone: 877 688-ARCH (2724)
Fax: 866 266-3630
E-mail: Claims@ArchInsurance.com

All Other Notices To Be Sent To:
Arch Insurance Company
Executive Assurance Underwriting
One Liberty Plaza, 53rd Floor
New York, NY 10006
Fax: (212) 651-6499

**Item 7.** Policy Premium: $145,000.00
Premium attributable to Terrorism Risk Insurance: $0.00
Included In Policy Premium [X]
In Addition To Policy Premium [ ]

**Item 8.** Endorsements: See attached schedule of endorsements and notices.

EXHIBIT B

## SCHEDULE OF FORMS AND ENDORSEMENTS

| NAMED INSURED: JOY GLOBAL INC. | TERM: July 31, 2016 | to July 31, 2017 |
|---|---|---|
| POLICY NUMBER: DOX 9300349-02 | | |

| ENDT. NO. | FORM NO. | TITLE |
|---|---|---|
| | 05 DOX0205 00 10 09 | ARCH ESSENTIAL EXCESS POLICY DECLARATIONS |
| | 05 ML0002 00 12 14 | SIGNATURE PAGE (ARCH INSURANCE) |
| | 00 DOX0204 00 10 09 | ARCH ESSENTIAL EXCESS POLICY |
| 1 | 00 ME0426 00 04 10 | EXTENDED REPORTING PERIOD OPTIONS |
| | 00 ML0065 00 06 07 | U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") |
| | 00 MLT0027 00 01 15 | TERRORISM COVERAGE DISCLOSURE NOTICE |



Signature Page

IN WITNESS WHEREOF, Arch Insurance Company has caused this policy to be executed and attested.

John Mentz
President

Patrick Nails
Secretary

## ARCH ESSENTIAL EXCESS®

### FOLLOW FORM EXCESS LIABILITY INSURANCE POLICY

In consideration of the payment of the premium and in reliance upon the **Application**, the Insurer specified in the Declarations (the "**Insurer**") and the **Insureds** agree as follows:

1. **INSURING AGREEMENT**

   This Policy provides excess coverage after exhaustion of the **Underlying Limit**. Except as otherwise provided in this Policy, coverage under this Policy shall follow form to, and apply in conformance with, the provisions of the Primary **Policy** as of the inception of this Policy. Notwithstanding the foregoing, this Policy shall provide no broader coverage than the most restrictive policy of **Underlying Insurance**.

2. **EXHAUSTION OF THE UNDERLYING LIMIT**

   A. The **Underlying Limit** shall be exhausted by payment, in legal currency, of covered **Loss** by the insurers of **Underlying Insurance**, the **Insureds**, or any **DIC Insurer**.

   B. If this Policy becomes primary insurance because of the exhaustion of the **Underlying Limit**, the applicable deductible or retention of the Primary **Policy** shall apply to each **Claim** handled by the **Insurer** on a primary insurance basis. No deductible or retention shall apply to any **Claim** handled by the **Insurer** on an excess insurance basis.

   C. If any policy of **Underlying Insurance** grants any coverage subject to a sub-limit of liability, this Policy shall not offer such coverage. However, this Policy shall recognize any reduction of the **Underlying Limit** by any payment under such coverage.

3. **DEFINITIONS**

   Whether used in the singular or plural, the following terms shall have the meanings specified below:

   A. "**Application**", "**Claim**", and "**Loss**" shall have the same meaning specified for such terms in the Primary Policy.

   B. "**DIC Insurer**" means any insurer of an insurance policy written specifically excess of this Policy that is contractually obligated to drop down and pay covered **Loss** that is not paid by any **Underlying Insurance**. This Policy does not follow form to the provisions of the policy of such **DIC Insurer**.

   C. "**Insureds**" means all persons and entities entitled to coverage under the Primary Policy.

   D. "**Primary Policy**" and any "**Underlying Excess Policies**" are identified in Item 4 of the Declarations.

   E. "**Underlying Insurance**" means the Primary Policy and any Underlying Excess Policies.

   F. "**Underlying Limit**" means the aggregate sum of all limits of liability of all **Underlying Insurance**.

4. **LIMIT OF LIABILITY**

   The Limit of Liability specified in Item 3 of the Declarations is the maximum aggregate amount that the **Insurer** shall pay under this Policy for all covered **Loss**, including, without limitation, defense costs.

5. **DUTIES IN THE EVENT OF A CLAIM**

   The **Insureds** shall give notice to the **Insurer** of any **Claim** or potential **Claim** in conformance with the notice provisions of the Primary **Policy** except that such notice shall be delivered to the address specified in Item 6 of the Declarations. The **Insurer** shall have the right to participate in the investigation, settlement and defense of any **Claim** noticed under this Policy, even if the **Underlying Limit** has not been exhausted. The **Insureds** shall give the **Insurer** all information and cooperation as the **Insurer** may reasonably request.

