# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN

|  |  |
|---|---|
| JOY GLOBAL INC. (n/k/a KOMATSU MINING CORP.), | Civil Action No.: 18-2034 |
| Plaintiff, | **ANSWER AND AFFIRMATIVE DEFENSES OF DEFENDANT ARCH INSURANCE COMPANY** |
| v. | |
| COLUMBIA CASUALTY COMPANY, ARCH INSURANCE COMPANY, and TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, | |
| Defendants. | **JURY TRIAL DEMANDED** |

Defendant Arch Insurance Company ("Arch"), by and through its counsel, and for its Answer and Affirmative Defenses to the Complaint filed by Plaintiff Joy Global, Inc. ("Joy Global" or "Plaintiff"), denies each and every allegation of the Complaint not specifically admitted below, and further states as follows:

## NATURE OF THE ACTION

1.       This is an action for declaratory relief and money damages for breach of contract and breach of the implied covenant of good faith and fair dealing against defendants, who are insurance companies that have wrongfully refused to provide insurance coverage to plaintiff, their insured, for liabilities and defense costs arising out of and relating to underlying securities claims. As indicated below, the defendants sold their insurance policies to plaintiff on the basis of express representations that the policies would cover liabilities of the sort at issue in this case, and now that plaintiff has paid its insurance premiums, been subjected to underlying claims, and suffered the covered defense costs and liabilities at issue, they have wrongfully and unjustly denied coverage.

**ANSWER:**  Arch admits that the defendants are insurance companies and that Joy Global has filed this action alleging causes of action for declaratory judgment and breach of

contract against all defendants, and a cause of action for breach of an implied covenant of good faith and fair dealing against Columbia Casualty Company ("Columbia Casualty"). Arch denies the remaining allegations of Paragraph 1.

2.     Plaintiff Joy Global Inc. ("Joy Global"), now known as Komatsu Mining Corp., is a manufacturer and servicer of heavy mining equipment headquartered in Milwaukee, Wisconsin. Joy Global's history of manufacturing and employing people in Milwaukee, and elsewhere in the United States and overseas, dates back over 130 years to the 1880s. In April 2017, Joy Global was acquired by Komatsu America Corp. ("KAC") and renamed Komatsu Mining Corp. In connection with its sale to KAC, Joy Global and various of its officers and directors were named as defendants in a series of eight lawsuits (collectively, the "Securities Claims") filed by Joy Global shareholders, who claimed that Joy Global and its officers breached fiduciary duties, made material misrepresentations and nondisclosures, and committed other wrongs in connection with the sale of Joy Global to KAC.

**ANSWER:** Arch admits that Joy Global and various of its officers and directors were named as defendants in a series of eight lawsuits, which Joy Global refers to in the Complaint as the "Securities Claims." Joy Global has attempted to summarize the allegations of those lawsuits, but Arch denies that Joy Global has done so accurately and/or completely. Arch refers to the filings in those lawsuits for a full and complete statement of their contents. Arch denies any characterizations by Joy Global that are inconsistent with the filings in those lawsuits. Arch lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 2.

3.     Defendants Columbia Casualty Company ("CNA"), Arch Insurance Company ("Arch"), and Travelers Casualty and Surety Company of America ("Travelers," and collectively with CNA and Arch, the "Insurers") are insurance companies that sold directors and officers ("D&O") liability insurance policies to Joy Global, in which they promised to pay on behalf of Joy Global and its directors and officers the liabilities and defense costs that Joy Global has

incurred, and is continuing to incur, in connection with the Securities Claims. Insurers have breached these commitments and, in the case of CNA, have breached the implied covenant of good faith and fair dealing that is an essential component of every insurance policy in Wisconsin.

**ANSWER:** Arch admits that Columbia Casualty, Arch and Travelers are insurance companies that issued certain insurance policies to Joy Global. Arch refers to those policies for a full and complete statement of their contents. Arch denies any characterizations by Joy Global that are inconsistent with the policies. Arch denies the remaining allegations of Paragraph 3.

4. Specifically, as Joy Global's primary insurer, CNA induced Joy Global to buy the CNA policy (and the follow-form Arch and Travelers excess policies) at issue:

    a. very shortly after the Joy Global transaction was announced in July 2016, and with the knowledge and expectation that claims of the sort pleaded in the Securities Claims were likely to be brought against Joy Global;

    b. through representations that led, and were designed to lead, Joy Global to understand that its liabilities and defense costs in connection with the Securities Claims would be insured; and

    c. for double the premium that CNA otherwise would have charged Joy Global, if Joy Global had bought the policy without CNA's insistence that claims like those pleaded in the Securities Claims were likely to ensue and its assurance that they would be covered under the CNA policy.

**ANSWER:** Arch denies the allegations of Paragraph 4 insofar as they pertain to Arch. Arch lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 4.

5. Joy Global now brings this action to vindicate its rights under the Insurers' policies and Wisconsin law; to recover its losses resulting from the Insurers' breaches of the

insurance policies that they sold to Joy Global; and to recover damages for CNA's violation of its duty of good faith and fair dealing toward Joy Global.

**ANSWER:** Arch admits that Joy Global has filed this action and purports to seek declaratory relief and damages pursuant to the causes of action asserted. Arch denies that it is liable to Joy Global under any cause of action, denies that Joy Global is entitled to any relief whatsoever, and denies the remaining allegations of Paragraph 5.

## THE PARTIES

6.      Plaintiff Joy Global Inc. ("Joy Global"), now known as Komatsu Mining Corp., is a corporation organized under the laws of Delaware with its principal place of business in Milwaukee, Wisconsin. Joy Global is a manufacturer and distributor of mining equipment, systems, and services.

**ANSWER:** Arch lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 6.

7.      Defendant Columbia Casualty Company ("CNA"), a wholly owned subsidiary of CNA Financial Corporation, is a corporation organized under the laws of Illinois with its principal place of business in Chicago, Illinois. CNA is engaged in the insurance business in Wisconsin, and it issued the CNA insurance policy at issue to Joy Global in Milwaukee, Wisconsin.

**ANSWER:** Arch lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 7.

8.      Defendant Arch Insurance Company ("Arch") is a corporation organized under the laws of Missouri with its principal place of business in Jersey City, New Jersey. Arch is engaged in the insurance business in Wisconsin and issued the Arch insurance policy at issue to Joy Global in Milwaukee, Wisconsin.

**ANSWER:** Arch admits the allegations of Paragraph 8.

9.      Travelers Casualty and Surety Company of America ("Travelers") is a

corporation organized under the laws of Connecticut with its principal place of business in Hartford, Connecticut. Travelers is engaged in the insurance business in Wisconsin and issued the Travelers insurance policy at issue to Joy Global in Milwaukee, Wisconsin.

**ANSWER:** Arch lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 9.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a) because the citizenship of the parties is diverse and the amount in controversy exceeds $75,000, exclusive of interest and costs.

**ANSWER:** Arch does not dispute subject-matter jurisdiction.

11. This Court has personal jurisdiction over each of the Insurers because each Insurer engages in the insurance or other business in Wisconsin; is licensed to transact insurance business in Wisconsin; sold and/or delivered one of the insurance policies at issue to Joy Global in Wisconsin; and/or contracted to insure Joy Global for loss in Wisconsin, including the losses complained of in this action.

**ANSWER:** Arch does not dispute personal jurisdiction.

12. Venue is proper in this district under 28 U.S.C. § 1391(a)-(b) because this district has personal jurisdiction over all named defendants; the insurance policies at issue were sold and issued to a Wisconsin resident in this district; and a substantial part of the events or omissions giving rise to the pleaded claims occurred in this district.

**ANSWER:** Arch does not dispute that venue is proper in this district.

## FACTS

A. <u>Joy Global's Sale to Komatsu and the Ensuing Securities Claims</u>

13. Joy Global is a Milwaukee-based manufacturer of mining equipment and provider of mining-related systems and services whose history in Milwaukee dates back to the 1880s.

**ANSWER:** Arch lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 13.

14.     In January 2016, Komatsu America Corp. ("KAC") approached Joy Global to discuss the potential merits of a combination between the two companies. Following the completion of a financial analysis conducted by Goldman Sachs and after months of negotiations, KAC and Joy Global entered into an agreement, dated July 21, 2016, pursuant to which KAC committed to acquire Joy Global.

**ANSWER:** Arch lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 14.

15.     That same day, Joy Global publicly announced that it had agreed to be acquired by KAC and informed investors that it would file a proxy statement with information about the proposed transaction. Joy Global's Form 8-K announcing the proposed transaction was accompanied by a copy of the parties' acquisition agreement, a press release, and an investor presentation regarding the proposed transaction.

**ANSWER:** Arch admits that Joy Global filed an 8-K dated July 21, 2016. Joy Global has attempted to summarize the 8-K, but Arch denies that Joy Global has done so accurately and/or completely. Arch refers to the 8-K for a full and complete statement of their contents. Arch denies any characterizations by Joy Global that are inconsistent with the 8-K.

16.     On August 15, 2016, Joy Global filed a preliminary proxy statement with the United States Securities and Exchange Commission ("SEC"), and on September 2, 2016, Joy Global filed a definitive proxy statement. Both proxy statements contained extensive disclosures of the analysis undertaken and the information considered by Joy Global's board of directors in approving the company's proposed sale to KAC. The proxy statements further disclosed the success fee that would be due to Goldman Sachs, and the compensation and benefits that would be due to certain Joy Global directors and officers, if the transaction were consummated.

