Joy Global, Inc. n/k/a Komatsu Mining
Corp.,

                          Plaintiff,

              v.

Columbia Casualty Co., *et al.*,

                        Defendants.

Case No. 18-2034-LA

## ANSWER AND AFFIRMATIVE DEFENSES OF DEFENDANT TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA

       Defendant Travelers Casualty and Surety Company of America ("Defendant"), by and through its attorneys, answers and responds to the complaint (the "Complaint") filed by Plaintiff Joy Global, Inc. n/k/a Komatsu Mining Corp. ("Plaintiff"). On knowledge, information, and belief, Defendant responds to the allegations in the numbered paragraphs of the Complaint. Each and every allegation of the Complaint is denied if not specifically admitted below.

       1.     This is an action for declaratory relief and money damages for breach of contract and breach of the implied covenant of good faith and fair dealing against defendants, who are insurance companies that have wrongfully refused to provide insurance coverage to plaintiff, their insured, for liabilities and defense costs arising out of and relating to underlying securities claims. As indicated below, the defendants sold their insurance policies to plaintiff on the basis of express representations that the policies would cover liabilities of the sort at issue in this case, and now that plaintiff has paid its insurance premiums, been

subjected to underlying claims, and suffered the covered defense costs and liabilities at issue, they have wrongfully and unjustly denied coverage.

ANSWER: The allegations in Paragraph 1 of the Complaint are descriptive of Plaintiff's lawsuit and does not require a response. To the extent a response is deemed required, Defendant denies the allegations in Paragraph 1 of the Complaint.

2. Plaintiff Joy Global Inc. ("Joy Global"), now known as Komatsu Mining Corp., is a manufacturer and servicer of heavy mining equipment headquartered in Milwaukee, Wisconsin. Joy Global's history of manufacturing and employing people in Milwaukee, and elsewhere in the United States and overseas, dates back over 130 years to the 1880s. In April 2017, Joy Global was acquired by Komatsu America Corp. ("KAC") and renamed Komatsu Mining Corp. In connection with its sale to KAC, Joy Global and various of its officers and directors were named as defendants in a series of eight lawsuits (collectively, the "Securities Claims") filed by Joy Global shareholders, who claimed that Joy Global and its officers breached fiduciary duties, made material misrepresentations and nondisclosures, and committed other wrongs in connection with the sale of Joy Global to KAC.

ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 2 of the Complaint, and on that basis denies them. On information and belief, Defendant admits the allegations in the second sentence of Paragraph 2. Defendant admits that Plaintiff and various of its officers and directors were named as defendants in a series of eight lawsuits, which Plaintiff refers to in its Complaint as the "Securities Claims," and that the filings in the those lawsuits speak for themselves; accordingly, Defendant denies any characterizations that are

inconsistent with the filings in those lawsuits. Defendant denies the remaining allegations in Paragraph 2 of the Complaint.

3.     Defendants Columbia Casualty Company ("CNA"), Arch Insurance Company ("Arch"), and Travelers Casualty and Surety Company of America ("Travelers," and collectively with CNA and Arch, the "Insurers") are insurance companies that sold directors and officers ("D&O") liability insurance policies to Joy Global, in which they promised to pay on behalf of Joy Global and its directors and officers the liabilities and defense costs that Joy Global has incurred, and is continuing to incur, in connection with the Securities Claims. Insurers have breached these commitments and, in the case of CNA, have breached the implied covenant of good faith and fair dealing that is an essential component of every insurance policy in Wisconsin.

ANSWER:  Defendant admits only that Defendants are insurance companies that issued certain insurance policies to Plaintiff. Defendant denies the remaining allegations in Paragraph 3 of the Complaint.

4.     Specifically, as Joy Global's primary insurer, CNA induced Joy Global to buy the CNA policy (and the follow-form Arch and Travelers excess policies) at issue:

   a.     very shortly after the Joy Global transaction was announced in July 2016, and with the knowledge and expectation that claims of the sort pleaded in the Securities Claims were likely to be brought against Joy Global;

   b.     through representations that led, and were designed to lead, Joy Global to understand that its liabilities and defense costs in connection with the Securities Claims would be insured; and

   c.     for double the premium that CNA otherwise would have charged Joy Global, if Joy Global had bought the policy without CNA's insistence that claims like those pleaded in the Securities Claims were likely to ensue and its assurance that they would be covered under the CNA policy.

ANSWER:  Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 4 of the Complaint, and on that basis denies them.

5.     Joy Global now brings this action to vindicate its rights under the Insurers' policies and Wisconsin law; to recover its losses resulting from the Insurers' breaches of the insurance policies that they sold to Joy Global; and to recover damages for CNA's violation of its duty of good faith and fair dealing toward Joy Global.

ANSWER:  The allegations in Paragraph 5 of the Complaint are descriptive of Plaintiff's lawsuit and do not require a response.  To the extent a response is deemed required, Defendant denies the allegations in Paragraph 5 of the Complaint.

6.     Plaintiff Joy Global Inc. ("Joy Global"), now known as Komatsu Mining Corp., is a corporation organized under the laws of Delaware with its principal place of business in Milwaukee, Wisconsin.  Joy Global is a manufacturer and distributor of mining equipment, systems, and services.

ANSWER:  Defendant admits only that Plaintiff is a corporation organized under the laws of Delaware, with its principal place of business in Milwaukee, Wisconsin, and has changed its name to Komatsu Mining Corp. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 6 of the Complaint, and on that basis denies them.

7.     Defendant Columbia Casualty Company ("CNA"), a wholly owned subsidiary of CNA Financial Corporation, is a corporation organized under the laws of Illinois with its principal place of business in Chicago, Illinois.  CNA is

engaged in the insurance business in Wisconsin, and it issued the CNA insurance policy at issue to Joy Global in Milwaukee, Wisconsin.

ANSWER: The allegations in Paragraph 7 of the Complaint are directed towards another party, and Defendant has no obligation to respond. To the extent a response is deemed required, Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 7 of the Complaint, and on that basis denies them.

8.   Defendant Arch Insurance Company ("Arch") is a corporation organized under the laws of Missouri with its principal place of business in Jersey City, New Jersey. Arch is engaged in the insurance business in Wisconsin and issued the Arch insurance policy at issue to Joy Global in Milwaukee, Wisconsin.

ANSWER: The allegations in Paragraph 8 of the Complaint are directed towards another party, and Defendant has no obligation to respond. To the extent a response is deemed required, Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 8 of the Complaint, and on that basis denies them.

9.   Travelers Casualty and Surety Company of America ("Travelers") is a corporation organized under the laws of Connecticut with its principal place of business in Hartford, Connecticut. Travelers is engaged in the insurance business in Wisconsin and issued the Travelers insurance policy at issue to Joy Global in Milwaukee, Wisconsin.

ANSWER: Defendant admits only the allegations in the first sentence of Paragraph 9 of the Complaint, that Defendant is engaged in the insurance business in Wisconsin, and that it issued the referenced policy to Plaintiff. The remaining allegations in Paragraph 9 constitute a legal conclusion to

which no response is required. To the extent a response is deemed required,

Defendant denies the remaining allegations in Paragraph 9 of the Complaint.

10. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a) because the citizenship of the parties is diverse and the amount in controversy exceeds $75,000, exclusive of interest and costs.

ANSWER: The allegations in Paragraph 10 of the Complaint assert

a legal conclusion to which no response is required. To the extent a response is

deemed required, Defendant admits the allegations in Paragraph 10 of the

Complaint.

11. This Court has personal jurisdiction over each of the Insurers because each Insurer engages in the insurance or other business in Wisconsin; is licensed to transact insurance business in Wisconsin; sold and/or delivered one of the insurance policies at issue to Joy Global in Wisconsin; and/or contracted to insure Joy Global for loss in Wisconsin, including the losses complained of in this action.

ANSWER: The allegations in Paragraph 11 of the Complaint assert

a legal conclusion to which no response is required. To the extent a response is

deemed required, Defendant admits the allegations in Paragraph 11 of the

Complaint as they pertain to Defendant.

12. Venue is proper in this district under 28 U.S.C. § 1391(a)-(b) because this district has personal jurisdiction over all named defendants; the insurance policies at issue were sold and issued to a Wisconsin resident in this district; and a substantial part of the events or omissions giving rise to the pleaded claims occurred in this district.

ANSWER: The allegations in Paragraph 12 of the Complaint

consist of a legal conclusion to which no response is required. To the extent a

response is deemed required, Defendant admits the allegations in Paragraph 12 of the Complaint.

13.    Joy Global is a Milwaukee-based manufacturer of mining equipment and provider of mining-related systems and services whose history in Milwaukee dates back to the 1880s.

ANSWER:  Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 13 of the Complaint, and on that basis denies them.

14.    In January 2016, Komatsu America Corp. ("KAC") approached Joy Global to discuss the potential merits of a combination between the two companies.  Following the completion of a financial analysis conducted by Goldman Sachs and after months of negotiations, KAC and Joy Global entered into an agreement, dated July 21, 2016, pursuant to which KAC committed to acquire Joy Global.

ANSWER:  In response to the allegations in Paragraph 14 of the Complaint, Defendant, on information and belief, admits only that Komatsu America Corp. ("KAC") and Plaintiff entered into an agreement, dated July 21, 2016, pursuant to which KAC committed to acquire Plaintiff, and such agreement speaks for itself.  Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 14 of the Complaint, and on that basis denies them.

