UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

Joy Global Inc. (n/k/a Komatsu Mining Corp.),

        Plaintiff,

vs.                                        Case No. 2:18-CV-02034

Columbia Casualty Company, et al.,

        Defendants.

## DECISION AND ORDER

This case involves a dispute between Plaintiff Joy Global, Inc. ("Joy Global") and two of Joy Global's insurers, Defendants Columbia Casualty Company ("Columbia") and Travelers Casualty and Surety Company of America ("Travelers") (collectively, the "Insurers"). In 2016, Joy Global was acquired by a multinational corporation, Komatsu America Corp. ("Komatsu"). In response to the acquisition, Joy Global's shareholders filed eight lawsuits against Joy Global which were eventually settled. The insurers denied coverage for the amounts paid in settlement. Joy Global brings this action against the insurers alleging the amounts paid in settlement were covered by its policies and alleging that Columbia breached the implied covenant of good faith. Before me today are cross-motions for summary judgment on the issues of coverage and breach of contract and Columbia's motion for summary judgment on the issue of good faith.

### 1. BACKGROUND

#### A. Facts

Joy Global was a manufacturer and servicer of heavy equipment used in mining. Beginning in the 2006-2007 policy year, Joy Global annually purchased Directors and

Officers ("D&O") liability insurance from Columbia. In the first quarter of 2016, Joy Global began the process of renewing its D&O liability insurance which was to expire on July 31, 2016. On July 31, 2016, Joy Global announced it had entered into an agreement to be acquired by Komatsu. Upon learning of the acquisition, Columbia informed Joy Global that the transaction constituted a material change in circumstances enabling Columbia to renegotiate the contract. Columbia proposed several. After some discussion, Joy Global purchased renewal coverage for the 2016-2017 policy. The Columbia policy set forth the core terms and conditions of the insurance program and Travelers issued an excess "follow form" policy, providing coverage on the same terms and conditions as the Columbia policy (with minor exceptions not at issue here) for losses in excess of the amount covered by the Columbia policy.

Over the course of the ensuing weeks, numerous Joy Global shareholders filed lawsuits against Joy Global and its directors and officers challenging their representations and conduct with respect to the proposed sale. Each of the shareholder suits alleged that Joy Global and its directors and officers had issued a false or misleading proxy report for the purpose of inducing shareholders to vote their shares in support of a merger agreement which secured inadequate consideration for Joy Global's shares.

Seven of the suits (the "Non-*Duncan* suits") were settled before the merger. Plaintiffs in the eighth shareholder suit (the "*Duncan* suit") filed an amended complaint after the merger alleging that Joy Global and its directors and officers had issued a false or misleading proxy report for the purpose of inducing shareholders to vote their shares in support of a merger agreement which secured inadequate compensation for Joy

Global's shares. The *Duncan* suit was eventually settled for $20 million. The insurers asserted that the actions against Joy Global were Inadequate Consideration Claims and the settlement of such claims was not covered by the policy.

### B. The Insurance Policy

As relevant to the motions before me, the primary policy provides:

> The Insurer shall pay on behalf of the **Insured Entity** that **Loss** resulting from any **Securities Claim** first made against the **Insured Entity** during the Policy Period or Extended Reporting Period, if applicable, for a **Wrongful Act.**

ECF no. 97-5 p. 3 (bold terms are defined within the policy). Loss is defined as, "those amounts that the **Insured Persons** (or the **Insured Entity** ...) are legally liable to pay as awards, settlements or judgments (including any award of pre-judgment and post-judgment interest on a covered judgment) and **Defense Costs** […]" *Id.* at p. 5. The policy goes on to state that:

> **Loss** (other than **Defense Costs**) shall not include: … any amount of any judgment or settlement of any **Inadequate Consideration Claim** other than **Defense Costs** and other than [loss incurred by directors and officers that is not indemnified by Joy Global] …

*Id.* Inadequate Consideration Claims are defined as:

> [T]hat part of any **Claim** alleging that the price or consideration paid or proposed to be paid for the acquisition or completion of the acquisition of all or substantially all of the ownership interest in or assets of an entity is inadequate.

*Id.* at p. 4. As relevant to these motions, a claim is defined by the policy as:

> [A]ny civil, criminal, administrative or regulatory proceeding (other than an investigation) or arbitration, mediation, or any alternative dispute resolution proceeding, … alleging a **Wrongful Act**, including any appeal therefrom.

*Id.* at p. 3.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is required where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, I view the evidence in the light most favorable to the non-moving party and must grant the motion if no reasonable juror could find for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986).