6. **EXTENDED REPORTING PERIOD**

   If the **Insureds** elect and are granted an extended reporting period or discovery period under all **Underlying Insurance**, then the **Insureds** shall also be entitled to elect an extended reporting period under this Policy. Such extended reporting period shall follow form to, and apply in conformance with, the provisions of the Primary Policy provided that the premium and duration of such extended reporting period shall be as specified in Item 5 of the Declarations.

7. **MAINTENANCE OF UNDERLYING INSURANCE**

   All **Underlying Insurance** shall be maintained in full effect. Failure to maintain any **Underlying Insurance** shall: (i) result in the **Insureds** becoming self-insured for the limit of liability of any such **Underlying Insurance**; and (ii) not relieve the **Insurer** of any obligation under this Policy.

8. **CHANGES**

   This Policy shall not be changed or assigned in any manner except by written agreement of the **Insurer**.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**EXTENDED REPORTING PERIOD OPTIONS**

It is agreed that Item 5. of the Declarations is deleted and replaced by:

**Item 5. Extended Reporting Period Options:**

| | |
|---|---|
| Additional Period: | 72 month(s) |
| Additional Premium: | 100% of the annual premium |

All other terms and conditions of this Policy remain unchanged.

Endorsement Number: 1

Policy Number: DOX 9300349-02

Named Insured: JOY GLOBAL INC.

This endorsement is effective on the inception date of this Policy unless otherwise stated herein:

Endorsement Effective Date: July 31, 2016

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

00 ME0426 00 04 10  
00 ML0207 00 11 03

Page 1 of 1

00 ML0065 00 06 07   Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Page 1 of 1

Case 2:18-cv-02034-LA   Filed 12/28/18   Page 5 of 6   Document 1-2

# TERRORISM COVERAGE DISCLOSURE NOTICE
## TERRORISM COVERAGE PROVIDED UNDER THIS POLICY

The Terrorism Risk Insurance Act of 2002 as amended and extended by the Terrorism Risk Insurance Program Reauthorization Act of 2015 (collectively referred to as the "Act") established a program within the Department of the Treasury, under which the federal government shares, with the insurance industry, the risk of loss from future terrorist attacks. An act of terrorism is defined as any act certified by the Secretary of the Treasury, in consultation with the Secretary of Homeland Security and the Attorney General of the United States, to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States Mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

In accordance with the Act, we are required to offer you coverage for losses resulting from an act of terrorism **that is certified under the federal program** as an act of terrorism. The policy's other provisions will still apply to such an act. Your decision is needed on this question: do you choose to pay the premium for terrorism coverage stated in this offer of coverage, or do you reject the offer of coverage and not pay the premium? You may accept or reject this offer.

If your policy provides commercial property coverage, in certain states, statutes or regulations may require coverage for fire following an act of terrorism. In those states, if terrorism results in fire, we will pay for the loss or damage caused by that fire, subject to all applicable policy provisions including the Limit of Insurance on the affected property. Such coverage for fire applies only to direct loss or damage by fire to Covered Property. Therefore, for example, the coverage does not apply to insurance provided under Business Income and/or Extra Expense coverage forms or endorsements that apply to those coverage forms, or to Legal Liability coverage forms or Leasehold Interest coverage forms.

Your premium **will** include the additional premium for **terrorism as stated in the section of this Notice titled DISCLOSURE OF PREMIUM.**

### DISCLOSURE OF FEDERAL PARTICIPATION IN PAYMENT OF TERRORISM LOSSES
The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. **The federal share equals 85% in 2015, 84% in 2016, 83% in 2017, 82% in 2018, 81% in 2019, and 80% in 2020 of that portion of the amount of such insured losses that exceeds the applicable insurer deductible during Calendar Year 2015 and each Calendar Year thereafter through 2020.**

### DISCLOSURE OF CAP ON ANNUAL LIABILITY
If the aggregate insured terrorism losses of all insurers exceed $100,000,000,000 during any Calendar Year provided in the Act, the Secretary of the Treasury shall not make any payments for any portion of the amount of such losses that exceed $100,000,000,000, and if we have met our insurer deductible, we shall not be liable for the payment of any portion of such losses that exceeds $100,000,000,000.

### DISCLOSURE OF PREMIUM
Your premium for terrorism coverage is: $0.00
This charge/amount is applied to obtain the final premium.)
You may **choose to reject the offer by signing the statement below and returning it to us. Your policy will be changed to exclude the described coverage.** If you chose to accept this offer, this form does not have to be returned.

### REJECTION STATEMENT

| I hereby decline to purchase coverage for certified acts of terrorism. I understand that an exclusion of certain terrorism losses will be made part of this policy. |
|---|

|  |  |
|---|---|
| Policyholder/Legal Representative/Applicant's Signature | JOY GLOBAL INC. |
|  | Named Insured |
|  | Arch Insurance Company |
| Print Name of Policyholder/Legal Representative /Applicant | Insurance Company |
| Date: | Policy Number: DOX 9300349-02 |

Case 2:18-cv-02034-LA   Filed 12/28/18   Page 6 of 6   Document 1-2