**ANSWER:** Arch admits the allegations of the first sentence of Paragraph 16. Joy Global has attempted to summarize the proxy statements, but Arch denies that Joy Global has done so accurately and/or completely. Arch refers to the proxy statements lawsuits for a full and complete statement of their contents. Arch denies any characterizations by Joy Global that are inconsistent with the proxy statements.

17.     Over the course of the next two months, several Joy Global shareholders filed a series of eight putative class-action lawsuits against the company and various of its directors and officers challenging the transaction, alleging breaches of fiduciary duty and that disclosures made in proxy statements omitted material information and thus were false and misleading in violation of federal and/or state law. Seven of these lawsuits were filed in this Court (the United States District Court for the Eastern District of Wisconsin), and the eighth was filed in the Milwaukee County Circuit Court. Listed chronologically by date of filing, these eight civil suits (the "Securities Claims") are:

a.     *Oduntan v. Joy Global Inc.*, No. 16-cv-1136, filed August 24, 2016, in the United States District Court for the Eastern District of Wisconsin;

b.     *Soffer v. Doheny*, No. 16-cv-1148, filed August 26, 2016, in the United States District Court for the Eastern District of Wisconsin;

c.     *Garfield v. Joy Global Inc.*, No. 16-cv-6588, filed on August 26, 2016, in the Milwaukee County Circuit Court in Wisconsin;

d.     *Gordon v. Joy Global Inc.*, No. 16-cv-1153, filed August 26, 2016, in the United States District Court for the Eastern District of Wisconsin;

e.     *Rote v. Joy Global Inc.*, No. 16-cv-1186, filed September 2, 2016, in the United States District Court for the Eastern District of Wisconsin;

f.     *Tansey v. Joy Global Inc.*, No. 16-cv-1201, filed September 6, 2016, in the United States District Court for the Eastern District of Wisconsin;

g. *McGregor v. Joy Global Inc.*, No. 16-cv-1213, filed September 8, 2016, in the United States District Court for the Eastern District of Wisconsin; and

h. *Duncan v. Joy Global Inc.*, No. 16-cv-1229, filed September 13, 2016, in the United States District Court for the Eastern District of Wisconsin.

**ANSWER:** Arch admits that Joy Global and various of its officers and directors were named as defendants in a series of eight lawsuits listed in Paragraph 17, which Joy Global refers to in the Complaint as the "Securities Claims." Joy Global has attempted to summarize the allegations of those lawsuits, but Arch denies that Joy Global has done so accurately and/or completely. Arch refers to the filings in those lawsuits for a full and complete statement of their contents. Arch denies any characterizations by Joy Global that are inconsistent with the filings in those lawsuits. Arch denies the remaining allegations of Paragraph 17.

18. Each of the Securities Claims named as defendants Joy Global Inc., Edward Doheny (Joy Global's CEO), John Hanson (Chair of Joy Global's Board of Directors), and Joy Global directors Steven Gerard, Mark Gliebe, John Gremp, Gale Klappa, Richard Loynd, P. Eric Siegert, and James Tate. Several of the Securities Claims also named other defendants: KAC was named in *Soffer*, *Garfield*, and *McGregor*; Komatsu Ltd. (KAC's parent) was named in *Garfield* and *McGregor*; Pine Solutions Inc. (a corporate vehicle used to effect the transaction) was named in *Soffer* and *McGregor*; and Goldman Sachs and John Does 1-5 (employees at Goldman Sachs) were named in *McGregor*.

**ANSWER:** Arch admits that Joy Global has attempted to summarize the allegations of the lawsuits that it refers to in the Complaint as the "Securities Claims," but Arch denies that Joy Global has done so accurately and/or completely. Arch refers to the filings in those lawsuits for a full and complete statement of their contents. Arch denies any characterizations by Joy

Global that are inconsistent with the filings in those lawsuits. Arch denies the remaining allegations of Paragraph 18.

19.     All of the Securities Claims except *Garfield* alleged violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934, as well as SEC Rule 14a-9. *Soffer* also alleged breach of fiduciary duty. *Garfield*, the sole state court action, exclusively alleged breaches of various fiduciary duties.

**ANSWER:**  Arch admits that Joy Global has attempted to summarize the allegations of the lawsuits that it refers to in the Complaint as the "Securities Claims," but Arch denies that Joy Global has done so accurately and/or completely. Arch refers to the filings in those lawsuits for a full and complete statement of their contents. Arch denies any characterizations by Joy Global that are inconsistent with the filings in those lawsuits. Arch denies the remaining allegations of Paragraph 19.

20.     All of the Securities Claims alleged that, by failing to disclose material information in the proxy statements, Joy Global had deprived its shareholders of their right to make an informed decision about whether to approve the company's sale to KAC. Certain of the Securities Claims further alleged that some Joy Global officers were conflicted and/or breached their fiduciary duties to the shareholders because, among other reasons, they stood to receive "golden parachutes" or other payments if the transaction were consummated.

**ANSWER:**  Arch admits that Joy Global has attempted to summarize the allegations of the lawsuits that it refers to in the Complaint as the "Securities Claims," but Arch denies that Joy Global has done so accurately and/or completely. Arch refers to the filings in those lawsuits for a full and complete statement of their contents. Arch denies any characterizations by Joy Global that are inconsistent with the filings in those lawsuits. Arch denies the remaining allegations of Paragraph 20.

21.     Plaintiffs in the Securities Claims listed above (*see supra*, ¶ 17) sought to prevent the transaction from occurring. Specifically, on September 15, 2016, the plaintiff in *Oduntan* moved for

a preliminary injunction, seeking to enjoin the shareholder vote on whether to approve the transaction. Plaintiffs in several of the other six federal actions subsequently joined in the *Oduntan* motion, and on September 23, 2016, the plaintiff in *Garfield*, the only case filed in state court, likewise moved for a temporary injunction to enjoin the shareholder vote.

    **ANSWER:**  Arch admits that Joy Global has attempted to summarize the allegations of the lawsuits that it refers to in the Complaint as the "Securities Claims," but Arch denies that Joy Global has done so accurately and/or completely.  Arch refers to the filings in those lawsuits for a full and complete statement of their contents.  Arch denies any characterizations by Joy Global that are inconsistent with the filings in those lawsuits.  Arch denies the remaining allegations of Paragraph 21.

    22.    As part of an agreement to settle seven of the Securities Claims (i.e., all of the suits except the *Duncan* suit, *see supra,* ¶ 17(a)-(g)), Joy Global filed agreed-upon additional disclosures on September 29, 2016, and October 3, 2016. Joy Global further agreed to pay confidential sums to plaintiffs' counsel in these seven actions. Accordingly, on October 7, 2016, the first seven Securities Claims were settled and dismissed with prejudice, pursuant to a stipulated order, leaving only the *Duncan* action as a pending suit.

    **ANSWER:**  Arch admits that the lawsuits listed in Paragraph 17, which Joy Global refers to in the Complaint as the "Securities Claims," other than the lawsuit styled *Duncan v. Joy Global Inc.*, No. 16-cv-1229, were dismissed on or around October 7, 2016.  Arch lacks knowledge or information sufficient to form a belief about the truth of the first sentence of Paragraph 22.  Arch denies the remaining allegations of Paragraph 22.

    23.    On October 19, 2016, Joy Global's sale to KAC was approved at a special meeting of Joy Global's shareholders, and on April 5, 2017, the transaction closed.

    **ANSWER:**  Arch lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 23.

24.     Three weeks later, on April 26, 2017, the plaintiffs in the *Duncan* action filed an Amended Complaint, alleging revised claims against Joy Global and various of its officers for allegedly misleading statements and omissions in violation of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 and SEC Rule 14a-9 thereunder. The *Duncan* plaintiffs further alleged that certain of the individual defendants had breached their duties of loyalty and/or situational fiduciary duties in connection with the transaction, and they demanded compensatory and rescissory damages and other relief.

**ANSWER:** Arch admits that the plaintiffs in the *Duncan* action filed an Amended Complaint on or around April 26, 2017.  Arch further admits that Joy Global has attempted to summarize the Amended Complaint, but denies that Joy Global has done so accurately and/or completely.  Arch refers to the Amended Complaint for a full and complete statement of its contents.  Arch denies any characterizations by Joy Global that are inconsistent with the Amended Complaint.  Arch denies the remaining allegations of Paragraph 24.

25.     Following fully briefed motions to dismiss and extended negotiations, on March 23, 2018, the *Duncan* plaintiffs and Joy Global filed before this Court a Notice of Settlement, and on May 23, 2018, they followed up that Notice by filing a Stipulation of Settlement, pursuant to which they confirmed Joy Global's agreement to pay $20 million in full and final resolution of the *Duncan* claims, inclusive of plaintiffs' attorney fees and with no admission of liability. This Court granted preliminary approval of the *Duncan* settlement on September 14, 2018; Joy Global subsequently paid the $20 million settlement amount into escrow pursuant to the Stipulation of Settlement; and on December 20, 2018, the Court approved the *Duncan* settlement.