15.    That same day, Joy Global publicly announced that it had agreed to be acquired by KAC and informed investors that it would file a proxy statement with information about the proposed transaction. Joy Global's Form 8-K announcing the proposed transaction was accompanied by a copy of the parties'

acquisition agreement, a press release, and an investor presentation regarding the proposed transaction.

ANSWER: On information and belief, Defendant admits the allegations in Paragraph 15 of the Complaint.

16.    On August 15, 2016, Joy Global filed a preliminary proxy statement with the United States Securities and Exchange Commission ("SEC"), and on September 2, 2016, Joy Global filed a definitive proxy statement. Both proxy statements contained extensive disclosures of the analysis undertaken and the information considered by Joy Global's board of directors in approving the company's proposed sale to KAC. The proxy statements further disclosed the success fee that would be due to Goldman Sachs, and the compensation and benefits that would be due to certain Joy Global directors and officers, if the transaction were consummated.

ANSWER: On information and belief, Defendant only admits the allegations in the first sentence of Paragraph 16 of the Complaint and that Plaintiff filed a preliminary proxy statement and a proxy statement with the Securities and Exchange Commission, which speak for themselves; accordingly, Defendant denies any characterizations that are inconsistent with the proxy statements. Defendant denies the remaining allegations in Paragraph 16 of the Complaint.

17.    Over the course of the next two months, several Joy Global shareholders filed a series of eight putative class-action lawsuits against the company and various of its directors and officers challenging the transaction, alleging breaches of fiduciary duty and that disclosures made in proxy statements omitted material information and thus were false and misleading in violation of federal and/or state law. Seven of these lawsuits were filed in this Court (the United States District Court for the Eastern District of Wisconsin), and the eighth was filed in the Milwaukee County Circuit Court. Listed chronologically by date of filing, these eight civil suits (the "Securities Claims") are:

a.    *Oduntan v. Joy Global Inc.*, No. 16-cv-1136, filed August 24, 2016, in the United States District Court for the Eastern District of Wisconsin;

b.      *Soffer v. Doheny*, No. 16-cv-1148, filed August 26, 2016, in the United States District Court for the Eastern District of Wisconsin;

c.      *Garfield v. Joy Global Inc.*, No. 16-cv-6588, filed on August 26, 2016, in the Milwaukee County Circuit Court in Wisconsin;

d.      *Gordon v. Joy Global Inc.*, No. 16-cv-1153, filed August 26, 2016, in the United States District Court for the Eastern District of Wisconsin;

e.      *Rote v. Joy Global Inc.*, No. 16-cv-1186, filed September 2, 2016, in the United States District Court for the Eastern District of Wisconsin;

f.      *Tansey v. Joy Global Inc.*, No. 16-cv-1201, filed September 6, 2016, in the United States District Court for the Eastern District of Wisconsin;

g.      *McGregor v. Joy Global Inc.*, No. 16-cv-1213, filed September 8, 2016, in the United States District Court for the Eastern District of Wisconsin; and

h.      *Duncan v. Joy Global Inc.*, No. 16-cv-1229, filed September 13, 2016, in the United States District Court for the Eastern District of Wisconsin.

ANSWER:  Defendant admits only that Plaintiff and various of its officers and directors were named as defendants in eight lawsuits identified in Paragraph 17 of the Complaint and that the filings in those lawsuits speak for themselves; accordingly, Defendant denies any characterizations that are inconsistent with the filings in those lawsuits.  Defendant denies the remaining allegations in Paragraph 17 of the Complaint.

18.    Each of the Securities Claims named as defendants Joy Global Inc., Edward Doheny (Joy Global's CEO), John Hanson (Chair of Joy Global's Board of Directors), and Joy Global directors Steven Gerard, Mark Gliebe, John Gremp, Gale Klappa, Richard Loynd, P. Eric Siegert, and James Tate.  Several of the Securities Claims also named other defendants: KAC was named in *Soffer*, *Garfield*, and *McGregor*; Komatsu Ltd. (KAC's parent) was named in *Garfield* and *McGregor*; Pine Solutions Inc. (a corporate vehicle used to effect the

transaction) was named in *Soffer* and *McGregor*; and Goldman Sachs and John Does 1-5 (employees at Goldman Sachs) were named in *McGregor*.

ANSWER:  Defendant admits only that Plaintiff and various of its officers and directors were named as defendants in eight lawsuits identified in Paragraph 17 of the Complaint and that the filings in those lawsuits speak for themselves; accordingly, Defendant denies any characterizations that are inconsistent with the filings in those lawsuits.  Defendant denies the remaining allegations in Paragraph 18 of the Complaint.

19.    All of the Securities Claims except *Garfield* alleged violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934, as well as SEC Rule 14a-9. *Soffer* also alleged breach of fiduciary duty. *Garfield*, the sole state court action, exclusively alleged breaches of various fiduciary duties.

ANSWER:  Defendant admits only that Plaintiff and various of its officers and directors were named as defendants in eight lawsuits identified in Paragraph 17 of the Complaint and that the filings in those lawsuits speak for themselves; accordingly, Defendant denies any characterizations that are inconsistent with the filings in those lawsuits.  Defendant denies the remaining allegations in Paragraph 19 of the Complaint.

20.    All of the Securities Claims alleged that, by failing to disclose material information in the proxy statements, Joy Global had deprived its shareholders of their right to make an informed decision about whether to approve the company's sale to KAC.  Certain of the Securities Claims further alleged that some Joy Global officers were conflicted and/or breached their fiduciary duties to the shareholders because, among other reasons, they stood to receive "golden parachutes" or other payments if the transaction were consummated.

ANSWER:  Defendant admits only that Plaintiff and various of its officers and directors were named as defendants in eight lawsuits identified in

Paragraph 17 of the Complaint and that the filings in those lawsuits speak for

themselves; accordingly, Defendant denies any characterizations that are

inconsistent with the filings in those lawsuits.  Defendant denies the remaining

allegations in Paragraph 20 of the Complaint.

21.    Plaintiffs in the Securities Claims listed above (*see supra,* ¶ 17)
sought to prevent the transaction from occurring. Specifically, on September 15,
2016, the plaintiff in *Oduntan* moved for a preliminary injunction, seeking to
enjoin the shareholder vote on whether to approve the transaction. Plaintiffs in
several of the other six federal actions subsequently joined in the *Oduntan* motion,
and on September 23, 2016, the plaintiff in *Garfield*, the only case filed in state
court, likewise moved for a temporary injunction to enjoin the shareholder vote.

ANSWER:  Defendant admits only that Plaintiff and various of its

officers and directors were named as defendants in eight lawsuits identified in

Paragraph 21 of the Complaint and that the filings in those lawsuits speak for

themselves; accordingly, Defendant denies any characterizations that are

inconsistent with the filings in those lawsuits.  Defendant denies the remaining

allegations in Paragraph 21 of the Complaint.

22.    As part of an agreement to settle seven of the Securities Claims (i.e.,
all of the suits except the *Duncan* suit, *see supra,* ¶ 17(a)-(g)), Joy Global filed
agreed-upon additional disclosures on September 29, 2016, and October 3, 2016.
Joy Global further agreed to pay confidential sums to plaintiffs' counsel in these
seven actions. Accordingly, on October 7, 2016, the first seven Securities Claims
were settled and dismissed with prejudice, pursuant to a stipulated order, leaving
only the *Duncan* action as a pending suit.

ANSWER:  On information and belief, Defendant admits only that

the lawsuits identified in Paragraph 17 other than the lawsuit styled *Duncan v. Joy*

*Global Inc.*, No. 16-cv-1229, were dismissed on or around October 7, 2016,

pursuant to a settlement. Defendant denies the remaining allegations in

Paragraph 22 of the Complaint.

23. On October 19, 2016, Joy Global's sale to KAC was approved at a special meeting of Joy Global's shareholders, and on April 5, 2017, the transaction closed.

ANSWER: On information and belief, Defendant admits the

allegations in Paragraph 23 of the Complaint.

24. Three weeks later, on April 26, 2017, the plaintiffs in the *Duncan* action filed an Amended Complaint, alleging revised claims against Joy Global and various of its officers for allegedly misleading statements and omissions in violation of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 and SEC Rule 14a-9 thereunder. The *Duncan* plaintiffs further alleged that certain of the individual defendants had breached their duties of loyalty and/or situational fiduciary duties in connection with the transaction, and they demanded compensatory and rescissory damages and other relief.

ANSWER: Defendant admits only that the plaintiffs in the *Duncan*

action filed an Amended Complaint on or around April 26, 2017, which speaks for

itself; accordingly, Defendant denies any characterizations that are inconsistent

with the Amended Complaint. Except as expressly admitted herein, Defendant

denies the remaining allegations in Paragraph 24 of the Complaint.

25. Following fully briefed motions to dismiss and extended negotiations, on March 23, 2018, the *Duncan* plaintiffs and Joy Global filed before this Court a Notice of Settlement, and on May 23, 2018, they followed up that Notice by filing a Stipulation of Settlement, pursuant to which they confirmed Joy Global's agreement to pay $20 million in full and final resolution of the *Duncan* claims, inclusive of plaintiffs' attorney fees and with no admission of liability. This Court granted preliminary approval of the *Duncan* settlement on September 14, 2018; Joy Global subsequently paid the $20 million settlement amount into

escrow pursuant to the Stipulation of Settlement; and on December 20, 2018, the Court approved the *Duncan* settlement.