## III. COVERAGE AND BREACH OF CONTRACT

Under Wisconsin law, which the parties agree applies, the construction of an insurance policy "is a question of law, appropriately disposed of on a summary judgment motion." *See Burgess v. J.C. Penney Life Ins. Co.*, 167 F.3d 1137, 1139 (7th Cir. 1999); *see also Day v. Allstate Indem. Co.*, 332 Wis. 2d 571, 584 (Wis. 2011). "The objective in interpreting and construing a contract is to ascertain and carry out the true intention of the parties." *Kremers-Urban Co. v. Am. Employers Inc. Co.*, 119 Wis. 2d 722, 735 (Wis. 1984). "[T]he test is not what the insurer intended the words to mean but what a reasonable person in the position of the insured would have understood the words to mean." *Id.* In construing an "insurance policy as it is understood by a reasonable person in the position of the insured, a court may consider the purpose or subject matter of the insurance, the situation of the parties, and the circumstances surrounding the making of the contract." *Frost ex rel. Anderson v. Whitbek*, 257 Wis.2d 80, 92 (Wis. 2002). Where, however, the language is plain and unambiguous, it should be enforced as written. *Danbeck v. American Family Mut. Ins. Co.*, 245 Wis.2d 186, 629 (Wis. 2001).

The policyholder "bears the burden of showing an initial grant of coverage," but once that is shown, the burden "shifts to the insurer to show that an exclusion

4

nevertheless precludes coverage." *Day*, 332 Wis. 2d at 585. "[E]xclusions in an insurance policy are narrowly construed against the insurer. A court will enforce exclusions that are clear from the face of the policy and where the language is plain and unambiguous, it should be enforced as written. *Danbeck v. American Family Mut. Ins. Co.*, 245 Wis.2d 186, 193 (Wis. 2001). However, "if the effect of an exclusion is ambiguous or uncertain, it will be construed in favor of coverage." *Id*. (*citing Whirlpool Corp. v. Ziebert*, 197 Wis. 2d 144, 152 (Wis. 1995)) (internal citations omitted). The rule of narrow construction of an exclusion against the insurer is not applicable if the policy is unambiguous. *Phillips v. Parmalee*, 351 Wid.2d 758, 765 (Wis. 2013). A contract is ambiguous if the language, considered as a whole, is reasonably susceptible to more than one interpretation. *Chapman v. B.C. Ziegler and Co.*, 354 Wis.2d 123, 127 (Wis. App. 2013).

My analysis begins with the language of the policy. The primary policy excludes from the definition of loss "any amount of any judgment or settlement of" "that part of any Claim alleging that the price or consideration paid or proposed to be paid for the acquisition or completion of the acquisition of all or substantially all of the ownership interest in or assets of an entity is inadequate." The language of the provision is clear and unambiguous, and its effect is not uncertain. Because the language is unambiguous, a reasonable insured in the position of Joy Global would understand the language of the provision to exclude coverage for any amount of any settlement if: (1) the part of the Claim which was settled (2) alleges that the price or consideration paid or proposed to be paid for an acquisition transaction was inadequate, and (3) the proposed or completed transaction involved the acquisition of all or substantially all of the ownership interest in or assets of an entity.

5

The remaining question is whether the shareholder suits meet the definition of an Inadequate Consideration Claim. Each of the non-*Duncan* suits alleged that Joy Global issued a false or misleading proxy report for the purpose of inducing shareholders to vote in support of a merger agreement which secured inadequate consideration for Joy Global's shares. ECF nos. 103-2–103-7. In other words, each complaint alleged that the price proposed to be paid for an acquisition transaction was inadequate. Each settlement resolved the entire suit or suits at issue and each cause of action within the suits relied on the allegations of inadequate consideration, so in each case the part of the Claim which was settled alleged inadequate consideration. The proposed transaction the suits addressed, namely the acquisition of Joy Global by Komatsu, involved the acquisition of all the ownership interest of an entity, namely Joy Global. *Id.* The settlements are therefore excluded from the definition of loss and are not covered by the insurance policies.

Similarly, the *Duncan* amended complaint alleged that Joy Global issued a false or misleading proxy report which induced shareholders to vote in support of a merger agreement which secured inadequate consideration for Joy Global's shares. ECF no. 103-19. The settlement resolved the entire suit and each cause of action within the suit relied on the allegations of inadequate consideration, so the part of the Claim which was settled alleged inadequate consideration. The transaction at issue was the acquisition of Joy Global by Komatsu, which was the acquisition of all the ownership interest of an entity. *Id*. The *Duncan* settlement is therefore also excluded from the definition of loss and is not covered by the insurance policies.