**ANSWER:** Arch admits that the parties to the lawsuit styled *Duncan v. Joy Global Inc.*, No. 16-cv-1229, filed a notice of settlement on or about March 23, 2018 and a stipulation of settlement on or about May 23, 2018.  Arch further admits that the Court granted preliminary approval of the referenced settlement on September 14, 2018 and granted final approval of the Duncan Settlement on December 20, 2018.  Arch further admits that Joy Global has attempted

to summarize the stipulation of settlement, but denies that Joy Global has done so accurately and/or completely.  Arch refers to the stipulation of settlement for a full and complete statement of its contents.  Arch denies any characterizations by Joy Global that are inconsistent with the stipulation of settlement.  Arch is without knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 25.

B.     The Underwriting of the Joy Global Insurance Policies

26.     Like many publicly traded companies, prior to its sale to KAC, Joy Global maintained a D&O liability insurance program to protect itself and its individual directors and officers against the risk of securities claims. Joy Global shopped for and purchased its D&O insurance, on an annual basis through policies with annual policy periods, with the active advice and assistance of experienced and professional insurance brokers. At the time relevant to its sale to KAC and the Securities Claims at issue here, Joy Global's D&O policies had an annual renewal date of July 31, meaning that Joy Global needed to purchase new coverage to take effect on July 31 each year for the ensuing 12 months.

**ANSWER:**  Arch admits that Joy Global purchased directors and officers liability insurance policies.  Arch refers to those policies for a full and complete statement of their contents.  Arch denies any characterizations by Joy Global that are inconsistent with the policies.  Arch lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 26.

27.     Accordingly, on July 21, 2016, when Joy Global publicly announced that it had agreed to its sale to KAC, it was only ten days away from its D&O insurance program's annual renewal date. In fact, by that date (July 21, 2016), CNA, Arch, and Travelers had already committed to (i.e., "bound") coverage for the upcoming 2016-2017 policy year, and to renew the expiring coverage that CNA, Arch, and Travelers previously had issued for the 2015-2016 policy year.

**ANSWER:** Arch admits that July 21, 2016 was ten days away from July 31, 2016 and that as of July 21, 2016, Arch had bound coverage for the 2016-2017 policy period to renew the expiring coverage Arch previously had issued for the 2015-2016 policy period. Arch further admits that CNA had bound coverage for the 2016-2017 policy period to renew the expiring coverage it previously had issued for the 2015-2016 policy period. Arch lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 27.

28. Because the insurance binder required Joy Global to report any material changes in conditions, Joy Global informed CNA of the proposed transaction through its brokers at Marsh LLC ("Marsh"), on July 21, 2016 (i.e., on the same day that Joy Global publicly announced the transaction), and Joy Global asked CNA, Arch, and Travelers to confirm that they would still issue the renewal coverage, as previously bound.

**ANSWER:** Arch admits that Joy Global's broker sent correspondence to Arch about the renewal coverage after July 21, 2016. To the extent that Joy Global is attempting to summarize that correspondence, Arch denies that Joy Global has done so accurately and/or completely. Arch refers to that correspondence for a full and complete statement of its contents. Arch denies any characterizations by Joy Global that are inconsistent with the correspondence. Arch lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 28.

29. CNA declined. Specifically, on or around July 27, 2016, CNA expressed its understanding and expectation that a securities claim would be asserted against Joy Global in connection with the planned transaction (as is now typical, in connection with the planned sale of nearly any publicly traded company in the United States), and CNA stated that it was aware of at least seven law firms that were investigating and considering bringing such claims relating to the sale of Joy Global to KAC. According to CNA, the announced sale thus represented a changed

circumstance (i.e., a heightened risk factor) that required different treatment or pricing than the parties previously had discussed for the renewal of Joy Global's D&O coverage.

**ANSWER:** Arch lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 29.

30.     Importantly, at no time during these renewal discussions did CNA indicate that it was unwilling or unable to renew or extend Joy Global's coverage because of its expectation that Joy Global would face a securities claim. Nor did CNA indicate at any point in these discussions that it would not cover a securities claim relating to the announced transaction. On the contrary, CNA made material representations to Joy Global, through Marsh, that actually and reasonably induced Joy Global to believe that CNA would cover securities claims relating to the transaction, either through its expiring 2015-2016 policy or through a 2016-2017 renewal.

**ANSWER:** Arch lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 30.

31.     Specifically, when a suggestion was made that Joy Global could submit to CNA, under its then-expiring 2015-2016 D&O policy, a "notice of circumstance" regarding the potential sale to KAC, CNA confirmed that it would accept such a "notice of circumstance" under the expiring policy. The effect of such "notice of circumstance," if provided by Joy Global, would have been to trigger coverage, under the expiring 2015-2016 policy, for any securities claim that might arise out of the announced sale later (i.e., even after expiration of the 2015-2016 policy period). If Joy Global were to choose this option, CNA indicated that it would not issue a new limit of liability for the 2016-2017 policy year; instead, and for an additional premium, it would only extend the otherwise-expiring policy for six months or until the close of the sale.

**ANSWER:** Arch lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 31.

32.     In proposing this "notice of circumstance" solution, CNA indicated both that (a) it considered the threat of securities claims relating to the acquisition sufficiently specific for a

"notice of circumstance" to be appropriate to "lock in" coverage under the expiring policy, and (b) it considered the expiring policy, if extended (as CNA was proposing) through the date of closing, to provide coverage for such claims. Otherwise, CNA's proposal would have made no sense and offered no solution to the specific risk that the parties were discussing: the risk of securities claims arising from the announced sale to KAC.

**ANSWER:** Arch lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 32.

33.     As an alternative to its "notice of circumstance" proposal, CNA indicated that if Joy Global *refrained* from submitting a notice of circumstance under the expiring CNA policy (i.e., so that expiring policy would not be exposed to transaction-related claims), then CNA would be willing to renew its policy for the 2016-2017 policy year with a new coverage limit. Under this proposal, however, CNA would require Joy Global to pay *double* its base premium: $236,250 for a renewal of the expiring policy and another $236,250 for a "run-off endorsement" that would extend, for an additional period of years, coverage for securities claims specifically arising from Joy Global's sale to KAC.

**ANSWER:** Arch lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 3.

34.     CNA led Joy Global and Marsh to believe, and Joy Global and Marsh did actually and reasonably believe, that paying a 200% premium for a renewal policy plus a "run-off endorsement" would provide Joy Global with coverage in the event of a securities claim arising out of its sale to KAC, and CNA knew that Joy Global was seeking to renew its coverage (a) with the expectation that it would soon be sold and (b) for the express and primary purpose of securing coverage for transaction-related claims.

**ANSWER:** Arch lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 34.

35.     In reliance on CNA's representations and in response to its proposals, Joy Global chose not to submit a notice of circumstance under the expiring CNA policy and elected instead to purchase from CNA, for a double premium, a new 2016-2017 policy with a "run-off endorsement" (Endorsement No. 3) extending coverage for claims relating to the envisioned sale. CNA thus issued Policy No. 28704981 to Joy Global, effective July 31, 2016 (the "CNA Policy"). The CNA Policy, a true and correct copy of which is appended hereto as Exhibit A, provides $10 million of coverage to Joy Global in excess of a $1.5 million self-insured retention.

**ANSWER:**  Arch admits that Exhibit A is a true and accurate copy of the policy that CNA issued to Joy Global for the period commencing July 31, 2017 (the "Primary Policy"). Joy Global has attempted to summarize the contents of the Primary Policy, but Arch denies that Joy Global has done so accurately and/or completely.  Arch refers to the Primary Policy for a full and complete statement of its contents.  Arch denies any characterizations by Joy Global that are inconsistent with the Primary Policy.  Arch lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 35.

36.     The CNA Policy is written on a standard D&O insurance form, which CNA calls its "Management Liability Policy" and markets and sells to public companies like Joy Global. Through its marketing materials (including materials posted to its website and dated July 22, 2016), and in its efforts to lure policyholders, CNA warns customers like Joy Global that they are "more likely than ever to be scrutinized for their actions and decisions. All too often, a seemingly straight-forward business decision may result in litigation." Because of these risks, CNA urges companies like Joy Global to "consider whether their management liability policy provides coverage that addresses the exposures they may encounter in the current marketplace."

**ANSWER:**  Arch denies the allegations concerning "a standard D&O insurance form." Arch lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 36.

37.     According to CNA, one of the highlights of its Management Liability Policy is that it "include[s] broad definitions of claim and loss." In its July 2016 promotional materials, CNA does not caution, or even suggest, that its Management Liability Policy will not provide indemnity coverage for acquisition-related claims, which is a substantial risk for a public company like Joy Global and was the specific risk that both Joy Global and CNA expressly had in mind when the CNA Policy was underwritten and sold to Joy Global.

**ANSWER:**  Arch lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 37.

38.     CNA further touts its expertise in developing tailored insurance products according to each client's particular needs, stating in its marketing materials that it "develops specific insurance products for its clients."

**ANSWER:**  Arch lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 38.

39.     Against the background of such representations, Joy Global purchased the CNA Policy and entrusted CNA to protect it against the Securities Claims.

**ANSWER:**  Arch admits that Joy Global purchased the Primary Policy.  Arch lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 39.

40.     Defendants Arch and Travelers issued excess policies that follow form to the CNA Policy for the same 2016-2017 policy year. Arch issued Policy No. DOX 9300349-02 (the "Arch Policy"), a true and correct copy of which is appended hereto as Exhibit B, and Travelers issued Policy No. 105653715 (the "Travelers Policy"), a true and correct copy of which is appended hereto as Exhibit C. The Arch Policy provides $10 million of coverage in excess of the limits of the CNA Policy, and the Travelers Policy provides $10 million of coverage in excess of the limits of the Arch Policy. The Arch and Travelers Policies incorporate the same terms and conditions of coverage as the CNA Policy.