ANSWER:  On information and belief, Defendant admits only that the parties to the lawsuit styled *Duncan v. Joy Global Inc.*, No. 16-cv-1229, filed a notice of settlement on or about March 23, 2018, and a stipulation of settlement on or about May 23, 2018, which stipulation speaks for itself, and further admits that the court granted preliminary approval of the referenced settlement on September 14, 2018, and granted final approval of the *Duncan* Settlement on December 20, 2018.  Defendant denies any characterizations that are inconsistent with the stipulation of settlement.  Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 25 of the Complaint, and on that basis denies them.

26.    Like many publicly traded companies, prior to its sale to KAC, Joy Global maintained a D&O liability insurance program to protect itself and its individual directors and officers against the risk of securities claims.  Joy Global shopped for and purchased its D&O insurance, on an annual basis through policies with annual policy periods, with the active advice and assistance of experienced and professional insurance brokers.  At the time relevant to its sale to KAC and the Securities Claims at issue here, Joy Global's D&O policies had an annual renewal date of July 31, meaning that Joy Global needed to purchase new coverage to take effect on July 31 each year for the ensuing 12 months.

ANSWER:  In response to the allegations in Paragraph 26 of the Complaint, Defendant admits only that Plaintiff purchased directors and officers liability insurance policies and that Plaintiff's directors and officers liability insurance policies at the relevant time had an expiration date of July 31, 2016. Defendant lacks knowledge or information sufficient to form a belief as to the

truth of the remaining allegations in Paragraph 26 of the Complaint, and on that basis denies them.

27.     Accordingly, on July 21, 2016, when Joy Global publicly announced that it had agreed to its sale to KAC, it was only ten days away from its D&O insurance program's annual renewal date.  In fact, by that date (July 21, 2016), CNA, Arch, and Travelers had already committed to (i.e., "bound") coverage for the upcoming 2016-2017 policy year, and to renew the expiring coverage that CNA, Arch, and Travelers previously had issued for the 2015-2016 policy year.

ANSWER:  In response to the allegations in Paragraph 27 of the Complaint, Defendant admits that July 21, 2016, was ten days away from July 31, 2016, and that as of July 21, 2016, CNA had bound coverage for the 2016-2017 policy period to renew the expiring coverage CNA previously had issued for the 2015-2016 policy period.  Defendant also admits that, as of July 21, 2016, Defendant had bound coverage for the 2016-2017 policy period to renew the expiring coverage it previously had issued for the 2015-2016 policy period.  Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 27 of the Complaint, and on that basis denies them.

28.     Because the insurance binder required Joy Global to report any material changes in conditions, Joy Global informed CNA of the proposed transaction through its brokers at Marsh LLC ("Marsh"), on July 21, 2016 (i.e., on the same day that Joy Global publicly announced the transaction), and Joy Global asked CNA, Arch, and Travelers to confirm that they would still issue the renewal coverage, as previously bound.

ANSWER:  Defendant admits that it learned of the transaction from Marsh sometime after July 21, 2016, and Defendant issued a renewal excess policy effective July 31, 2016.  Defendant lacks knowledge or information

sufficient to form a belief as to the truth of the remaining allegations in

Paragraph 28, and on that basis denies them.

29.     CNA declined.  Specifically, on or around July 27, 2016, CNA expressed its understanding and expectation that a securities claim would be asserted against Joy Global in connection with the planned transaction (as is now typical, in connection with the planned sale of nearly any publicly traded company in the United States), and CNA stated that it was aware of at least seven law firms that were investigating and considering bringing such claims relating to the sale of Joy Global to KAC.  According to CNA, the announced sale thus represented a changed circumstance (i.e., a heightened risk factor) that required different treatment or pricing than the parties previously had discussed for the renewal of Joy Global's D&O coverage.

ANSWER:  Defendant lacks knowledge or information sufficient to

form a belief as to the truth of the allegations in Paragraph 29 of the Complaint,

and on that basis denies them.

30.     Importantly, at no time during these renewal discussions did CNA indicate that it was unwilling or unable to renew or extend Joy Global's coverage because of its expectation that Joy Global would face a securities claim.  Nor did CNA indicate at any point in these discussions that it would not cover a securities claim relating to the announced transaction.  On the contrary, CNA made material representations to Joy Global, through Marsh, that actually and reasonably induced Joy Global to believe that CNA would cover securities claims relating to the transaction, either through its expiring 2015-2016 policy or through a 2016-2017 renewal.

ANSWER:  Defendant lacks knowledge or information sufficient to

form a belief as to the truth of the allegations in Paragraph 30 of the Complaint,

and on that basis denies them.

31.     Specifically, when a suggestion was made that Joy Global could submit to CNA, under its then-expiring 2015-2016 D&O policy, a "notice of circumstance" regarding the potential sale to KAC, CNA confirmed that it would accept such a "notice of circumstance" under the expiring policy. The effect of such "notice of circumstance," if provided by Joy Global, would have been to trigger coverage, under the expiring 2015-2016 policy, for any securities claim that might arise out of the announced sale later (i.e., even after expiration of the 2015-2016 policy period). If Joy Global were to choose this option, CNA indicated that it would not issue a new limit of liability for the 2016-2017 policy year; instead, and for an additional premium, it would only extend the otherwise-expiring policy for six months or until the close of the sale.

ANSWER:  Defendant is without knowledge or information

sufficient to form a belief as to the truth of the allegations in Paragraph 31 of the

Complaint, and on that basis denies them.

32.     In proposing this "notice of circumstance" solution, CNA indicated both that (a) it considered the threat of securities claims relating to the acquisition sufficiently specific for a "notice of circumstance" to be appropriate to "lock in" coverage under the expiring policy, and (b) it considered the expiring policy, if extended (as CNA was proposing) through the date of closing, to provide coverage for such claims. Otherwise, CNA's proposal would have made no sense and offered no solution to the specific risk that the parties were discussing: the risk of securities claims arising from the announced sale to KAC.

ANSWER:  Defendant lacks knowledge or information sufficient to

form a belief as to the truth of the allegations in Paragraph 32 of the Complaint,

and on that denies them.

33.     As an alternative to its "notice of circumstance" proposal, CNA indicated that if Joy Global *refrained* from submitting a notice of circumstance under the expiring CNA policy (i.e., so that expiring policy would not be exposed to transaction-related claims), then CNA would be willing to renew its policy for the 2016-2017 policy year with a new coverage limit. Under this proposal, however, CNA would require Joy Global to pay *double* its base premium: $236,250 for a renewal of the expiring policy and another $236,250 for a "run-off endorsement" that would extend, for an additional period of years, coverage for securities claims specifically arising from Joy Global's sale to KAC.

ANSWER:  Defendant lacks knowledge or information sufficient to

form a belief as to the truth of the allegations in Paragraph 33 of the Complaint,

and on that basis denies them.

34.    CNA led Joy Global and Marsh to believe, and Joy Global and
Marsh did actually and reasonably believe, that paying a 200% premium for a
renewal policy plus a "run-off endorsement" would provide Joy Global with
coverage in the event of a securities claim arising out of its sale to KAC, and CNA
knew that Joy Global was seeking to renew its coverage (a) with the expectation
that it would soon be sold and (b) for the express and primary purpose of securing
coverage for transaction-related claims.

ANSWER:  Defendant lacks knowledge or information sufficient to

form a belief as to the truth of the allegations of Paragraph 34, and on that basis

denies them.

35.    In reliance on CNA's representations and in response to its
proposals, Joy Global chose not to submit a notice of circumstance under the
expiring CNA policy and elected instead to purchase from CNA, for a double
premium, a new 2016-2017 policy with a "run-off endorsement" (Endorsement
No. 3) extending coverage for claims relating to the envisioned sale. CNA thus
issued Policy No. 28704981 to Joy Global, effective July 31, 2016 (the "CNA
Policy"). The CNA Policy, a true and correct copy of which is appended hereto as
Exhibit A, provides $10 million of coverage to Joy Global in excess of a $1.5
million self-insured retention.

ANSWER:  Defendant admits only that Exhibit A is a true and

correct copy of the policy that CNA issued to Plaintiff for the period commencing

July 31, 2017 (the "Primary Policy"), which speaks for itself.  Defendant lacks

knowledge or information sufficient to form a belief as to the truth of the

remaining allegations in Paragraph 35 of the Complaint, and on that basis denies

them.

36.     The CNA Policy is written on a standard D&O insurance form, which CNA calls its "Management Liability Policy" and markets and sells to public companies like Joy Global. Through its marketing materials (including materials posted to its website and dated July 22, 2016), and in its efforts to lure policyholders, CNA warns customers like Joy Global that they are "more likely than ever to be scrutinized for their actions and decisions. All too often, a seemingly straight-forward business decision may result in litigation." Because of these risks, CNA urges companies like Joy Global to "consider whether their management liability policy provides coverage that addresses the exposures they may encounter in the current marketplace."

          ANSWER:  Defendant lacks knowledge or information sufficient to

form a belief as to the truth of the allegations of Paragraph 36 of the Complaint,

and on that basis denies them.

37.     According to CNA, one of the highlights of its Management Liability Policy is that it "include[s] broad definitions of claim and loss." In its July 2016 promotional materials, CNA does not caution, or even suggest, that its Management Liability Policy will not provide indemnity coverage for acquisition-related claims, which is a substantial risk for a public company like Joy Global and was the specific risk that both Joy Global and CNA expressly had in mind when the CNA Policy was underwritten and sold to Joy Global.

          ANSWER:  Defendant lacks knowledge or information sufficient to

form a belief as to the truth of the allegations in Paragraph 37 of the Complaint,

and on that basis denies them.