Joy Global makes several arguments in favor of coverage. Some of its arguments are premised on the history and purpose of similar exclusions. This history is not relevant, however. The exclusion is unambiguous and its language controls. Although I may consider the purpose of the contract when interpreting the policy, when a policy is unambiguous, as it is here, I must enforce it as written. *Danbeck*, 245 Wis. 2d at 193. Put differently, although the history and purpose of the policy may be relevant to a reasonable insured's expectations, there is simply no language in the policy from which a reasonable insured could infer that the settlements are covered.

Joy Global's other arguments are unpersuasive. First, it argues that because the policy excludes only "that part of any Claim alleging" inadequate consideration, the exclusion is partial and should apply only to that part of the settlement which eventually reached the shareholders. I disagree. The phrase "that part" unambiguously refers to a part of the claim, not a part of the settlement. The policy does not distinguish between parts of settlements. In fact, the provision excludes "*any* amount of *any* settlement" of an Inadequate Consideration Claim. Once a part of a claim alleging inadequate consideration is settled, the entire settlement is excluded from the definition of loss and is not covered by the policies. Joy Global next argues the settlements are covered because the underlying claims alleged liability on the basis of misrepresentation in proxy statements, not on the basis of inadequate consideration. But this argument is a non-starter because the claims do allege inadequate consideration.

Joy Global also points me to *Northrop Grumman Innovation Sys., Inc. v. Zurich American Ins. Co.*, a case from the Delaware Superior Court which interpreted a similar, though not identical, exclusion and determined that it applied to claims which solely

alleged inadequate consideration. No. N18C-09-210, 2021 WL 347015 (Del. Super. Ct. Feb. 2, 2021). The exclusion at issue in *Northrop Grumman* provided:

> In the event of a Claim alleging that the price or consideration paid for the acquisition or completion of the acquisition of all or substantially all the ownership interest or assets in an entity is inadequate, Loss with respect to such Claim shall not include any amount of any judgment or settlement representing the amount by which such price is effectively increased.

*Id.* at *19. The *Northrop Grumman* settlement resolved a suit alleging that a misleading joint proxy report induced shareholders to vote their shares in favor of an agreement and accept inadequate consideration for their shares. *Id.* at *20. Construing the exclusion narrowly and strictly, the Delaware Superior Court held that it applied to "a lawsuit ("Claim") that alleg[es] *only* that the consideration exchanged was inadequate–*nothing else*." *Id.* (internal quotations removed) (emphasis added). Because the claim alleged not only that the shareholders received inadequate consideration but also that they were induced to vote their shares, the court held the exclusion did not apply.

*Northrop Grumman* is not binding and its reasoning is unpersuasive for two reasons. First, the *Northrop Grumman* court read the relevant exclusion as limited to a claim alleging "only" that inadequate consideration was paid for an acquisition, despite the word "only" not appearing in the provision. Under Wisconsin law, I may not rewrite the policy if the provision is unambiguous. *Danbeck*, 245 Wis. 2d at 193. Second, the exclusion at issue in *Northrop Grumman* is narrower and applied only to that part of a settlement of an Inadequate Consideration Claim "representing the amount by which such price is effectively increased." The provision before me does not contain such language.

Finally, Joy Global argues that Columbia's conduct during the negotiation of the policies led Joy Global to reasonably expect coverage for any shareholder suits resulting

8

from the merger. When Joy Global informed Columbia of the merger, Columbia considered it a material change in circumstance and warned Joy Global to expect lawsuits resulting from the merger. As a result, Joy Global argues, a reasonable insured would have expected coverage for such suits. I disagree. A reasonable insured would still have expected the Inadequate Consideration Claim provision to apply. Neither party addressed the provision during the negotiations, and all parties agree that Columbia did not guarantee coverage for suits resulting from the merger. At the time the revised policies were negotiated neither party knew the details of suits which had yet to be filed. Joy Global cannot claim that it reasonably expected coverage on any and all shareholder suits which resulted from the merger given that it was aware of the carve outs and exclusions within the policy. I will also note that Joy Global did receive coverage for the defense costs stemming from shareholder suits which totaled more than $2 million.

For the reasons above, I find that the settlements of the eight shareholder suits are not covered by the insurance policies. I will grant the insurer's motion for summary judgment on the issues of coverage and breach of contract and deny Joy Global's motion for summary judgment on the same.

## IV. BAD FAITH

Under Wisconsin law, "[t]o show a claim for bad faith, a plaintiff must show the absence of a reasonable basis for denying benefits of the policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim." *Anderson v. Cont'l Ins. Co.*, 85 Wis.2d 675, 691 (Wis. 1978). Because I have determined that Joy Global is not entitled to coverage, I necessarily find that the Insurers had a

9

Case 2:18-cv-02034-LA   Filed 08/18/21   Page 9 of 12   Document 135

reasonable basis for denying benefits. Accordingly, I will grant Columbia's motion for summary judgment on the issue of bad faith.