**ANSWER:** Arch admits that Arch issued Policy No. DOX 9300349-02 (the "Arch Policy"), a true and correct copy of which is appended to the Complaint as Exhibit B. Joy Global has attempted to summarize the contents of the Arch Policy, but Arch denies that Joy Global has done so accurately and/or completely. Arch refers to the Arch Policy for a full and complete statement of its contents. Arch denies any characterizations by Joy Global that are inconsistent with the Arch Policy. Arch lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 40.

41.     At no time in the course of underwriting and issuing their respective policies did either Arch or Travelers ever indicate to Joy Global that it took a materially different or narrower view of the scope of coverage under its policy than CNA represented was available under the CNA Policy. On the contrary, at all material times, Arch and Travelers have been content to indicate that they agree with CNA's representations and positions, even where they have not, or may have not, responsibly inquired into or informed themselves about CNA's representations or positions.

**ANSWER:** Arch denies the allegations of Paragraph 41 to the extent they pertain to Arch. Arch lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 41.

C.     The CNA Policy

42.     The CNA Policy provides that:

> The Insurer [CNA] shall pay on behalf of the Insured Entity [Joy Global] that Loss resulting from any Securities Claim first made against the Insured Entity during the Policy Period or Extended Reporting Period, if applicable, for a Wrongful Act.

Exhibit A, § I, at 1. Terms capitalized in the CNA Policy are defined in the CNA Policy.

**ANSWER:** Arch admits that the Paragraph 42 quotes a portion of the Primary Policy. Arch affirmatively states that the Primary Policy contains additional terms, conditions, and

exclusions, and denies any characterization inconsistent with any and all of the terms of the Primary Policy.

43. "Loss" means, in relevant part:

> those amounts that the Insured Persons [or the Insured Entity] . . . are legally liable to pay as awards, settlements or judgments (including any award of pre-judgment and post-judgment interest on a covered judgment) and Defense Costs, Inquiry Costs, Shareholder Derivative Demand Investigation Costs and Books and Records Costs.

Exhibit A, § II, at 5.

**ANSWER:** Arch admits that the Paragraph 43 quotes a portion of the Primary Policy. Arch affirmatively states that the Primary Policy contains additional terms, conditions, and exclusions, and denies any characterization inconsistent with any and all of the terms of the Primary Policy.

44. "Securities Claim" means, in relevant part:

> a Claim made against any Insured:

> 1. alleging, arising out of, based upon or attributable to the purchase or sale or offer or solicitation of an offer to purchase or sell any securities of an Insured Entity; or

> 2. brought by or on behalf of one or more security holders of an Insured Entity in their capacity as such;

> . . . .

Exhibit A, § II, at 7-8.

**ANSWER:** Arch admits that the Paragraph 44 quotes a portion of the Primary Policy. Arch affirmatively states that the Primary Policy contains additional terms, conditions, and exclusions, and denies any characterization inconsistent with any and all of the terms of the Primary Policy.

45. "Defense Costs" means:

> reasonable fees, costs, [and] expenses . . . consented to by the Insurer (such consent not to be unreasonably withheld or delayed) and incurred by the Insureds in the investigation, adjustment,

> defense or appeal of any covered Claim or incurred at the Insurer's
> request to assist the Insurer in investigating any covered
> Claim . . . .

Exhibit A, § II, at 3.

**ANSWER:** Arch admits that the Paragraph 45 quotes a portion of the Primary Policy. Arch affirmatively states that the Primary Policy contains additional terms, conditions, and exclusions, and denies any characterization inconsistent with any and all of the terms of the Primary Policy.

46. "Wrongful Act" means, in relevant part:

> any actual or alleged error misstatement, misleading statement, act,
> omission, neglect or breach of duty committed or attempted by . . . an
> Executive . . . or an Insured Entity . . . ."

Exhibit A, § II, at 9.

**ANSWER:** Arch denies that Joy Global has accurately quoted the Primary Policy in Paragraph 46. Arch affirmatively states that the Primary Policy contains additional terms, conditions, and exclusions, and denies any characterization inconsistent with any and all of the terms of the Primary Policy.

47. Like most standard-form D&O policies, the CNA Policy provides coverage to Joy Global, not only for its *own* liabilities and defense costs resulting from "Securities Claims" (i.e., so-called "Side C" coverage, as provided here by the Policy's Insuring Agreement 3), but also for those of individual directors and officers whom the company indemnifies (i.e., so-called "Side B" coverage, as provided here by the Policy's Insuring Agreement 2). Specifically, the policy states:

> The Insurer shall pay on behalf of the Insured Entity that Loss for
> which the Insured Entity has indemnified the Insured Persons [i.e.,
> individual directors and officers] and which results from any Claim
> first made against the Insured Persons during the Policy Period or the
> Extended Reporting Period, if applicable, for a Wrongful Act.

Exhibit A, § I, at 1.

**ANSWER:** Arch admits that the Paragraph 45 quotes a portion of the Primary Policy. To the extent that Joy Global has attempted to summarize the coverage provided by the Primary

Policy, Arch denies that Joy Global has done so accurately and/or completely. Arch refers to the Primary Policy for a full and complete statement of its contents. Arch denies any characterizations by Joy Global that are inconsistent with the terms of the Primary Policy. Arch denies the remaining allegations in Paragraph 47.

48.     As indicated below (*see infra,* ¶¶ 55-77), the Insurers have refused to provide coverage for *any* of the amounts that Joy Global has paid and agreed to pay to settle the Securities Claims on the ground that the Securities Claims constitute, and constitute entirely, a single integrated "Inadequate Consideration Claim." The CNA Policy (and the Arch and Travelers Policies, by following form) excludes from the definition of "Loss" that portion of any judgment or settlement against an "Insured Entity" or "Insured Person" that constitutes an "Inadequate Consideration Claim." Specifically, the CNA Policy states, in relevant part:

However, Loss (other than Defense Costs) shall *not* include:

\*     \*     \*     \*

vi.  any amount of any judgment or settlement of any
     Inadequate Consideration Claim other than Defense Costs .
     . . .

Exhibit A, § II, at 6 (emphasis added).

**ANSWER:**  Arch admits that the Defendants have denied coverage for the settlement of the lawsuits listed in Paragraph 17, which Joy Global refers to in the Complaint as the "Securities Claims," in specific correspondence. Arch further admits that Joy Global has attempted to summarize and/or quote that correspondence as well as the terms of the Primary Policy, but denies that Joy Global has done so accurately and/or completely. Arch refers to the correspondence and the Primary Policy for a full and complete statement of its contents. Arch denies any characterizations by Joy Global that are inconsistent with the correspondence and the Primary Policy.

49.     The CNA Policy defines "Inadequate Consideration Claim" to mean:

*that part of* any *Claim alleging* that the price or consideration paid
or proposed to be paid for the acquisition or completion of the

acquisition of all or substantially all the ownership interest in or
assets of an entity is inadequate.

Exhibit A, § II, at 4 (emphasis added).

**ANSWER:**  Arch admits that the Paragraph 49 quotes a portion of the Primary Policy. Arch affirmatively states that the Primary Policy contains additional terms, conditions, and exclusions, and denies any characterization inconsistent with any and all of the terms of the Primary Policy.

50.     As the foregoing indicates, the Policy's definition of "Inadequate Consideration Claim" excludes coverage *only* for [i] "that part of" [ii] any "Claim" [iii] "alleging that the price or consideration paid or proposed to be paid" for an acquisition is "inadequate." The "Inadequate Consideration Claim" exclusion does not bar coverage (a) for any *other* parts of any "Claim" or (b) for any "*Claim*" that does not "*allege* that the price or consideration paid or proposed to be paid" for an acquisition is inadequate.

**ANSWER:**  Arch denies the allegations of Paragraph 50.

51.     As the foregoing further indicates, the CNA Policy does not exclude coverage for "Defense Costs" for an "Inadequate Consideration Claim." In other words, even where a "Claim" is properly excluded from coverage, in whole or in part, on the ground that it is an "Inadequate Consideration Claim," coverage is still provided for "Defense Costs" incurred in connection with such "Inadequate Consideration Claim." *See* Exhibit A, § II, at 6 (definition of "Loss," subparagraph vi).

**ANSWER:**  Arch denies the allegations of Paragraph 51.

52.     The CNA Policy's definition of "Inadequate Consideration Claim" incorporates the Policy's definition of "Claim," which, in turn, is defined to mean, in relevant part, "any civil . . . proceeding . . . alleging a Wrongful Act . . . ." Exhibit A, § II, at 2.

**ANSWER:**  Arch admits that the defined term "Claim" appears in the definition of "Inadequate Consideration Claim" in the Primary Policy and that Paragraph 52 partially quotes

a portion of the definition of "Claim" in the Primary Policy. Arch affirmatively states that the Primary Policy contains additional terms, conditions, and exclusions, which speak for themselves, and denies any characterization inconsistent with any and all of the terms of the Primary Policy. Arch denies the remaining allegations of Paragraph 52.