38.     CNA further touts its expertise in developing tailored insurance products according to each client's particular needs, stating in its marketing materials that it "develops specific insurance products for its clients."

          ANSWER:  Defendant lacks knowledge or information sufficient to

form a belief as to the truth of the allegations of Paragraph 38 of the Complaint,

and on that basis denies them.

39.     Against the background of such representations, Joy Global purchased the CNA Policy and entrusted CNA to protect it against the Securities Claims.

ANSWER:  Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 39 of the Complaint, and on that basis denies them.

40.     Defendants Arch and Travelers issued excess policies that follow form to the CNA Policy for the same 2016-2017 policy year. Arch issued Policy No. DOX 9300349-02 (the "Arch Policy"), a true and correct copy of which is appended hereto as Exhibit B, and Travelers issued Policy No. 105653715 (the "Travelers Policy"), a true and correct copy of which is appended hereto as Exhibit C. The Arch Policy provides $10 million of coverage in excess of the limits of the CNA Policy, and the Travelers Policy provides $10 million of coverage in excess of the limits of the Arch Policy.  The Arch and Travelers Policies incorporate the same terms and conditions of coverage as the CNA Policy.

ANSWER:  Defendant admits that it issued an excess, follow-form policy bearing number 105653715 for the 2016-2017 policy year.  Defendant admits that Exhibit C is a true and correct copy of the policy that Defendant issued to Plaintiff (the "Travelers Policy"), which speaks for itself.  Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 40 of the Complaint, and on that basis denies them.

41.     At no time in the course of underwriting and issuing their respective policies did either Arch or Travelers ever indicate to Joy Global that it took a materially different or narrower view of the scope of coverage under its policy than CNA represented was available under the CNA Policy.  On the contrary, at all material times, Arch and Travelers have been content to indicate that they agree with CNA's representations and positions, even where they have not, or may have

not, responsibly inquired into or informed themselves about CNA's representations or positions.

ANSWER:  Defendant denies the second sentence in Paragraph 41

of the Complaint.  Defendant lacks knowledge or information sufficient to form a

belief as to the truth of the remaining allegations in Paragraph 41 of the

Complaint, and on that basis denies them.

42.    The CNA Policy provides that:

> The Insurer [CNA] shall pay on behalf of the
> Insured Entity [Joy Global] that Loss resulting
> from any Securities Claim first made against the
> Insured Entity during the Policy Period or
> Extended Reporting Period, if applicable, for a
> Wrongful Act.

Exhibit A, § I, at 1. Terms capitalized in the CNA Policy are defined in the CNA
Policy.

ANSWER:  Defendant admits that Paragraph 42 of the Complaint

partially quotes the Primary Policy.  Defendant avers that the Primary Policy has

additional terms which speak for themselves, and denies any characterization

inconsistent with any and all of the Primary Policy's terms.

43.    "Loss" means, in relevant part:

> those amounts that the Insured Persons [or the
> Insured Entity] . . . are legally liable to pay as
> awards, settlements or judgments (including any
> award of pre-judgment and post-judgment interest
> on a covered judgment) and Defense Costs, Inquiry
> Costs, Shareholder Derivative Demand
> Investigation Costs and Books and Records Costs.

Exhibit A, § II, at 5.

ANSWER: Defendant admits that Paragraph 43 of the Complaint partially quotes the Primary Policy. Defendant avers that the Primary Policy has additional terms, which speak for themselves, and denies any characterization inconsistent with any and all of the Primary Policy's terms.

44. "Securities Claim" means, in relevant part:

a Claim made against any Insured:

1. alleging, arising out of, based upon or attributable to the purchase or sale or offer or solicitation of an offer to purchase or sell any securities of an Insured Entity; or

2. brought by or on behalf of one or more security holders of an Insured Entity in their capacity as such;

. . . .

Exhibit A, § II, at 7-8.

ANSWER: Defendant admits that Paragraph 44 partially quotes the Primary Policy. Defendant avers that the Primary Policy has additional terms, which speak for themselves, and denies any characterization inconsistent with any and all of the Primary Policy's terms.

45. "Defense Costs" means:

reasonable fees, costs, [and] expenses . . . consented to by the Insurer (such consent not to be unreasonably withheld or delayed) and incurred by the Insureds in the investigation, adjustment, defense or appeal of any covered Claim or incurred at the Insurer's request to assist the Insurer in investigating any covered Claim . . . .

Exhibit A, § II, at 3.

ANSWER:  Defendant admits that Paragraph 45 partially quotes the Primary Policy.  Defendant avers that the Primary Policy has additional terms, which speak for themselves, and denies any characterization inconsistent with any and all of the Primary Policy's terms.

46.    "Wrongful Act" means, in relevant part:

> any actual or alleged error misstatement, misleading statement, act, omission, neglect or breach of duty committed or attempted by . . . an Executive . . . or an Insured Entity . . . ."

Exhibit A, § II, at 9.

ANSWER:  Defendant admits that Paragraph 46 partially quotes the Primary Policy, but denies that it accurately quotes the Primary Policy.  Defendant avers that the Primary Policy contains additional terms, which speak for themselves, and denies any characterization inconsistent with any and all of the Primary Policy's terms.

47.    Like most standard-form D&O policies, the CNA Policy provides coverage to Joy Global, not only for its *own* liabilities and defense costs resulting from "Securities Claims" (i.e., so-called "Side C" coverage, as provided here by the Policy's Insuring Agreement 3), but also for those of individual directors and officers whom the company indemnifies (i.e., so-called "Side B" coverage, as provided here by the Policy's Insuring Agreement 2). Specifically, the policy states:

> The Insurer shall pay on behalf of the Insured Entity that Loss for which the Insured Entity has indemnified the Insured Persons [i.e., individual directors and officers] and which results from any Claim first made against the Insured Persons during the Policy Period or the Extended Reporting Period, if applicable, for a Wrongful Act.

Exhibit A, § I, at 1.

ANSWER:  Defendant admits that Paragraph 47 partially quotes the Primary Policy.  Defendant avers that the Primary Policy has additional terms, which speak for themselves, and denies any characterization inconsistent with any and all of the Primary Policy's terms.  Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 47 of the Complaint, and on that basis denies them.

48.    As indicated below (*see infra,* ¶¶ 55-77), the Insurers have refused to provide coverage for *any* of the amounts that Joy Global has paid and agreed to pay to settle the Securities Claims on the ground that the Securities Claims constitute, and constitute entirely, a single integrated "Inadequate Consideration Claim."  The CNA Policy (and the Arch and Travelers Policies, by following form) excludes from the definition of "Loss" that portion of any judgment or settlement against an "Insured Entity" or "Insured Person" that constitutes an "Inadequate Consideration Claim."  Specifically, the CNA Policy states, in relevant part:

> However, Loss (other than Defense Costs) shall *not* include:
>
> *    *    *    *
>
> vi. any amount of any judgment or settlement of any Inadequate Consideration Claim other than Defense Costs . . . .

Exhibit A, § II, at 6 (emphasis added).

ANSWER:  Defendant admits that it has denied coverage for the settlements of the lawsuits identified in Paragraph 17 of the Complaint for multiple reasons, including, where applicable, the referenced inadequate consideration provision in the Primary Policy.  Defendant admits that the third sentence of Paragraph 48 partially quotes the Primary Policy.  Defendant avers that the Primary Policy has additional terms, which speak for themselves, and denies any characterization inconsistent with any and all of the Primary Policy's terms.  The remaining allegations in Paragraph 48 are legal conclusions to which no response is required.  To the extent a response is deemed required, Defendant denies those allegations.

49.     The CNA Policy defines "Inadequate Consideration Claim" to mean:

> *that part of* any *Claim alleging* that the price or consideration paid or proposed to be paid for the acquisition or completion of the acquisition of all or substantially all the ownership interest in or assets of an entity is inadequate.

Exhibit A, § II, at 4 (emphasis added).

ANSWER:  Defendant admits that Paragraph 49 partially quotes the Primary Policy.  Defendant avers that the Primary Policy has additional terms, which speak for themselves, and denies any characterization inconsistent with any and all of the Primary Policy's terms.

50.    As the foregoing indicates, the Policy's definition of "Inadequate Consideration Claim" excludes coverage *only* for [i] "that part of" [ii] any "Claim" [iii] "alleging that the price or consideration paid or proposed to be paid" for an acquisition is "inadequate."  The "Inadequate Consideration Claim" exclusion does not bar coverage (a) for any *other* parts of any "Claim" or (b) for any "*Claim*" that does not "*allege* that the price or consideration paid or proposed to be paid" for an acquisition is inadequate.

ANSWER:  The allegations in Paragraph 50 of the Complaint

constitute a legal conclusion to which no response is required.  To the extent a

response is deemed required, Defendant denies the allegations in Paragraph 50.

51.    As the foregoing further indicates, the CNA Policy does not exclude coverage for "Defense Costs" for an "Inadequate Consideration Claim." In other words, even where a "Claim" is properly excluded from coverage, in whole or in part, on the ground that it is an "Inadequate Consideration Claim," coverage is still provided for "Defense Costs" incurred in connection with such "Inadequate Consideration Claim." *See* Exhibit A, § II, at 6 (definition of "Loss," subparagraph vi).

ANSWER:  The allegations in Paragraph 51 of the Complaint

constitute a legal conclusion to which no response is required.  To the extent a

response is deemed required, Defendant denies the allegations in Paragraph 51.

52.    The CNA Policy's definition of "Inadequate Consideration Claim" incorporates the Policy's definition of "Claim," which, in turn, is defined to mean, in relevant part, "any civil . . . proceeding . . . alleging a Wrongful Act . . . ." Exhibit A, § II, at 2.