### V. MOTIONS TO RESTRICT

The parties have also filed several motions to restrict access to certain documents to case participants. In general, this court "consider[s] any document . . . filed with [it] to be public" and requires that a "motion to seal . . . demonstrat[e] good cause for withholding the document . . . from the public record." General L. R. 79(d)(1), (3) (E.D. Wis.). In civil litigation, good cause for removing a document from the public record will exist only if the document reveals a trade secret, is covered by a recognized privilege (such as the attorney-client privilege), or contains information required by statute to be maintained in confidence. *Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 546 (7th Cir. 2002). However, "[t]he strong presumption of public disclosure applies only to the materials that formed the basis of the parties' dispute and the district court's resolution." *Id.* at 548.

The documents the parties seek to keep removed from public view include two settlement agreements stemming from the shareholder suits as well as redacted portions of memoranda of law and proposed statements of material fact which reference those settlement agreements. Joy Global argues that the details of the settlement agreements should remain restricted from public access because they are to remain confidential by their terms and asserts that courts routinely respect the confidentiality of settlements. Joy Global cites only to *Griffith v. University Hospital, L.L.C.* for the proposition that parties have a substantial right to rely on confidentiality provisions of settlement agreements. 249 F.3d 658 (7th Cir. 2001). *Griffith* does not address the

10

*Baxter* standard, however, and does not consider the public's interest in reviewing documents that form the basis of the parties' dispute. And the details of these settlements did form part of the basis of the dispute, as Joy Global itself argued that the portion of the settlements which went to attorney's fees could was covered by the policy. Accordingly, I will lift the restrictions on the settlement agreements and on the memoranda and proposed statements of material fact which reference them.

The remaining documents which the parties seek to keep restricted from public view likely do not meet the *Baxter* confidentiality standard but were not part of the basis of my opinion and did not form the basis of the dispute. The presumption of public disclosure therefore does not apply to these documents and I will grant the motions to restrict as regards those documents.

## VI. CONCLUSION

For the reasons stated, **IT IS ORDERED** that Defendants' motion for summary judgement at ECF no. 95 is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendants' motion for partial summary judgement at ECF no. 96 is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff's motion for summary judgment at ECF no. 100 is **DENIED.**

**IT IS FURTHER ORDERED** that Defendants' motion to restrict documents at ECF no. 93 is **GRANTED IN PART** as regards ECF no. 97-32 and **DENIED IN PART** as regards ECF nos. 97-1, 97-3, 97-30, and 97-31. The Clerk of Court is directed to remove the "Restricted" designation and make accessible to the public the previously restricted filings at ECF nos. 97-1, 97-3, 97-30, and 97-31.

**IT IS FURTHER ORDERED** that Columbia's motion to restrict documents at ECF no. 94 is **DENIED.** The Clerk of Court is directed to remove the "Restricted" designation and make accessible to the public the previously restricted filings at ECF no. 98-2.

**IT IS FUTHER ORDERED** that Plaintiff's motion to restrict documents at ECF no. 99 is **GRANTED IN PART** as regards ECF no. 103-11, 103-16, 103-27, 103-36, 103-38, 106-4, 106-30, 106-31, 106-41, 106-45, 106-54, 108-22, 108-24, and 109-13 and **DENIED IN PART** as regards ECF nos. 101-1, 102-1, 103-1, 103-9, 103-13, 106-1, 106-56, 106-58, 107-2, 108-9, 109-2. The Clerk of Court is directed to remove the "Restricted" designation and make accessible to the public the previously restricted filings at ECF nos. 101-1, 102-1, 103-1, 103-9, 103-13, 106-1, 106-56, 106-58, 107-2, 108-9, 109-2.

**IT IS FUTHER ORDERED** that Plaintiff's motion to restrict documents at ECF no. 114 is **GRANTED IN PART** as regards ECF nos. 118-1, 120-4, 120-6, 121-4, 121-12, 121-22 and **DENIED IN PART** as regards ECF nos. 115-1, 116-1, 117-1, 121-17, 121-19. The Clerk of Court is directed to remove the "Restricted" designation and make accessible to the public the previously restricted filings at ECF nos. 115-1, 116-1, 117-1, 121-17, 121-19.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter final judgment.

Dated at Milwaukee, Wisconsin, this 18th day of August, 2021.

                                                s/Lynn Adelman
                                                LYNN ADELMAN
                                                United States District Judge