53. Accordingly, the CNA Policy provides that whether a "Claim" is, in whole or in part, an "Inadequate Consideration Claim" turns on whether Joy Global or an "Executive" (i.e., a Joy Global officer or director) "committed or attempted" the "Wrongful Act" of paying or proposing to pay inadequate consideration for the acquisition of all or substantially all of the ownership interest in or assets of another entity.

**ANSWER:** Arch denies the allegations of Paragraph 53.

54. The CNA Policy also includes a manuscript endorsement (Endorsement No. 3), entitled "Joy Global Inc. Run Off Period Endorsement." This endorsement provides in relevant part:

> [I]f there is a Takeover of the Named Insured during the Policy Period, either directly or indirectly, by Komatsu Ltd., then in consideration of an additional premium paid in the amount of $236,250.00 [i.e., 100% of the base premium] . . . the Policy shall be amended as follows:
>
> . . .
>
> 1. Run-Off Period
>
> This Policy shall be extended for a period commencing on the effective date of the Takeover of the Named Insured by Komatsu Ltd. and expiring six (6) years thereafter (hereinafter the "Run-Off Period"), but only with respect to:
>
> a. Claims first made against the Insureds during the Run-Off Period for any actual or alleged:
>
> i. Wrongful Act occurring prior to the effective date of such Takeover; . . .
>
> and otherwise covered pursuant to the terms, conditions, and restrictions of this Policy.

Exhibit A, Endorsement No. 3.

**ANSWER:** Arch admits that the Paragraph 54 quotes a portion of the Primary Policy. Arch affirmatively states that the Primary Policy contains additional terms, conditions, and exclusions, and denies any characterization inconsistent with any and all of the terms of the Primary Policy. Arch denies the remaining allegations of Paragraph 54.

D.     The Insurers' Denial of Coverage

55.     By emails sent by its insurance broker, Marsh LLC, Joy Global gave timely notice to the Insurers of the Securities Claims promptly after each was filed and served.

**ANSWER:** Arch admits that Joy Global's insurance broker, March LLC, provided notice of the Securities Claims to Arch by specific correspondence. Arch further admits that Joy Global has attempted to summarize that correspondence, but denies that Joy Global has done so accurately and/or completely. Arch refers to the correspondence for a full and complete statement of its contents. Arch denies any characterizations by Joy Global that are inconsistent with the correspondence. Arch lacks knowledge or information sufficient to form a belief as to the truth about the remaining allegations in Paragraph 55.

56.     In a letter to Joy Global dated November 8, 2016, CNA acknowledged coverage under the CNA Policy for "Defense Costs" incurred by Joy Global in connection with the Securities Claims but denied coverage for any and all liability in those actions, on the ground that, taken as a whole, they constituted, in their entirety, an "Inadequate Consideration Claim."

**ANSWER:** Arch admits that Columbia Casualty sent a letter dated November 8, 2016 to Joy Global. Arch further admits that Joy Global has attempted to summarize that letter, but denies that Joy Global has done so accurately and/or completely. Arch refers to the letter for a full and complete statement of its contents. Arch denies any characterizations by Joy Global that are inconsistent with the letter.

57.     In this letter, CNA acknowledged that the plaintiffs in the Securities Claims challenged Joy Global's sale to KAC, in part, because "the Board agreed to preclusive deal protection devices, including no-solicitation and matching rights provisions, and that the proxy

statement filed with the SEC in relation to the Proposed Merger is materially incomplete and misleading."

**ANSWER:** Arch admits that Columbia Casualty sent a letter dated November 8, 2016 to Joy Global. Arch further admits that Joy Global has attempted to summarize that letter, but denies that Joy Global has done so accurately and/or completely. Arch refers to the letter for a full and complete statement of its contents. Arch denies any characterizations by Joy Global that are inconsistent with the letter.

58.     CNA's November 8, 2016, letter identified three categories of allegations made by the plaintiffs regarding the so-called "flawed process in negotiating the Proposed Merger."

a. _First_, plaintiffs alleged that Joy Global "push[ed] Komatsu to commit to certain post-close employee retention and compensation prior to signing the merger agreement," and that "restricted stock and unrestricted stock units held by non-employee Board members will vest upon consummation of the Proposed Merger and that Joy Global's CEO, Edward Doheny II, will receive a $6.6 million cash severance payment."

b. _Second_, plaintiffs alleged that Joy Global "determin[ed] not to contact any potential bidders aside from Komatsu . . . until after announcement of the Proposed Merger and establishment of the $75 million termination fee."

c. _Third_, plaintiffs alleged that Joy Global "instruct[ed] Goldman, Sachs & Co. . . . to utilize certain pessimistic forecasts, rather than the optimistic forecasts Joy Global's management had previously prepared. . . . Goldman is also allegedly due to receive a success fee of $28.5 million contingent on completion of the Proposed Merger."

**ANSWER:** Arch admits that Columbia Casualty sent a letter dated November 8, 2016 to Joy Global. Arch further admits that Joy Global has attempted to summarize that letter, but denies that Joy Global has done so accurately and/or completely. Arch refers to the letter for a full and complete statement of its contents. Arch denies any characterizations by Joy Global that are inconsistent with the letter.

59. Notwithstanding (a) the foregoing allegations; (b) the fact that the "Claims" pleaded in the Securities Claims included claims for misrepresentation, nondisclosure, breaches of fiduciary duty, and the like; (c) the fact that CNA sold the CNA Policy to Joy Global expressly to protect Joy Global and its directors and officers from claims arising out of the envisioned sale to KAC; and (d) the limited scope and inapplicable terms of the CNA Policy's "Inadequate Consideration Claim" exclusion, CNA's November 8, 2016, letter deemed the entire litigation (i.e., all eight Securities Claims and all claims within each of them) an "Inadequate Consideration Claim" and thus, excluded from coverage under the Policy. CNA concluded: "the Policy does not provide coverage for any judgement or settlement in this matter and instead will only provide coverage for Defense Costs."

**ANSWER:** Arch admits that Columbia Casualty sent a letter dated November 8, 2016 to Joy Global. Arch further admits that Joy Global has attempted to summarize that letter, but denies that Joy Global has done so accurately and/or completely. Arch refers to the letter for a full and complete statement of its contents. Arch denies any characterizations by Joy Global that are inconsistent with the letter. Arch denies the remaining allegations in Paragraph 59.

60. On June 19, 2017, CNA issued a further letter to Joy Global in which it acknowledged receipt of the amended *Duncan* complaint (which, as noted above, had been filed on April 26, 2017), and further acknowledged that the other seven Securities Claims had been settled. In this letter, CNA recognized that, among their other assertions, the *Duncan* plaintiffs alleged in their amended complaint that:

on September 2, 2016, defendants issued a false and misleading Definitive Proxy Statement on Schedule 14(a) in order to secure shareholder support for the undervalued acquisition. Plaintiffs further allege that Defendants were forced to issue multiple supplemental Proxy disclosures on September 29 and October 3, 2016 in an attempt to rectify the problems, but the final Proxy still woefully failed to provide full and fair disclosures to Joy Global stockholders.

**ANSWER:** Arch admits that Columbia Casualty sent a letter dated June 19, 2017 to Joy Global. Arch further admits that Joy Global has attempted to summarize that letter, but denies that Joy Global has done so accurately and/or completely. Arch refers to the letter for a full and complete statement of its contents. Arch denies any characterizations by Joy Global that are inconsistent with the letter.

61. CNA also recognized in its June 19, 2017, letter that the *Duncan* plaintiffs "further allege that Joy Global executives received 'golden parachutes' and exorbitant compensation on the date the merger closed." In addition, CNA acknowledged that the relief sought by the *Duncan* plaintiffs included "certification of the class, injunctive relief declaring the Proxy false and misleading, and compensatory and rescissory damages, pre and post judgment interest, attorney fees, expert fees and costs."

**ANSWER:** Arch admits that Columbia Casualty sent a letter dated June 19, 2017 to Joy Global. Arch further admits that Joy Global has attempted to summarize that letter, but denies that Joy Global has done so accurately and/or completely. Arch refers to the letter for a full and complete statement of its contents. Arch denies any characterizations by Joy Global that are inconsistent with the letter.

62. Again, however, CNA labeled the *Duncan* litigation, in its entirety, an "Inadequate Consideration Claim" under the terms of the Policy. CNA's June 19, 2017, letter concluded that "the Policy does not provide coverage for any judgement or settlement in this matter," just as CNA declined to indemnify Joy Global for any portion of the amounts it paid to settle the seven Securities Claims other than *Duncan*, "and instead will only provide coverage for Defense Costs."

**ANSWER:** Arch admits that Columbia Casualty sent a letter dated June 19, 2017 to Joy Global. Arch further admits that Joy Global has attempted to summarize that letter, but denies that Joy Global has done so accurately and/or completely. Arch refers to the letter for a full and complete statement of its contents. Arch denies any characterizations by Joy Global that are inconsistent with the letter.

63. On or around August 11, 2017, Arch wrote to Joy Global, referencing CNA's June 19, 2017 letter, and adopting CNA's coverage position as its own.

**ANSWER:** Arch admits that it sent a letter dated August 11, 2017 to Joy Global. Arch further admits that Joy Global has attempted to summarize that letter, but denies that Joy Global has done so accurately and/or completely. Arch refers to the letter for a full and complete statement of its contents. Arch denies any characterizations by Joy Global that are inconsistent with the letter.