ANSWER:  Defendant admits that the defined term "Claim" is

included in the definition of "Inadequate Consideration Claim" in the Primary

Policy and that Paragraph 52 of the Complaint partially quotes the definition of

"Claim" in the Primary Policy.  Defendant avers that the Primary Policy has

additional terms, which speak for themselves, and denies any characterization

inconsistent with any and all of the Primary Policy's terms. The remaining

allegations in Paragraph 52 constitute a legal conclusion to which no response is

required. To the extent a response is deemed required, Defendant denies the

remaining allegations in Paragraph 52 of the Complaint.

53. Accordingly, the CNA Policy provides that whether a "Claim" is, in whole or in part, an "Inadequate Consideration Claim" turns on whether Joy Global or an "Executive" (i.e., a Joy Global officer or director) "committed or attempted" the "Wrongful Act" of paying or proposing to pay inadequate consideration for the acquisition of all or substantially all of the ownership interest in or assets of another entity.

ANSWER: The allegations in Paragraph 53 of the Complaint

constitute a legal conclusion to which no response is required. To the extent a

response is deemed required, Defendant denies the allegations in Paragraph 53.

54. The CNA Policy also includes a manuscript endorsement (Endorsement No. 3), entitled "Joy Global Inc. Run Off Period Endorsement." This endorsement provides in relevant part:

> [I]f there is a Takeover of the Named Insured
> during the Policy Period, either directly or
> indirectly, by Komatsu Ltd., then in consideration
> of an additional premium paid in the amount of
> $236,250.00 [i.e., 100% of the base premium] . . .
> the Policy shall be amended as follows:
>
> . . .
>
> 1. Run-Off Period
>
> This Policy shall be extended for a period
> commencing on the effective date of the Takeover of
> the Named Insured by Komatsu Ltd. and expiring six
> (6) years thereafter (hereinafter the "Run-Off
> Period"), but only with respect to:

> a. Claims first made against the Insureds during the Run-Off
> Period for any actual or alleged:
>
> > i. Wrongful Act occurring prior to the
> > effective date of such Takeover; . . .
>
> and otherwise covered pursuant to the terms,
> conditions, and restrictions of this Policy.

Exhibit A, Endorsement No. 3.

ANSWER: Defendant admits that Paragraph 54 of the Complaint

partially quotes the Primary Policy. Defendant avers that the Primary Policy

contains additional terms, which speak for themselves, and denies any

characterization inconsistent with any and all of the Primary Policy's terms. The

remaining allegations in Paragraph 54 constitute a legal conclusion to which no

response is required. To the extent a response is deemed required, Defendant

denies the remaining allegations in Paragraph 54 of the Complaint.

55. By emails sent by its insurance broker, Marsh LLC, Joy Global gave
timely notice to the Insurers of the Securities Claims promptly after each was filed
and served.

ANSWER: Defendant admits that Plaintiff's insurance broker,

Marsh LLC, provided notice to Defendant of the lawsuits identified in

Paragraph 17 of the Complaint by specific correspondence, which speaks for

itself. Defendant denies any characterizations that are inconsistent with that

correspondence. The remaining allegations in Paragraph 55 of the Complaint are

directed towards other defendants, and Defendant has no obligation to respond.

To the extent a response is deemed required, Defendant lacks knowledge or

information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 55 of the Complaint, and on that basis denies them.

56. In a letter to Joy Global dated November 8, 2016, CNA acknowledged coverage under the CNA Policy for "Defense Costs" incurred by Joy Global in connection with the Securities Claims but denied coverage for any and all liability in those actions, on the ground that, taken as a whole, they constituted, in their entirety, an "Inadequate Consideration Claim."

ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 56 of the Complaint, and on that basis denies them. Defendant also avers that any correspondence speaks for itself. Defendant denies any allegations inconsistent with any referenced correspondence.

57. In this letter, CNA acknowledged that the plaintiffs in the Securities Claims challenged Joy Global's sale to KAC, in part, because "the Board agreed to preclusive deal protection devices, including no-solicitation and matching rights provisions, and that the proxy statement filed with the SEC in relation to the Proposed Merger is materially incomplete and misleading."

ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 57 of the Complaint, and on that basis denies them. Defendant also avers that any correspondence speaks for itself. Defendant denies any allegations inconsistent with any referenced correspondence.

58. CNA's November 8, 2016, letter identified three categories of allegations made by the plaintiffs regarding the so-called "flawed process in negotiating the Proposed Merger."

a. *First*, plaintiffs alleged that Joy Global "push[ed] Komatsu to commit to certain post-close employee retention and compensation prior to signing the merger agreement," and

that "restricted stock and unrestricted stock units held by non-employee Board member will vest upon consummation of the Proposed Merger and that Joy Global's CEO, Edward Doheny II., will receive a $6.6 million cash severance payment."

b. *Second*, plaintiffs alleged that Joy Global "determin[ed] not to contact any potential bidders aside from Komatsu . . . until after announcement of the Proposed Merger and establishment of the $75 million termination fee."

c. *Third*, plaintiffs alleged that Joy Global "instruct[ed] Goldman, Sachs & Co. . . . to utilize certain pessimistic forecasts, rather than the optimistic forecasts Joy Global's management had previously prepared. . . . Goldman is also allegedly due to receive a success fee of $28.5 million contingent on completion of the Proposed Merger."

ANSWER:  Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 58 of the Complaint, and on that basis denies them.  Defendant also avers that any correspondence speaks for itself.  Defendant denies any allegations inconsistent with any referenced correspondence.

59.     Notwithstanding (a) the foregoing allegations; (b) the fact that the "Claims" pleaded in the Securities Claims included claims for misrepresentation, nondisclosure, breaches of fiduciary duty, and the like; (c) the fact that CNA sold the CNA Policy to Joy Global expressly to protect Joy Global and its directors and officers from claims arising out of the envisioned sale to KAC; and (d) the limited scope and inapplicable terms of the CNA Policy's "Inadequate Consideration Claim" exclusion, CNA's November 8, 2016, letter deemed the entire litigation (i.e., all eight Securities Claims and all claims within each of them) an "Inadequate Consideration Claim" and thus, excluded from coverage under the Policy. CNA

concluded: "the Policy does not provide coverage for any judgement or settlement in this matter and instead will only provide coverage for Defense Costs."

ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 59 of the Complaint, and on that basis denies them. Defendant also avers that any correspondence speaks for itself. Defendant denies any allegations inconsistent with any referenced correspondence.

60. On June 19, 2017, CNA issued a further letter to Joy Global in which it acknowledged receipt of the amended *Duncan* complaint (which, as noted above, had been filed on April 26, 2017), and further acknowledged that the other seven Securities Claims had been settled. In this letter, CNA recognized that, among their other assertions, the *Duncan* plaintiffs alleged in their amended complaint that:

> on September 2, 2016, defendants issued a false and misleading Definitive Proxy Statement on Schedule 14(a) in order to secure shareholder support for the undervalued acquisition. Plaintiffs further allege that Defendants were forced to issue multiple supplemental Proxy disclosures on September 29 and October 3, 2016 in an attempt to rectify the problems, but the final Proxy still woefully failed to provide full and fair disclosures to Joy Global stockholders.

ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 60 of the Complaint, and on that basis denies them. Defendant also avers that any correspondence speaks for itself. Defendant denies any allegations inconsistent with any referenced correspondence.

61. CNA also recognized in its June 19, 2017, letter that the *Duncan* plaintiffs "further allege that Joy Global executives received 'golden parachutes' and exorbitant compensation on the date the merger closed." In addition, CNA acknowledged that the relief sought by the *Duncan* plaintiffs included

"certification of the class, injunctive relief declaring the Proxy false and misleading, and compensatory and rescissory damages, pre and post judgment interest, attorney fees, expert fees and costs."

ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 61 of the Complaint, and on that basis denies them. Defendant also avers that any correspondence speaks for itself. Defendant denies any allegations inconsistent with any referenced correspondence.

62. Again, however, CNA labeled the *Duncan* litigation, in its entirety, an "Inadequate Consideration Claim" under the terms of the Policy. CNA's June 19, 2017, letter concluded that "the Policy does not provide coverage for any judgement or settlement in this matter," just as CNA declined to indemnify Joy Global for any portion of the amounts it paid to settle the seven Securities Claims other than *Duncan*, "and instead will only provide coverage for Defense Costs."

ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 62 of the Complaint, and on that basis denies them. Defendant also avers that any correspondence speaks for itself. Defendant denies any allegations inconsistent with any referenced correspondence.

63. On or around August 11, 2017, Arch wrote to Joy Global, referencing CNA's June 19, 2017 letter, and adopting CNA's coverage position as its own.

ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 63 of the Complaint, and on that basis denies them.

64. On October 26, 2017, Joy Global wrote to CNA and asked it to reconsider its coverage position, noting that by declining coverage for any

judgment or settlement of the Securities Claims, CNA had waived any consent rights it otherwise might have under the Policy with respect to settlement issues, and further, had waived any requirement under the Policy that Joy Global obtain CNA's consent before settling *Duncan* or making any offer of settlement in *Duncan*.

ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 64 of the Complaint, and on that basis denies them. Defendant also avers that any correspondence speaks for itself. Defendant denies any allegations inconsistent with any referenced correspondence.