64. On October 26, 2017, Joy Global wrote to CNA and asked it to reconsider its coverage position, noting that by declining coverage for any judgment or settlement of the Securities Claims, CNA had waived any consent rights it otherwise might have under the Policy with respect to settlement issues, and further, had waived any requirement under the Policy that Joy Global obtain CNA's consent before settling *Duncan* or making any offer of settlement in *Duncan*.

**ANSWER:** Arch admits that Joy Global sent a letter dated October 26, 2017 to CNA. Arch further admits that Joy Global has attempted to summarize that letter, but denies that Joy Global has done so accurately and/or completely. Arch refers to the letter for a full and complete statement of its contents. Arch denies any characterizations by Joy Global that are inconsistent with the letter.

65. In a letter dated November 14, 2017, CNA responded to Joy Global by withdrawing its disclaimer of coverage, reserving its rights, and acknowledging that the *Duncan* amended complaint, as pleaded, asserted claims and sought relief potentially within the Policy's

coverage. CNA acknowledged, for example, that the amended complaint sought "an award of 'compensatory and/or rescissory damages against the defendants,'" thereby triggering potential indemnity coverage, at a minimum, in respect to rescissory damages, as such damages are not damages for inadequate consideration.

**ANSWER:**  Arch admits that Columbia Casualty sent a letter dated November 14, 2017 to Joy Global's counsel.  Arch further admits that Joy Global has attempted to summarize that letter, but denies that Joy Global has done so accurately and/or completely.  Arch refers to the letter for a full and complete statement of its contents.  Arch denies any characterizations by Joy Global that are inconsistent with the letter.

66.     Thereafter, in reliance on CNA's withdrawal of its disclaimer and acknowledgment of potential indemnity coverage, Joy Global provided CNA with confidential information regarding its damages analyses and settlement strategy, including by making its defense counsel available to CNA, Arch, and Travelers for phone reports and hosting an in-person meeting to allow the Insurers to hear a detailed litigation report directly from, and to pose any questions that they had to, Joy Global's Securities Claims defense counsel. In advance of these discussions, Insurers signed a written Confidentiality Agreement agreeing, *inter alia*, not to use any confidential defense information provided by Joy Global for purposes of "evaluating whether or not insurance coverage is available" for the Securities Claims.

**ANSWER:**  Arch admits that Joy Global's defense counsel provided information regarding its damages analyses and settlement strategy, including by phone reports and an in person meeting.  Arch further admits that the Defendants and Joy Global executed a Confidentiality Agreement.  Arch further admits that Joy Global has attempted to summarize that Confidentiality Agreement, but denies that Joy Global has done so accurately and/or completely.  Arch refers to the Confidentiality Agreement for a full and complete statement of its contents.  Arch denies any characterizations by Joy Global that are inconsistent with the Confidentiality Agreement.  Arch denies the remaining allegations of Paragraph 66.

67.     Joy Global also responded to CNA's November 14, 2017, letter with an extensive letter dated December 22, 2017, that once again urged CNA to affirmatively recognize its contractual obligation to provide indemnity coverage for the Securities Claims, and that provided a detailed rebuttal to CNA's assertions in regard to why such coverage might not be available.

**ANSWER:** Arch admits that Joy Global sent a letter dated December 22, 2017 to Columbia Casualty. Arch further admits that Joy Global has attempted to summarize that letter, but denies that Joy Global has done so accurately and/or completely. Arch refers to the letter for a full and complete statement of its contents. Arch denies any characterizations by Joy Global that are inconsistent with the letter.

68.     Over the course of the next two months, while the parties to the *Duncan* suit awaited a ruling from this Court on Joy Global's motion to dismiss the amended complaint, Joy Global's defense counsel and the *Duncan* plaintiffs' counsel initiated exploratory settlement discussions. Joy Global kept the Insurers apprised of these discussions, in an abundance of caution and a spirit of cooperation.

**ANSWER:** Arch admits that Joy Global provided certain updates to Arch regarding exploratory settlement discussions. Arch lacks knowledge or information sufficient to form a belief about the truth about the remaining allegations of Paragraph 68.

69.     On February 28, 2018, Joy Global requested that CNA, Arch, and Travelers consent to a proposed settlement of the *Duncan* suit.

**ANSWER:** Arch admits that it received a letter dated February 28, 2018 from Joy Global's counsel. Arch further admits that Joy Global has attempted to summarize that letter, but denies that Joy Global has done so accurately and/or completely. Arch refers to the letter for a full and complete statement of its contents. Arch denies any characterizations by Joy Global that are inconsistent with the letter.

70.     On or around March 7, 2018, CNA responded by disclaiming coverage for the proposed settlement in full. CNA instructed Joy Global "to act as a prudent uninsured" with respect to whether to settle the *Duncan* action on the terms proposed.

**ANSWER:**  Arch admits that Columbia Casualty sent a letter dated March 7, 2018 to Joy Global.  Arch further admits that Joy Global has attempted to summarize that letter, but denies that Joy Global has done so accurately and/or completely.  Arch refers to the letter for a full and complete statement of its contents.  Arch denies any characterizations by Joy Global that are inconsistent with the letter.

71.     On or around March 8, 2018, Arch likewise disclaimed coverage for the proposed *Duncan* settlement, agreeing with and adopting the coverage position set forth in CNA's coverage correspondence, including CNA's March 7, 2018 letter.

**ANSWER:**  Arch admits that it sent a letter dated March 8, 2018 to Joy Global.  Arch further admits that Joy Global has attempted to summarize that letter, but denies that Joy Global has done so accurately and/or completely.  Arch refers to the letter for a full and complete statement of its contents.  Arch denies any characterizations by Joy Global that are inconsistent with the letter.

72.     On or around March 8, 2018, Travelers followed suit and similarly disclaimed coverage for the proposed *Duncan* settlement, adopting the responses set forth in CNA's March 7, 2018, letter and Arch's March 8, 2018, letter.

**ANSWER:**  Arch admits that Travelers sent a letter dated March 8, 2018 to Joy Global. Arch further admits that Joy Global has attempted to summarize that letter, but denies that Joy Global has done so accurately and/or completely.  Arch refers to the letter for a full and complete statement of its contents.  Arch denies any characterizations by Joy Global that are inconsistent with the letter.

73.     Despite the Insurers' improper denial of coverage and refusal to consent to the proposed *Duncan* settlement, in order to protect its interests, Joy Global agreed to the settlement

proposal of the *Duncan* plaintiffs, without any assurance that any of the Insurers would honor their coverage obligations, and Joy Global continued to reserve its rights vis-à-vis the Insurers.

**ANSWER:** Arch admits that Joy Global agreed to a settlement proposal with the Duncan plaintiffs. Arch denies the remaining allegations of Paragraph 73.

74. The Insurers' denial of coverage is not supported by the language of the insurance policies they issued, the terms of the underlying allegations in the *Duncan* action, or governing Wisconsin law.

**ANSWER:** Arch denies the allegations of Paragraph 74.

75. The Insurers' denial of coverage is also irreconcilably inconsistent with CNA's prior acknowledgment of the potential for coverage due to, *inter alia*, the *Duncan* plaintiffs' misrepresentation allegations and demand for rescissory damages. At the time of the *Duncan* settlement, the terms and scope of the *Duncan* plaintiffs' claims remained exactly as they had been pleaded in the amended complaint. The *Duncan* "Claims" were thus exactly the same at the time of settlement as they had been on November 14, 2017, when CNA had issued its letter reversing its denial of coverage and acknowledging the potential for coverage for a judgment or settlement in *Duncan*. There was, and remains, no basis for CNA to have reversed its position, yet again, to deny all indemnity coverage.

**ANSWER:** Arch denies the allegations of Paragraph 75.

76. In addition, in disclaiming coverage for the settlement, CNA improperly relied upon and referenced confidential information disclosed to CNA at an in-person meeting with defense counsel, in violation of the Confidentiality Agreement it had signed with Joy Global.

**ANSWER:** Arch lacks knowledge or information sufficient to form a belief about the truth about the allegations of Paragraph 76.

77. Further, and most disturbingly, the Insurers' denial of coverage is directly at odds with the representations, inducements, and assurances that CNA made at the time that it underwrote and issued the CNA Policy with respect to the availability of coverage for the

proposed transaction. CNA indicated, and Joy Global understood, that it would be covered for claims like the Securities Claims when it bought the Policy.

**ANSWER:** Arch denies the allegations of Paragraph 77 to the extent that they pertain to Arch. Arch lacks knowledge or information sufficient to form a belief about the truth about the remaining allegations of Paragraph 77.

E.   CNA's Refusal to Reimburse Reasonable Defense Costs

78.   CNA has acknowledged that the Policy affords coverage for "Defense Costs" incurred in the Securities Claims.

**ANSWER:** Arch lacks knowledge or information sufficient to form a belief about the truth about the allegations of Paragraph 78.

79.   In order to defend itself in the Securities Actions, and consistent with common practice in securities class action litigation, Joy Global hired two law firms: Arnold & Porter Kaye Scholer LLP ("APKS") as its primary defense counsel and Foley & Lardner LLP ("Foley") as its local counsel. In addition, Wachtell, Lipton, Rosen & Katz LLP ("Wachtell") was retained to represent the individual defendants named in the *Duncan* action.

**ANSWER:** Arch admits that Joy Global hired Arnold & Porter Kay Scholer LLP and Foley & Lardner LLP as defense counsel in the lawsuits listed in Paragraph 17, which Joy Global refers to in the Complaint as the "Securities Claims," and that Wachtell Lipton, Rosen & Katz LLP was retained to represent certain individual defendants named in the Duncan Action. Arch lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 79.