65. In a letter dated November 14, 2017, CNA responded to Joy Global by withdrawing its disclaimer of coverage, reserving its rights, and acknowledging that the *Duncan* amended complaint, as pleaded, asserted claims and sought relief potentially within the Policy's coverage. CNA acknowledged, for example, that the amended complaint sought "an award of 'compensatory and/or rescissory damages against the defendants,'" thereby triggering potential indemnity coverage, at a minimum, in respect to rescissory damages, as such damages are not damages for inadequate consideration.

ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 65 of the Complaint that purports to quote or paraphrase correspondence from defendant CNA, and on that basis denies them. The remainder of the allegations in Paragraph 65 constitute a legal conclusion to which no response is required. To the extent a response is deemed required, Defendant denies the remaining allegations in Paragraph 65 of the Complaint. Defendant also avers that any correspondence

speaks for itself.  Defendant denies any allegations inconsistent with any referenced correspondence.

66.    Thereafter, in reliance on CNA's withdrawal of its disclaimer and acknowledgment of potential indemnity coverage, Joy Global provided CNA with confidential information regarding its damages analyses and settlement strategy, including by making its defense counsel available to CNA, Arch, and Travelers for phone reports and hosting an in-person meeting to allow the Insurers to hear a detailed litigation report directly from, and to pose any questions that they had to, Joy Global's Securities Claims defense counsel.  In advance of these discussions, Insurers signed a written Confidentiality Agreement agreeing, *inter alia*, not to use any confidential defense information provided by Joy Global for purposes of "evaluating whether or not insurance coverage is available" for the Securities Claims.

ANSWER:  Defendant admits that Plaintiff's defense counsel provided information regarding its damages analyses and settlement strategy, including by phone reports and an in-person meeting.  Defendant admits that it executed a Confidentiality Agreement, which speaks for itself.  Defendant denies any characterizations by Plaintiff that are inconsistent with that document. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 66 of the Complaint, and on that basis denies them.

67.    Joy Global also responded to CNA's November 14, 2017, letter with an extensive letter dated December 22, 2017, that once again urged CNA to affirmatively recognize its contractual obligation to provide indemnity coverage for the Securities Claims, and that provided a detailed rebuttal to CNA's assertions in regard to why such coverage might not be available.

ANSWER:  Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 67 of the Complaint, and on that basis denies them.  Defendant also avers that any correspondence

speaks for itself.  Defendant denies any allegations inconsistent with any

referenced correspondence.

68.     Over the course of the next two months, while the parties to the
*Duncan* suit awaited a ruling from this Court on Joy Global's motion to dismiss
the amended complaint, Joy Global's defense counsel and the *Duncan* plaintiffs'
counsel initiated exploratory settlement discussions.  Joy Global kept the Insurers
apprised of these discussions, in an abundance of caution and a spirit of
cooperation.

ANSWER:  Defendant admits that Plaintiff provided it with certain

updates regarding exploratory settlement discussions.  Defendant lacks knowledge

or information sufficient to form a belief as to the truth of the remaining

allegations of Paragraph 68, and on that basis denies them.

69.     On February 28, 2018, Joy Global requested that CNA, Arch, and
Travelers consent to a proposed settlement of the *Duncan* suit.

ANSWER:  Defendant admits that it received a letter dated

February 28, 2018, from Plaintiff's counsel, which speaks for itself.  Defendant

denies any characterizations by Plaintiff that are inconsistent with that document.

70.     On or around March 7, 2018, CNA responded by disclaiming
coverage for the proposed settlement in full. CNA instructed Joy Global "to act as
a prudent uninsured" with respect to whether to settle the *Duncan* action on the
terms proposed.

ANSWER:  Defendant lacks knowledge or information sufficient to

form a belief as to the truth of the allegations in Paragraph 70 of the Complaint,

and on that basis denies them.  Defendant also avers that any correspondence

speaks for itself. Defendant denies any allegations inconsistent with any referenced correspondence.

71.     On or around March 8, 2018, Arch likewise disclaimed coverage for the proposed *Duncan* settlement, agreeing with and adopting the coverage position set forth in CNA's coverage correspondence, including CNA's March 7, 2018 letter.

ANSWER:  Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 71 of the Complaint, and on that basis denies them.  Defendant also avers that any correspondence speaks for itself.  Defendant denies any allegations inconsistent with any referenced correspondence.

72.     On or around March 8, 2018, Travelers followed suit and similarly disclaimed coverage for the proposed *Duncan* settlement, adopting the responses set forth in CNA's March 7, 2018, letter and Arch's March 8, 2018, letter.

ANSWER:  In response to the allegations in Paragraph 72 of the Complaint, Defendant admits that it sent a letter dated March 8, 2018, to Plaintiff's counsel, which speaks for itself, and advised that the excess policy issued by Defendant would not afford coverage for the *Duncan* settlement. Defendant denies any characterizations of the referenced correspondence that are inconsistent with that document.

73.     Despite the Insurers' improper denial of coverage and refusal to consent to the proposed *Duncan* settlement, in order to protect its interests, Joy Global agreed to the settlement proposal of the *Duncan* plaintiffs, without any

assurance that any of the Insurers would honor their coverage obligations, and Joy Global continued to reserve its rights vis-à-vis the Insurers.

ANSWER: Defendants admits that Plaintiff unilaterally agreed to a settlement proposal with the *Duncan* plaintiffs. The remaining allegations in Paragraph 73 of the Complaint are legal conclusions to which no response is required. To the extent responses are deemed required, Defendant denies the remaining allegations in Paragraph 73 of the Complaint.

74. The Insurers' denial of coverage is not supported by the language of the insurance policies they issued, the terms of the underlying allegations in the *Duncan* action, or governing Wisconsin law.

ANSWER: Defendant denies the allegations in Paragraph 74 of the Complaint.

75. The Insurers' denial of coverage is also irreconcilably inconsistent with CNA's prior acknowledgment of the potential for coverage due to, *inter alia*, the *Duncan* plaintiffs' misrepresentation allegations and demand for rescissory damages. At the time of the *Duncan* settlement, the terms and scope of the *Duncan* plaintiffs' claims remained exactly as they had been pleaded in the amended complaint. The *Duncan* "Claims" were thus exactly the same at the time of settlement as they had been on November 14, 2017, when CNA had issued its letter reversing its denial of coverage and acknowledging the potential for coverage for a judgment or settlement in *Duncan*. There was, and remains, no basis for CNA to have reversed its position, yet again, to deny all indemnity coverage.

ANSWER: Defendant denies the allegations in Paragraph 75 of the Complaint.

76. In addition, in disclaiming coverage for the settlement, CNA improperly relied upon and referenced confidential information disclosed to CNA

at an in-person meeting with defense counsel, in violation of the Confidentiality Agreement it had signed with Joy Global.

ANSWER: On information and belief, Defendant denies the allegations in Paragraph 76 of the Complaint.

77.    Further, and most disturbingly, the Insurers' denial of coverage is directly at odds with the representations, inducements, and assurances that CNA made at the time that it underwrote and issued the CNA Policy with respect to the availability of coverage for the proposed transaction. CNA indicated, and Joy Global understood, that it would be covered for claims like the Securities Claims when it bought the Policy.

ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 77 of the Complaint, and on that basis denies them.

78.    CNA has acknowledged that the Policy affords coverage for "Defense Costs" incurred in the Securities Claims.

ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 78 of the Complaint, and on that basis denies them.

79.    In order to defend itself in the Securities Actions, and consistent with common practice in securities class action litigation, Joy Global hired two law firms: Arnold & Porter Kaye Scholer LLP ("APKS") as its primary defense counsel and Foley & Lardner LLP ("Foley") as its local counsel. In addition, Wachtell, Lipton, Rosen & Katz LLP ("Wachtell") was retained to represent the individual defendants named in the *Duncan* action.

ANSWER: Defendant admits, on information and belief, that the referenced law firms were retained as defense counsel in the *Duncan* lawsuit. Defendant denies the remaining allegations in Paragraph 79 of the Complaint.

80.    On July 19, 2017, Joy Global identified these firms to CNA, along with the hourly billing rates of the attorneys involved, and reported the defense costs incurred to date.

ANSWER:  Defendant lacks knowledge or information sufficient to

form a belief as to the truth of the allegations in Paragraph 80 of the Complaint,

and on that basis denies them.

81.    On August 8, 2017, CNA responded to Joy Global's July 19, 2017, letter and "consent[ed] to the retention of Arnold & Porter Kaye Scholer LLP; Wachtell, Lipton, Rosen & Katz; and Foley & Lardner LLP at the rates described."

ANSWER:  Defendant lacks knowledge or information sufficient to

form a belief as to the truth of the allegations in Paragraph 81 of the Complaint,

and on that basis denies them.

82.    Joy Global has periodically submitted invoices from these three law firms to CNA for reimbursement of Defense Costs incurred in the Securities Claims. All Defense Costs that Joy Global has submitted for reimbursement by CNA are for amounts that (a) exceed Joy Global's self-insured retention under the CNA Policy; (b) Joy Global has determined are reasonable; and (c) Joy Global has said itself, or is in the process of paying itself, irrespective of whether CNA fully honors its contractual obligation to reimburse Defense Costs.

ANSWER:  Defendant lacks knowledge or information sufficient to

form a belief as to the truth of the allegations in Paragraph 82 of the Complaint,

and on that basis denies them.

83.    While CNA has reimbursed certain Defense Costs submitted by Joy Global, CNA has refused to pay or reimburse hundreds of thousands of dollars of Joy Global's Defense Costs.

ANSWER: Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 83 of the Complaint, and on that basis denies them.

84.     Joy Global repeats and incorporates the allegations set forth in the foregoing paragraphs as if fully set forth herein.