80.   On July 19, 2017, Joy Global identified these firms to CNA, along with the hourly billing rates of the attorneys involved, and reported the defense costs incurred to date.

**ANSWER:** Arch admits that Joy Global sent a letter dated July 19, 2017 to Columbia Casualty. Arch further admits that Joy Global has attempted to summarize that letter, but denies that Joy Global has done so accurately and/or completely. Arch refers to the letter for a full and

complete statement of its contents.  Arch denies any characterizations by Joy Global that are inconsistent with the letter.

81.     On August 8, 2017, CNA responded to Joy Global's July 19, 2017, letter and "consent[ed] to the retention of Arnold & Porter Kaye Scholer LLP; Wachtell, Lipton, Rosen & Katz; and Foley & Lardner LLP at the rates described."

**ANSWER:**  Arch admits that Columbia Casualty sent a communication dated August 8, 2017 to Joy Global.  Arch further admits that Joy Global has attempted to summarize and quote that communication, but denies that Joy Global has done so accurately and/or completely.  Arch refers to the letter for a full and complete statement of its contents.  Arch denies any characterizations by Joy Global that are inconsistent with the letter.

82.     Joy Global has periodically submitted invoices from these three law firms to CNA for reimbursement of Defense Costs incurred in the Securities Claims. All Defense Costs that Joy Global has submitted for reimbursement by CNA are for amounts that (a) exceed Joy Global's self-insured retention under the CNA Policy; (b) Joy Global has determined are reasonable; and (c) Joy Global has paid itself, or is in the process of paying itself, irrespective of whether CNA fully honors its contractual obligation to reimburse Defense Costs.

**ANSWER:**  Arch lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 82.

83.     While CNA has reimbursed certain Defense Costs submitted by Joy Global, CNA has refused to pay or reimburse hundreds of thousands of dollars of Joy Global's Defense Costs.

**ANSWER:**  Arch lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 83.

## COUNT ONE

## DECLARATORY JUDGMENT
### (All Defendants)

84.     Joy Global repeats and incorporates the allegations set forth in the foregoing paragraphs as if fully set forth herein.

**ANSWER:**  Arch repeats and incorporates by reference its responses to Paragraphs 1-83 in response to the allegations of Paragraph 84.

85.     An actual controversy exists between Joy Global, on one hand, and each of CNA, Arch, and Travelers, on the other hand, concerning Joy Global's legal rights and the Insurers' respective legal obligations to pay on behalf of Joy Global, under the insurance policies that each Insurer issued to Joy Global, the costs Joy Global has incurred and will continue to incur to defend and resolve the Securities Claims, including without limitation the *Duncan* action.

**ANSWER:**  Arch admits that an actual controversy exists between Joy Global and Arch. Arch denies the remaining allegations of Paragraph 85.

86.     Joy Global contends, without limitation, that all of its defense and settlement costs in excess of its self-insured retention are covered under the Insurers' policies and obligate the Insurers to pay such costs on behalf of Joy Global. By contrast, each of CNA, Arch, and Travelers contends that none of the costs of settling the Securities Claims are covered under their respective policies, and CNA contends that only a portion of the costs of defending the Securities Claims are covered under the CNA Policy.

**ANSWER:**  Arch admits that its policy does not cover the matters for which Joy Global seeks coverage.  Arch lacks knowledge or information sufficient to form a belief about what Joy Global contends, aside from what it alleges in this Complaint.

87.     This controversy is of sufficient immediacy to justify the issuance of a declaratory judgment. The issuance of declaratory relief by this Court may terminate some of the existing controversy between the parties.

**ANSWER:** Arch denies that Joy Global is entitled to any relief whatsoever and denies the remaining allegations of Paragraph 87.

88.      Pursuant to 28 U.S.C. § 2201, other applicable law, and the inherent equitable powers of this Court, Joy Global is entitled to a declaration of the rights and obligations of the parties, including but not limited to a finding that Insurers are obligated to pay on behalf of Joy Global all amounts, in excess of its self-insured retention, that it has incurred or may hereafter incur as a result of the Securities Claims, including without limitation any and all such defense and settlement payments.

**ANSWER:** Arch denies the allegations of Paragraph 88.

## COUNT TWO

### BREACH OF CONTRACT
### WITH RESPECT TO INDEMNITY COVERAGE
### (All Defendants)

89.      Joy Global repeats and incorporates the allegations set forth in the foregoing paragraphs as if fully set forth herein.

**ANSWER:** Arch repeats and incorporates by reference its responses to Paragraphs 1-88 in response to the allegations of Paragraph 89.

90.      Each of the three insurance policies at issue in this case is a valid and enforceable contract between Joy Global, on one hand, and CNA, Arch, or Travelers, respectively, on the other hand.

**ANSWER:** Arch admits that the Arch Policy is a valid and enforceable contract between Joy Global and Arch.  Arch lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 90.

91.      Joy Global has complied fully with the terms and conditions of the insurance policies and has performed all of its obligations under the policies.

**ANSWER:** Arch denies the allegations of Paragraph 91.

92.     Each of the Insurers has refused to pay or reimburse settlement costs that Joy Global has incurred in the eight Securities Claims in excess of Joy Global's self-insured retention, and/or has repudiated or anticipatorily breached its obligation to pay such amounts, including all amounts that Joy Global has paid to settle the eight Securities Claims, including *Duncan*.

**ANSWER:**  Arch admits that it has not reimbursed Joy Global under the Arch Policy. Arch denies the remaining allegations of Paragraph 92.

93.     Each Insurer's refusal to pay or indemnify settlement costs in the Securities Claims constitutes a breach of the commitments that the Insurer made in the contract of insurance that it sold and issued to Joy Global.

**ANSWER:**  Arch denies the allegations of Paragraph 93.

94.     As a direct and proximate result of each Insurer's breaches of its contract of insurance with Joy Global, Joy Global has been deprived of the benefits of its liability insurance coverage for which it paid substantial premiums.

**ANSWER:**  Arch denies the allegations of Paragraph 94.

95.     As a direct and proximate result of each Insurer's breaches of its contract of insurance with Joy Global, Joy Global has incurred damages in an amount to be proven at trial and that, with respect to each Insurer, exceed the amount required to invoke the jurisdiction of this Court.

**ANSWER:**  Arch denies the allegations of Paragraph 95.

96.     Joy Global has presented written notice of its claims for indemnity and the amount of its claims for indemnity to each Insurer, and no Insurer has paid Joy Global's claims within 30 days of such notice. Further, no Insurer has reasonable proof that it is not responsible for the payment demanded. Accordingly, pursuant to Wisconsin Statute § 628.46, Joy Global is entitled to recover interest at a rate of at least 7.5 percent per year for the period starting 30 days after Joy Global's written notice until payment of the indemnity owed.

**ANSWER:** Arch admits that it has not reimbursed Joy Global under the Arch Policy. Arch denies the remaining allegations of Paragraph 96.

## COUNT THREE

**BREACH OF CONTRACT**
**WITH RESPECT TO DEFENSE COSTS COVERAGE**
**(Defendant CNA Only)**

97.     Joy Global repeats and incorporates the allegations set forth in the foregoing paragraphs as if fully set forth herein.

**ANSWER:** Arch repeats and incorporates by reference its responses to Paragraphs 1-96 in response to the allegations of Paragraph 97.

98.     The insurance policy issued by CNA is a valid and enforceable contract between Joy Global and CNA.

**ANSWER:** Arch lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 98.

99.     Joy Global has complied fully with the terms and conditions of the CNA Policy and has performed all of its obligations under the CNA Policy.

**ANSWER:** Arch lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 99.

100.     CNA is obliged under the CNA Policy to pay "all reasonable fees, costs, [and] expenses . . . consented to by the Insurer" in connection with the Securities Claims and is forbidden by that same policy from unreasonably withholding consent to such fees, costs, and expenses.

**ANSWER:** Arch lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 100.

101.     CNA has breached its obligations under the CNA Policy to fully pay Joy Global's reasonable defense costs in defending the Securities Claims.

**ANSWER:** Arch lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 101.

102. As a result of CNA's breaches of contract, Joy Global has incurred damages in an amount to be proven at trial that exceeds the amount required to invoke the jurisdiction of this Court.

**ANSWER:** Arch lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 102.

103. Joy Global has presented written notice of the fact of its claim for defense costs and the amount of its claim for defense costs to CNA, and CNA has not paid Joy Global's claims within 30 days of such notice. Further, CNA does not have reasonable proof that it is not responsible for the payment demanded. Accordingly, pursuant to Wisconsin Statute § 628.46, Joy Global is entitled to recover interest at a rate of at least 7.5 percent per year for the period starting 30 days after Joy Global's written notice until payment of the defense costs owed.

**ANSWER:** Arch lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 103.

## COUNT FOUR

### BREACH OF THE IMPLIED COVENANT OF
### GOOD FAITH AND FAIR DEALING
### (Defendant CNA Only)

104. Joy Global repeats and incorporates the allegations set forth in the foregoing paragraphs as if fully set forth herein.

**ANSWER:** Arch repeats and incorporates by reference its responses to Paragraphs 1-103 in response to the allegations of Paragraph 103.