ANSWER: Defendant repeats and incorporates by reference its responses to Paragraphs 1-83 in response to the allegations in Paragraph 84 of the Complaint.

85.     An actual controversy exists between Joy Global, on one hand, and each of CNA, Arch, and Travelers, on the other hand, concerning Joy Global's legal rights and the Insurers' respective legal obligations to pay on behalf of Joy Global, under the insurance policies that each Insurer issued to Joy Global, the costs Joy Global has incurred and will continue to incur to defend and resolve the Securities Claims, including without limitation the *Duncan* action.

ANSWER: The allegations in Paragraph 85 of the Complaint are legal conclusions to which no response is required. To the extent a response is deemed required, Defendant denies the allegations except it admits that an actual controversy exists between Plaintiff and Defendant.

86.     Joy Global contends, without limitation, that all of its defense and settlement costs in excess of its self-insured retention are covered under the Insurers' policies and obligate the Insurers to pay such costs on behalf of Joy Global. By contrast, each of CNA, Arch, and Travelers contends that none of the costs of settling the Securities Claims are covered under their respective policies, and CNA contends that only a portion of the costs of defending the Securities Claims are covered under the CNA Policy.

ANSWER: The allegations of the first sentence in Paragraph 86 of the Complaint describe Plaintiff's contentions to which no response is required. To the extent a response is deemed required, Defendant denies Plaintiff's

contentions.  Defendant admits that the costs of settling the referenced Securities

Claims are not covered under the Primary Policy.  On information and belief,

Defendant admits the remaining allegations in Paragraph 86 of the Complaint.

87.    This controversy is of sufficient immediacy to justify the issuance of a declaratory judgment.  The issuance of declaratory relief by this Court may terminate some of the existing controversy between the parties.

ANSWER:  The allegations in Paragraph 87 of the Complaint are

legal conclusions to which no response is required.  To the extent a response is

deemed required, Defendant denies the allegations in Paragraph 87 of the

Complaint.

88.    Pursuant to 28 U.S.C. § 2201, other applicable law, and the inherent equitable powers of this Court, Joy Global is entitled to a declaration of the rights and obligations of the parties, including but not limited to a finding that Insurers are obligated to pay on behalf of Joy Global all amounts, in excess of its self-insured retention, that it has incurred or may hereafter incur as a result of the Securities Claims, including without limitation any and all such defense and settlement payments.

ANSWER:  The allegations in Paragraph 88 of the Complaint are

legal conclusions to which no response is required.  To the extent a response is

deemed required, Defendant denies the allegations in Paragraph 88.

89.    Joy Global repeats and incorporates the allegations set forth in the foregoing paragraphs as if fully set forth herein.

ANSWER:  Defendant repeats and incorporates by reference its

responses to Paragraphs 1-88 in response to the allegations in Paragraph 89 of the

Complaint.

90.     Each of the three insurance policies at issue in this case is a valid and enforceable contract between Joy Global, on one hand, and CNA, Arch, or Travelers, respectively, on the other hand.

ANSWER:  Defendant admits the allegations in Paragraph 90 of the

Compliant.

91.     Joy Global has complied fully with the terms and conditions of the insurance policies and has performed all of its obligations under the policies.

ANSWER:  Defendant denies the allegations in Paragraph 91 of the

Complaint.

92.     Each of the Insurers has refused to pay or reimburse settlement costs that Joy Global has incurred in the eight Securities Claims in excess of Joy Global's self-insured retention, and/or has repudiated or anticipatorily breached its obligation to pay such amounts, including all amounts that Joy Global has paid to settle the eight Securities Claims, including *Duncan*.

ANSWER:  Defendant admits only that the Primary Policy and its

excess policy do not afford coverage for the referenced settlements and, based on

information and belief, Defendant admits that the other defendants take the

position that their policies do not afford coverage for those settlements.  Defendant

denies the remaining allegations in Paragraph 92 of the Complaint.

93.     Each Insurer's refusal to pay or indemnify settlement costs in the Securities Claims constitutes a breach of the commitments that the Insurer made in the contract of insurance that it sold and issued to Joy Global.

ANSWER:  Defendant denies the allegations in Paragraph 93 of the

Complaint.

94.     As a direct and proximate result of each Insurer's breaches of its contract of insurance with Joy Global, Joy Global has been deprived of the benefits of its liability insurance coverage for which it paid substantial premiums.

ANSWER:  Defendant denies the allegations in Paragraph 94 of the

Complaint.

95.     As a direct and proximate result of each Insurer's breaches of its
contract of insurance with Joy Global, Joy Global has incurred damages in an
amount to be proven at trial and that, with respect to each Insurer, exceed the
amount required to invoke the jurisdiction of this Court.

ANSWER:  Defendant denies the allegations in Paragraph 95 of the

Complaint.

96.     Joy Global has presented written notice of its claims for indemnity
and the amount of its claims for indemnity to each Insurer, and no Insurer has paid
Joy Global's claims within 30 days of such notice.  Further, no Insurer has
reasonable proof that it is not responsible for the payment demanded.
Accordingly, pursuant to Wisconsin Statute § 628.46, Joy Global is entitled to
recover interest at a rate of at least 7.5 percent per year for the period starting 30
days after Joy Global's written notice until payment of the indemnity owed.

ANSWER:  Defendant admits only that the subject insurance

policies do not afford coverage for the referenced settlements and therefore the

insurers have not provided indemnity coverage for the settlements.  Defendant

denies the remaining allegations in Paragraph 96 of the Complaint.

97.     Joy Global repeats and incorporates the allegations set forth in the
foregoing paragraphs as if fully set forth herein.

ANSWER:  Defendant repeats and incorporates by reference its

responses to Paragraphs 1-96 in response to the allegations in Paragraph 97 of the

Complaint.

98.     The insurance policy issued by CNA is a valid and enforceable
contract between Joy Global and CNA.

ANSWER: Defendant admits the allegations in Paragraph 98 of the Complaint.

99.    Joy Global has complied fully with the terms and conditions of the CNA Policy and has performed all of its obligations under the CNA Policy.

ANSWER: Defendant denies the allegations in Paragraph 99 of the Complaint.

100.   CNA is obliged under the CNA Policy to pay "all reasonable fees, costs, [and] expenses . . . consented to by the Insurer" in connection with the Securities Claims and is forbidden by that same policy from unreasonably withholding consent to such fees, costs, and expenses.

ANSWER: Defendant admits that Paragraph 100 of the Complaint partially quotes the Primary Policy. Defendant avers that the Primary Policy has additional terms, which speak for themselves, and denies any characterization inconsistent with any and all of the Primary Policy's terms. The remaining allegations in Paragraph 100 of the Complaint are directed to another party; accordingly, Defendant has no obligation to respond. To the extent a response is deemed required, Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 100, and on that basis denies them.

101.   CNA has breached its obligations under the CNA Policy to fully pay Joy Global's reasonable defense costs in defending the Securities Claims.

ANSWER: The allegations in Paragraph 101 of the Complaint are directed to another party; accordingly, Defendant has no obligation to respond. To the extent a response is deemed required, Defendant lacks knowledge or

information sufficient to form a belief as to the truth of the allegations in

Paragraph 101, and on that basis denies them.

102.   As a result of CNA's breaches of contract, Joy Global has incurred damages in an amount to be proven at trial that exceeds the amount required to invoke the jurisdiction of this Court.

ANSWER:  The allegations in Paragraph 102 of the Complaint are

directed to another party; accordingly, Defendant has no obligation to respond.  To

the extent a response is deemed required, Defendant lacks knowledge or

information sufficient to form a belief as to the truth of the allegations in

Paragraph 102, and on that basis denies them.

103.   Joy Global has presented written notice of the fact of its claim for defense costs and the amount of its claim for defense costs to CNA, and CNA has not paid Joy Global's claims within 30 days of such notice. Further, CNA does not have reasonable proof that it is not responsible for the payment demanded. Accordingly, pursuant to Wisconsin Statute § 628.46, Joy Global is entitled to recover interest at a rate of at least 7.5 percent per year for the period starting 30 days after Joy Global's written notice until payment of the defense costs owed.

ANSWER:  The allegations in Paragraph 103 of the Complaint are

directed to another party; accordingly, Defendant has no obligation to respond.  To

the extent a response is deemed required. Defendant lacks knowledge or

information sufficient to form a belief as to the truth of the allegations in

Paragraph 103, and on that basis denies them.

104.   Joy Global repeats and incorporates the allegations set forth in the foregoing paragraphs as if fully set forth herein.

ANSWER: Defendant repeats and incorporates by reference its responses to Paragraphs 1-103 in response to the allegations in Paragraph 104 of the Complaint.

105. The insurance policy issued by CNA is a valid and enforceable contract between Joy Global and CNA.

ANSWER: Defendant admits the allegations in Paragraph 105 of the Complaint.

106. Joy Global has complied fully with the terms and conditions of the CNA Policy and has performed all of its obligations under the CNA Policy.

ANSWER: Defendant denies the allegations in Paragraph 106 of the Complaint.

107. At all material times, CNA has had a duty to act fairly and in good faith toward Joy Global in connection with the CNA Policy.

ANSWER: The allegations in Paragraph 107 of the Complaint are legal conclusions directed to another party; accordingly, Defendant has no obligation to respond. To the extent a response is deemed required, Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 107, and on that basis denies them.