105. The insurance policy issued by CNA is a valid and enforceable contract between Joy Global and CNA.

**ANSWER:** Arch lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 105.

106. Joy Global has complied fully with the terms and conditions of the CNA Policy and has performed all of its obligations under the CNA Policy.

**ANSWER:** Arch lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 106.

107. At all material times, CNA has had a duty to act fairly and in good faith toward Joy Global in connection with the CNA Policy.

**ANSWER:** Arch lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 107.

108. CNA's obligation to act fairly and in good faith toward Joy Global requires CNA to provide the coverage promised under the CNA Policy and that CNA represented and induced Joy Global to believe it would have under the CNA Policy when it underwrote, issued, and sold the Policy, including its Run-Off Endorsement, to Joy Global. CNA's obligation to act fairly and in good faith toward Joy Global also requires CNA to abide by its Confidentiality Agreement with Joy Global.

**ANSWER:** Arch lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 108.

109. CNA has breached its duty of good faith and fair dealing by wrongfully, knowingly, and without a reasonable or fairly debatable basis refusing to provide the insurance coverage that it promised, and that is due and owing, to Joy Global. In particular, and without limitation, CNA:

    a. while negotiating the renewal of the CNA Policy, and in order to induce Joy Global to purchase the Policy, willfully concealed and/or misrepresented its now-revealed position that the CNA Policy does not provide indemnity coverage for acquisition-related litigation — a position that is contrary to both (i) the language of the CNA Policy and (ii) what CNA knew to be Joy Global's understanding and expectation at the time of underwriting;

b. changed its original coverage position from a denial of indemnity coverage to a reservation of rights, solely in order to induce Joy Global to provide sensitive and confidential information regarding its defense and settlement strategy;

c. used Joy Global's confidential and sensitive information regarding the defense and settlement of the *Duncan* action, which it obtained solely by withdrawing its original denial of indemnity coverage, to support its second and ultimate denial of coverage, in violation of the Confidentiality Agreement it signed with Joy Global;

d. unreasonably reversed its coverage position a second time, reverting from its reservation of rights back to its original position (i.e., a complete denial of indemnity coverage) — promptly after the *Duncan* settlement was agreed in principle and tendered for coverage approval; once it had obtained confidential information by misleading Joy Global into expecting that at least some indemnity coverage would be provided; and notwithstanding that there had been no material change in the posture or substance of the *Duncan* case that could possibly justify a second reversal of its coverage position;

e. in response to Joy Global's repeated requests for cooperation and consent, delayed action unreasonably to risk prejudice to and pressure Joy Global in the *Duncan* litigation, such that Joy Global ultimately felt it needed to protect its own interests as if it were a "prudent uninsured;" and

f. without any reasonable basis in fact or law, and for its own purposes and to its own advantage, knowingly took unreasonable positions concerning the coverage provided by the CNA Policy.

**ANSWER:** Arch lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 109.

110.     CNA committed these acts to enrich CNA and for the purpose of consciously withholding from Joy Global the rights and benefits to which Joy Global is entitled under the CNA Policy.

**ANSWER:**  Arch lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 110.

111.     CNA's actions are inconsistent with the reasonable expectations of its insured, are contrary to established norms, practices and legal requirements related to insurance claims, are contrary to the express terms of the CNA Policy and the Confidentiality Agreement between CNA and Joy Global, and constitute a breach of the implied covenant of good faith and fair dealing.

**ANSWER:**  Arch lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 111.

112.     As a direct and proximate result of CNA's breaches and violations, Joy Global has suffered and continues to suffer substantial damages, in an amount to be determined at trial that exceeds the amount required to invoke the jurisdiction of this Court. Such damages include, without limitation, amounts that should have been paid under the CNA Policy, damages for the loss of use of funds, and damages to compensate Joy Global for the costs it has been forced to incur in the costly effort to prove its entitlement to coverage.

**ANSWER:**  Arch lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 112.

WHEREFORE, Arch prays that the Court enter judgment in its favor, and against Joy Global, and award Arch all relief that this Court deems just and equitable.

## **AFFIRMATIVE DEFENSES**

Arch asserts the affirmative defenses set forth below.  By pleading these affirmative defenses, Arch does not intend to alter the burden of proof and/or burden of persuasion that otherwise exists with respect to any issues in this action.  All affirmative defenses are pled in the

alternative and do not constitute an admission of liability or an admission that Joy Global is entitled to any relief whatsoever.

## First Affirmative Defense

Joy Global's claims against Arch are barred because Joy Global seeks amounts that do not constitute covered "Loss" within the meaning of the Primary Policy.

## Second Affirmative Defense

Joy Global's claims against Arch are barred because Joy Global failed to comply with the requirements of Condition V.1. of the Primary Policy.

## Third Affirmative Defense

Joy Global's claims against Arch are barred because Joy Global failed to comply with the requirements of Condition V.4. of the Primary Policy.

## Fourth Affirmative Defense

Joy Global's claims against Arch are barred to the extent Joy Global seeks coverage for the return of amounts to which Joy Global was not legally entitled or for which insurance coverage would violate public policy.

## Fifth Affirmative Defense

To the extent that any portion of coverage sought by Joy Global is available (which it is not), an appropriate allocation between covered and non-covered Loss, including Defense Costs, pursuant to the Primary Policy, the Arch Policy, and applicable law is required.

## Sixth Affirmative Defense

The specified coverage provided under the Primary Policy and the Arch Policy is subject to and limited by all applicable terms, conditions and exclusions. There may be other terms, conditions and exclusions of the Primary Policy and/or the Arch Policy that operate to bar or limit coverage for some or all of the amounts for which Joy Global seeks coverage. Arch reserves its right to raise affirmatively other terms, conditions and exclusions as defenses to coverage.

### Seventh Affirmative Defense

Joy Global's claims against Arch are barred by the doctrines of release and accord and satisfaction.

### Eighth Affirmative Defense

Joy Global's claim under Wisconsin Statute § 628.46 is barred to the extent Joy Global has not satisfied the requirements of Wisconsin Statute § 628.46.

### Ninth Affirmative Defense

Arch hereby adopts and incorporates by reference as if fully set forth herein any other applicable affirmative defense raised in response to the Plaintiffs' claims by any other defendant.

### Tenth Affirmative Defense

The Complaint fails to state a claim for which relief can be granted.

### Eleventh Affirmative Defense

Joy Global's claims are barred to the extent that the attorneys' fees and costs it allegedly incurred in defense of the lawsuits listed in Paragraph 17, which Joy Global refers to in the Complaint as the "Securities Claims," were unreasonable, unnecessary or otherwise do not constitute "Defense Costs," as that term is defined in the Primary Policy.

### Twelfth Affirmative Defense

Joy Global's claims are barred to the extent that the amount paid to settle the lawsuits listed in Paragraph 17, which Joy Global refers to in the Complaint as the "Securities Claims," was unreasonable.

### Thirteenth Affirmative Defense

Joy Global's claims are barred to the extent the settlement of any of the lawsuits listed in Paragraph 17, which Joy Global refers to in the Complaint as the "Securities Claims," was paid by someone other than an "Insured" as defined in the Primary Policy.

### Fourteenth Affirmative Defense

Joy Global's claims are barred or limited by the defense of unclean hands.

### Fifteenth Affirmative Defense

Joy Global is not entitled to recover based on the allegations in the Complaint to the extent that Joy Global's own actions or the actions of third parties were the sole cause of or contributed to Joy Global's damages, if any.

### Sixteenth Affirmative Defense

Joy Global is not entitled to recover based on the allegations in the Complaint to the extent Joy Global has failed to mitigate damages, if any.

### Seventeenth Affirmative Defense

Arch reserves the right to assert affirmatively any other matter that constitutes an avoidance or affirmative defense under applicable law and rules.

## RESERVATION OF RIGHTS

The Policy contains terms, conditions, and exclusions that may be relevant. Nothing in this Answer and Affirmative Defenses should be construed as a waiver by Arch of any rights, remedies or defenses. Arch continues to reserve all rights, remedies and defenses and waives none.

WHEREFORE, Arch prays that the Court enter judgment in its favor, and against Joy Global, and award Arch all relief that this Court deems just and equitable.

### Jury Demand

Arch demands a trial by jury.

Dated this 5th day of March, 2019.

Respectfully submitted,

BATESCAREY LLP

By: /s/ Michael T. Skoglund

Michael T. Skoglund
BATESCAREY LLP
191 North Wacker Drive, Suite 2400
Chicago, Illinois 60606
(312) 762-3100
Email: mskoglund@batescarey.com

## CERTIFICATE OF SERVICE

I hereby certify that on March 5, 2019, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the plaintiff, and I hereby certify that I caused the foregoing document or paper to be served via electronic mail to the parties listed below. I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on March 5, 2019

/s/ Michael T.Skoglund
Michael T. Skoglund

Thomas J. Judge
DYKEMA GOSSETT PLLC
1301 K Street NW, Suite 1100W
Washington, DC 20005
Telephone: (202) 906-8600
Facsimile: (202) 906-8669
TJudge@dykema.com

*Attorneys for Travelers Casualty and Surety Company of America*

John E. Howell
William E. Smith
WILEY REIN LLP
1776 K Street, N.W.
Washington, DC 20006
Telephone: 202-719-7000
Facsimile: 202-719-7049
jhowell@wileyrein.com
wsmith@wileyrein.com

*Attorneys for Columbia Casualty Company*