108. CNA's obligation to act fairly and in good faith toward Joy Global requires CNA to provide the coverage promised under the CNA Policy and that CNA represented and induced Joy Global to believe it would have under the CNA Policy when it underwrote, issued, and sold the Policy, including its Run-Off Endorsement, to Joy Global. CNA's obligation to act fairly and in good faith

toward Joy Global also requires CNA to abide by its Confidentiality Agreement with Joy Global.

ANSWER: The allegations in Paragraph 108 of the Complaint are legal conclusions directed to another party; accordingly, Defendant has no obligation to respond. To the extent a response is deemed required, Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 108, and on that basis denies them.

109. CNA has breached its duty of good faith and fair dealing by wrongfully, knowingly, and without a reasonable or fairly debatable basis refusing to provide the insurance coverage that it promised, and that is due and owing, to Joy Global. In particular, and without limitation, CNA:

a. while negotiating the renewal of the CNA Policy, and in order to induce Joy Global to purchase the Policy, willfully concealed and/or misrepresented its now-revealed position that the CNA Policy does not provide indemnity coverage for acquisition-related litigation — a position that is contrary to both (i) the language of the CNA Policy and (ii) what CNA knew to be Joy Global's understanding and expectation at the time of underwriting;

b. changed its original coverage position from a denial of indemnity coverage to a reservation of rights, solely in order to induce Joy Global to provide sensitive and confidential information regarding its defense and settlement strategy;

c. used Joy Global's confidential and sensitive information regarding the defense and settlement of the *Duncan* action, which it obtained solely by withdrawing its original denial of indemnity coverage, to support its second and ultimate denial of coverage, in violation of the Confidentiality Agreement it signed with Joy Global;

d. unreasonably reversed its coverage position a second time, reverting from its reservation of rights back to its original position (i.e., a complete denial of indemnity coverage) — promptly after the *Duncan* settlement was agreed in principle

and tendered for coverage approval; once it had obtained confidential information by misleading Joy Global into expecting that at least some indemnity coverage would be provided; and notwithstanding that there had been no material change in the posture or substance of the *Duncan* case that could possibly justify a second reversal of its coverage position;

e. in response to Joy Global's repeated requests for cooperation and consent, delayed action unreasonably to risk prejudice to and pressure Joy Global in the *Duncan* litigation, such that Joy Global ultimately felt it needed to protect its own interests as if it were a "prudent uninsured;" and

f. without any reasonable basis in fact or law, and for its own purposes and to its own advantage, knowingly took unreasonable positions concerning the coverage provided by the CNA Policy.

ANSWER:  The allegations in Paragraph 109 of the Complaint are directed to another party; accordingly, Defendant has no obligation to respond.  To the extent a response is deemed required, Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 109, and on that basis denies them.

110.   CNA committed these acts to enrich CNA and for the purpose of consciously withholding from Joy Global the rights and benefits to which Joy Global is entitled under the CNA Policy.

ANSWER:  The allegations in Paragraph 110 of the Complaint are directed to another party; accordingly, Defendant has no obligation to respond.  To the extent a response is required, Defendant lacks knowledge or information

sufficient to form a belief as to the truth of the allegations in Paragraph 110, and on that basis denies them.

111. CNA's actions are inconsistent with the reasonable expectations of its insured, are contrary to established norms, practices and legal requirements related to insurance claims, are contrary to the express terms of the CNA Policy and the Confidentiality Agreement between CNA and Joy Global, and constitute a breach of the implied covenant of good faith and fair dealing.

ANSWER: The allegations in Paragraph 111 are legal conclusions directed to another party; accordingly, Defendant has no obligation to respond. To the extent a response is deemed required, Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 111, and on that basis denies them.

112. As a direct and proximate result of CNA's breaches and violations, Joy Global has suffered and continues to suffer substantial damages, in an amount to be determined at trial that exceeds the amount required to invoke the jurisdiction of this Court. Such damages include, without limitation, amounts that should have been paid under the CNA Policy, damages for the loss of use of funds, and damages to compensate Joy Global for the costs it has been forced to incur in the costly effort to prove its entitlement to coverage.

ANSWER: The allegations in Paragraph 112 of the Complaint are legal conclusions directed to another party; accordingly, Defendant has no obligation to respond. To the extent a response is deemed required, Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 112, and on that basis denies them.

The unnumbered prayer for relief on pages 30 and 31 of the Complaint consist of a prayer for relief to which no response is required. Defendant denies that Plaintiff is entitled to any relief whatsoever and respectfully requests that the

Court enter judgment in favor of Defendant and award it attorneys' fees and costs and any other appropriate relief.

## AFFIRMATIVE DEFENSES

Defendant asserts the affirmative defenses set forth below. By pleading these affirmative defenses, Defendant does not intend to alter the burden of proof and/or burden of persuasion that otherwise exists with respect to any issues in this action. All affirmative defenses are pled in the alternative and do not constitute an admission of liability or an admission that Plaintiff is entitled to any relief whatsoever.

### First Affirmative Defense

Plaintiff's Complaints fails to state a claim upon which relief can be granted.

### Second Affirmative Defense

Plaintiff's claims against Defendant are barred because Plaintiff seeks amounts that do not constitute covered "Loss" within the meaning of the Primary Policy.

### Third Affirmative Defense

Plaintiff's claims against Defendant are barred because Plaintiff failed to comply with the requirements of Condition V.1. of the Primary Policy.

### Fourth Affirmative Defense

Plaintiff's claims against Defendant are barred because Plaintiff failed to comply with the requirements of Condition V.4. of the Primary Policy.

## Fifth Affirmative Defense

Plaintiff's claims against Defendant are barred to the extent Plaintiff seeks coverage for the return of amounts to which Plaintiff was not legally entitled or for which insurance coverage would violate public policy.

## Sixth Affirmative Defense

To the extent that any portion of coverage sought by Plaintiff is available (which it is not), an appropriate allocation between covered and non-covered Loss, including Defense Costs, pursuant to the Primary Policy and applicable law is required.

## Seventh Affirmative Defense

The specified coverage provided under the Primary Policy and Defendant's excess policy are subject to and limited to those policies' applicable terms, conditions, and exclusions. There may be other terms, conditions, and exclusions in those policies that operate to bar or to limit coverage for some or all of the amounts for which Plaintiff seeks coverage. Defendant reserves its right to raise affirmatively other terms, conditions, and exclusions as defenses to coverage.

## Eighth Affirmative Defense

Plaintiff's claims against Defendant are barred by the doctrines of release and accord and satisfaction.

## Ninth Affirmative Defense

Plaintiff's claim under Wisconsin Statute § 628.46 is barred to the extent Plaintiff has not satisfied the requirements of Wisconsin Statute § 628.46.

### Tenth Affirmative Defense

Defendant hereby adopts and incorporates by reference as if fully set forth herein any other applicable affirmative defense raised in response to the Plaintiff's Complaint by any other defendant.

### Eleventh Affirmative Defense

Plaintiff's claims are barred to the extent that the attorneys' fees and costs it allegedly incurred in defense of the lawsuits listed in Paragraph 17 of the Complaint were unreasonable, unnecessary, or otherwise do not constitute "Defense Costs," as that term is defined in the Primary Policy.

### Twelfth Affirmative Defense

Plaintiff's claims are barred to the extent that the amounts paid to settle the lawsuits listed in Paragraph 17 were unreasonable.

### Thirteenth Affirmative Defense

Plaintiff's claims are barred to the extent the settlement of any of the lawsuits listed in Paragraph 17 of the Complaint was paid by someone other than an "Insured" as defined in the Primary Policy.

### Fourteenth Affirmative Defense

Plaintiff's claims are barred or limited by the defense of unclean hands.

### Fifteenth Affirmative Defense

Plaintiff is not entitled to recover based on the allegations in the Complaint to the extent that Plaintiff's own actions or the actions of third parties were the sole cause of or contributed to Plaintiff's damages, if any.

## Sixteenth Affirmative Defense

Plaintiff is not entitled to recover based on the allegations in the Complaint to the extent Plaintiff has failed to mitigate damages, if any.

## Seventeenth Affirmative Defense

Defendant has acted reasonably.

## RESERVATION OF RIGHTS

Defendant reserves the right to assert affirmatively any other matter that constitutes an avoidance or affirmative defense under applicable law and rules. Nothing in this Answer and Affirmative Defenses should be construed as a waiver by Defendant of any rights, remedies, or defenses. Defendant continues to reserve all rights, remedies, and defenses, and waives none.

WHEREFORE, Defendant prays that the Court enter judgment in its favor, and against Plaintiff, and award Defendant all relief that this Court deems just and equitable.

Dated this 5th day of March 2019.

DYKEMA GOSSETT PLLC                BY: /s/ Thomas J. Judge
1301 K Street NW, Suite 1100W
Washington, DC 20005                    *Attorneys for Travelers Casualty*
Telephone:  (202) 906-8600              *and Surety Company of America*
Facsimile:  (202) 906-8669
TJudge@dykema.com

## CERTIFICATE OF SERVICE

I hereby certify that on March 5, 2019, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the plaintiff, and I hereby certify that I caused the foregoing document or paper to be served via electronic mail to the parties listed below. I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

/s/ Thomas J. Judge
Thomas J. Judge

Michael T. Skoglund
BATESCAREY LLP
191 North Wacker Drive, Suite 2400
Chicago, Illinois 60606
mskoglund@batescarey.com
*Attorneys for Arch Insurance Company*

John E. Howell
William E. Smith
WILEY REIN LLP
1776 K Street, NW
Washington, DC 20006
wsmith@wileyrein.com
jhowell@wileyrein.com
*Attorneys for Columbia Casualty Company*